IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| CITY OF PEABODY, MASSACHUSETTS, individually and on behalf of a class of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>3M COMPANY (F/K/A MINNESOTA MINING AND MANUFACTURING COMPANY) et al.,<br><br>Defendants. | Case No. 25-cv-2083 (JMB/SGE) |

**MEMORANDUM OF LAW IN SUPPORT OF
MOVING DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S CORRECTED COMPLAINT**

## TABLE OF CONTENTS

**Page**

TABLE OF CASES AND AUTHORITIES ...........................................................................iii

INTRODUCTION.............................................................................................................. 1

SUMMARY OF ALLEGATIONS ........................................................................................ 4

LEGAL STANDARD.......................................................................................................... 9

ARGUMENT.................................................................................................................... 10

    I.    Peabody has not established Article III standing, a prerequisite for subject-matter jurisdiction. ................................................................. 10

        A.    As to the moving defendants, Peabody has not established the traceability element of Article III standing. ............................... 10

        B.    Peabody lacks Article III standing to sue under the laws of states other than Massachusetts. ........................................... 13

    II.    Peabody has not stated a cognizable claim against the moving defendants............................................................................................... 16

        A.    Peabody's unjust-enrichment claim fails as a matter of law................................................................................................... 16

        B.    Peabody's claim for "knowing concealment and misrepresentation of material information" is legally insufficient.......................................................................................... 18

            1.    The complaint does not plead facts supporting the required elements of a fraudulent-misrepresentation claim. ........................................... 18

            2.    The complaint's failure to allege that Peabody purchased protective gear from any moving defendant is fatal to a fraudulent-omission claim. ............ 20

            3.    The fraud claim does not satisfy Rule 9(b). ......................... 21

        C.    The complaint's warranty claims should be dismissed. ............... 23

            1.    Peabody has no warranty claims against the moving defendants because it does not allege that it bought any of the moving defendants' products............................. 23

            2.    The claims are barred by the economic-loss doctrine................................................................................... 24

**TABLE OF CONTENTS**
(continued)

**Page**

3. Peabody's particular-purpose claim fails because Peabody bought and used the protective gear for its ordinary use. ....................................................................... 25

D. The complaint fails to plead a violation of the Massachusetts Consumer Protection Act. ........................................ 26

1. The complaint does not allege facts that satisfy the elements of a Chapter 93A claim. ............................................. 26

2. Peabody cannot succeed on its fraud-based Chapter 93A claim because the complaint does not satisfy Rule 9(b). .......................................................................................... 28

E. The complaint does not state a cognizable negligence claim. ................................................................................................ 29

1. The complaint does not allege the elements of negligence. .......................................................................................... 29

2. The economic-loss doctrine bars the negligence claim. .................................................................................................. 31

CONCLUSION ........................................................................................................ 31

## TABLE OF CASES AND AUTHORITIES

**Cases**                                                           **Page(s)**

*AGRED Found. v. U.S. Army Corps of Eng'rs*,
    3 F.4th 1069 (8th Cir. 2021) ............................................................................ 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................ 9

*Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*,
    17 N.E.3d 1066 (Mass. 2014) ........................................................................27

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 9

*Berish v. Bornstein*,
    770 N.E.2d 961 (Mass. 2002) ................................................................ 25, 31

*Block v. Toyota Motor Corp.*,
    No. CIV 10-2802 ADM/AJB, 2010 WL 5422555
    (D. Minn. Dec. 23, 2010), *aff'd*, 665 F.3d 944
    (8th Cir. 2011) ................................................................................................22

*Calzone v. Hawley*,
    866 F.3d 866 (8th Cir. 2017) ................................................................ 9, 10, 11

*Cigna Ins. Co. v. Oy Saunatec, Ltd.*,
    241 F.3d 1 (1st Cir. 2001) ..............................................................................24

*Courtemanche v. Motorola Sols., Inc.*,
    774 F. Supp. 3d 289 (D. Mass. 2025) .................................................... 25, 26

*Cruickshank v. Clean Seas Co.*,
    346 B.R. 571 (D. Mass. 2006) ........................................................................25

*Daher v. G.D. Searle & Co.*,
    695 F. Supp. 436 (D. Minn. 1988) .................................................................22

*F.B. v. Our Lady of Lourdes Par. & Sch.*,
    125 F.4th 898 (8th Cir. 2025) ........................................................................10

*Ferrari v. Best Buy Co.*,
  No. 14-2956 (MJD/FLN), 2015 WL 2242128
  (D. Minn. May 12, 2015)................................................................................................14

*FMR Corp. v. Bos. Edison Co.*,
  613 N.E.2d 902 (Mass. 1993)........................................................................................24

*Fox v. Saginaw Cnty., Mich.*,
  67 F.4th 284 (6th Cir. 2023)..........................................................................................12

*Gattineri v. Wynn MA, LLC*,
  63 F.4th 71 (1st Cir. 2023)..............................................................................................18

*Gattineri v. Wynn MA, LLC II*,
  93 F.4th 505 (1st Cir. 2024)...........................................................................................27

*Glick v. W. Power Sports, Inc.*,
  944 F.3d 714 (8th Cir. 2019)............................................................................................ 9

*Haglund v. Philip Morris, Inc.*,
  847 N.E.2d 315 (Mass. 2006).........................................................................................24

*Hannon v. Original Gunite Aquatech Pools, Inc.*,
  434 N.E.2d 611 (Mass. 1982).........................................................................................25

*Holland v. Select Portfolio Servicing, Inc.*,
  299 F. Supp. 3d 271 (D. Mass. 2018) ...........................................................................28

*Hooper v. Davis-Standard Corp.*,
  482 F. Supp. 2d 157 (D. Mass. 2007) ...................................................................... 24, 31

*In re Capacitors Antitrust Litig.*,
  154 F. Supp. 3d 918 (N.D. Cal. 2015)...........................................................................14

*In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*,
  87 F.4th 315 (6th Cir. 2023)...........................................................................................12

*In re Effexor Antitrust Litig.*,
  357 F. Supp. 3d 363 (D.N.J. 2018) ................................................................................14

*In re Sensipar (Cinacalcet Hydrochloride Tablets)*
  *Antitrust Litig.*, MDL No. 2895, 2022 WL 736250
  (D. Del. Mar. 11, 2022) ..................................................................................................14

*In re SuperValu, Inc.*,
   870 F.3d 763 (8th Cir. 2017)..................................................................................11

*In re Target Corp. Data Sec. Breach Litig.*,
   66 F. Supp. 3d 1154 (D. Minn. 2014)..................................................................15

*In re Wellbutrin XL Antitrust Litig.*,
   260 F.R.D. 143 (E.D. Pa. 2009)............................................................................14

*Infinity Fluids Corp. v. Gen. Dynamics Land Sys., Inc.*,
   210 F. Supp. 3d 294 (D. Mass. 2016) ..................................................................16

*Insulate SB, Inc. v. Adv. Finishing Sys., Inc.*,
   No. 13-2664 (ADM/SER), 2014 WL 943224
   (D. Minn. Mar. 11, 2014), *aff'd on other grounds*,
   797 F.3d 538 (8th Cir. 2015)......................................................................... 14, 15

*Johnson v. Murph Metals, Inc.*,
   562 F. Supp. 246 (N.D. Tex. 1983) ......................................................................30

*Killeen v. Harmon Grain Prods., Inc.*,
   413 N.E.2d 767 (Mass. 1980)................................................................................30

*Koufos v. U.S. Bank, N.A.*,
   939 F. Supp. 2d 40 (D. Mass. 2013)....................................................................16

*Lewis v. Casey*,
   518 U.S. 343 (1996) ................................................................................................11

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ......................................................................................... 10, 13

*Mathers v. Midland-Ross Corp.*,
   532 N.E.2d 46 (Mass. 1989) .................................................................................30

*McAteer v. Target Corp.*,
   No. 18-349 (DWF/LIB), 2018 WL 3597675
   (D. Minn. July 26, 2018).................................................................................. 13, 14

*McCabe v. Ford Motor Co.*,
   720 F. Supp. 3d 14 (D. Mass. 2024)....................................................................21

*McCabe v. Ford Motor Co.*,
   774 F. Supp. 3d 349 (D. Mass. 2025) ..................................................................19

*Murthy v. Missouri*,
  603 U.S. 43 (2024) ...............................................................................................10

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) .............................................................................................10

*Olin v. Dakota Access, LLC*,
  910 F.3d 1072 (8th Cir. 2018) ..................................................................... 21, 22

*Patterson v. Bosch Marine LLC*,
  744 F. Supp. 3d 142 (D. Mass. 2024) ...............................................................31

*Peterson v. 3M Company*,
  No. 24-CV-03497 (JMB/DLM), 2025 WL 2784485
  (D. Minn. Sept. 30, 2025)..........................................................................*passim*

*Provanzano v. MTD Prods. Co.*,
  215 F. Supp. 3d 134 (D. Mass. 2016) ...............................................................29

*Rick v. Profit Mgmt. Assocs., Inc.*,
  241 F. Supp. 3d 215 (D. Mass. 2017) ........................................................ 21, 29

*Rule v. Fort Dodge Animal Health, Inc.*,
  604 F. Supp. 2d 288 (D. Mass. 2009),
  *aff'd* 607 F.3d 250 (1st Cir. 2010).....................................................................26

*Satchi v. Rheon U.S.A., Inc.*,
  255 F. Supp. 3d 253 (D. Mass. 2017) ...............................................................30

*Schuster v. Wynn MA, LLC*,
  118 F.4th 30 (1st Cir. 2024) ..............................................................................17

*Slaney v. Westwood Auto, Inc.*,
  322 N.E.2d 768 (Mass. 1975)............................................................................28

*Squeri v. Mount Ida Coll.*,
  954 F.3d 56 (1st Cir. 2020).................................................................................20

*Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*,
  781 F.3d 1003 (8th Cir. 2015)............................................................................22

*Summerhill v. Terminix, Inc.*,
  637 F.3d 877 (8th Cir. 2011)..............................................................................22

*Tody's Serv., Inc. v. Liberty Mut. Ins. Co.*,
   260 N.E.3d 309 (Mass. 2025)..........................................................................16

*Walgreen Co. v. Haseotes*,
   778 F. Supp. 3d 264 (D. Mass. 2025) ....................................................... 16, 20

*Whitman & Co. v. Longview Partners (Guernsey) Ltd.*,
   No. 14-CV-12047-ADB, 2015 WL 4467064
   (D. Mass. July 20, 2015) ................................................................................27

*Williams v. Stop & Shop Supermarket Co.*,
   No. 1:24-CV-12055-JEK, 2025 WL 1279374
   (D. Mass. May 2, 2025) ...................................................................................17

*Wong v. Wells Fargo Bank N.A.*,
   789 F.3d 889 (8th Cir. 2015)..........................................................................12

*Zoll Med. Corp. v. Barracuda Networks, Inc.*,
   565 F. Supp. 3d 101 (D. Mass. 2021) ....................................................... 24, 25

## Statutes

Mass. Gen. Laws ch. 93A, § 2 .............................................................................26

Mass. Gen. Laws ch. 93A, § 9 .............................................................................28

## Other Authorities

Restatement (Second) of Torts § 551(2)(e) (1977)..............................................21

**INTRODUCTION**

The City of Peabody, Massachusetts alleges that it purchased protective gear for its firefighters from a single defendant (Globe), that the gear it purchased contains PFAS, and that the gear is therefore deficient and dangerous. Based on these allegations, Peabody asserts claims for unjust enrichment, fraud, breach of implied warranties, unfair and deceptive trade practices, and negligence against twenty defendants under the laws of all fifty states and the District of Columbia.

Notably, Peabody does not allege that it bought protective gear manufactured, assembled, or sold in whole or in part by any moving defendant.[1] This failure is fatal to Peabody's complaint under Rules 12(b)(1) and 12(b)(6).

As to Rule 12(b)(1), Peabody has not established Article III standing, a prerequisite of subject-matter jurisdiction. Without allegations that Peabody bought gear that was sold or manufactured in whole or in part by any moving defendant, the complaint does not satisfy Article III's traceability requirement. As this Court recently held in *Peterson v. 3M Company*, the absence of allegations that "trace any potential injury to Defendants' products" is grounds for dismissal for lack of subject-matter jurisdiction. No. 24-CV-03497 (JMB/DLM), 2025 WL 2784485, at *4 (D. Minn. Sept. 30, 2025).

---

[1]   The moving defendants are Honeywell Safety Products USA, Inc., Morning Pride Manufacturing, LLC, EIDP, Inc., DuPont de Nemours, Inc., The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., Fire-Dex GW, LLC, Milliken & Company, and W. L. Gore & Associates, Inc.

1

Peabody also lacks Article III standing to sue under the laws of states in which it does not reside and where it does not allege that it made a purchase. This is because Peabody did not sustain an injury to a legally protected interest under those states' laws. Peabody is a Massachusetts municipality that bought gear for its firefighters in Massachusetts. Peabody has not alleged a connection to any other state. It can have sustained an alleged injury only in Massachusetts.

As to Rule 12(b)(6), Peabody's failure to allege that it bought protective gear from or made in whole or in part by any moving defendant renders its claims legally deficient.

First, Peabody has failed to state a claim for unjust enrichment. That claim requires that the plaintiff conferred a benefit on the defendant, that the defendant knew about the benefit, and that it would be inequitable for the defendant to retain the benefit. Because the complaint does not allege that Peabody bought anything from any moving defendant, the complaint does not plead these required elements. Additionally, Peabody cannot maintain an unjust enrichment claim because Peabody has an adequate remedy at law.

Second, Peabody asserts a claim labeled "knowing concealment & misrepresentation of material information." No claim of this name is recognized under Massachusetts law. Assuming that Peabody is attempting to assert a fraud claim, that claim fails because Peabody has not alleged that any moving defendant made any affirmative misrepresentation on which Peabody relied. Peabody also does

2

not allege that it had a relationship with any moving defendant that could give rise to a duty to disclose—a required element of a fraudulent-omission claim. Additionally, the claim lacks the particularity that Rule 9(b) requires.

Third, Peabody has not alleged a breach of the implied warranties of merchantability or fitness for a particular purpose. Because Peabody does not allege that it bought anything made or sold by any moving defendant, it has not alleged any purchase from any moving defendant to which an implied warranty could attach. The claims are also barred by Massachusetts' economic-loss doctrine, which prohibits plaintiffs from seeking to recover purely economic losses through implied-warranty claims. Further, the complaint fails to allege that Peabody used or intended to use the protective gear it bought for any use other than the gear's ordinary purpose. This is an independent basis for dismissal of the particular-purpose claim.

Fourth, Peabody has not stated a claim for violation of the Massachusetts Consumer Protection Act, Chapter 93A of the Massachusetts General Laws. Because the complaint does not allege any act by any moving defendant that was unfair or deceptive, or how any moving defendant's conduct caused injury, Peabody has not pleaded the required elements of a Chapter 93A claim. Like the fraud claim, Peabody's Chapter 93A claim also does not satisfy Rule 9(b).

Finally, Peabody's negligence claim fails because it does not allege facts showing that any moving defendant owed Peabody a duty of care or proximately or

factually caused Peabody's alleged injuries. The claim is also barred by the economic-loss doctrine.

Peabody asks the Court to impose far-reaching remedies, including certification of a nationwide class of purchasers whose claims will be subject to differing legal standards under the laws of numerous states. The gravity of this request and the complexity of the litigation it portends underscore the importance of carefully assessing whether, in its hundreds of paragraphs of allegations, Peabody has established the threshold issue of subject-matter jurisdiction and pleaded any legally sound claim. As to the moving defendants, Peabody has done neither.

## SUMMARY OF ALLEGATIONS[2]

### I.    Allegations related to firefighter protective gear and Peabody's purchase of that gear

Firefighter protective gear ("protective gear") includes jackets, pants, footwear, gloves, hoods, helmets, respiratory equipment, and other clothing and equipment designed to protect firefighters from the hazards of fighting fires, including flames, water, chemicals, and heat. (Compl. ¶¶ 5, 89-94.)[3] The complaint alleges generally that protective gear contains PFAS, a class of thousands of synthetic

---

[2]    This brief treats the complaint's allegations as true, as it must at this juncture. Some allegations contain factual inaccuracies that the defendants will address, if necessary, in answers to the complaint or otherwise.

[3]    This brief cites Peabody's Corrected Complaint (ECF No. 26) as (Compl. ¶ __). For readability, the brief refers to the Corrected Complaint in text as "the complaint."

chemical compounds.  (*See id.* ¶¶ 54, 95.)  The complaint identifies specific PFAS compounds—including PTFE, PFOA, and PFOS—that it alleges are present in protective gear, but it does not allege any quantity of these chemicals in the gear that Peabody bought and instead refers primarily to PFAS generally.  (*See id*. ¶¶ 95-105, 122-29, 229-32, 245-47.)

The complaint alleges that the defendants have varying roles in the protective-gear supply chain.  For example, it alleges that four defendants manufacture protective gear that contains PFAS (*see id*. ¶¶ 34, 36, 38, 40), while other defendants either supply PFAS used in the manufacturing process or make PFAS-containing textiles that are incorporated into protective gear (*see id*. ¶¶ 26-33, 35, 37, 39, 41-46).

Peabody issues its firefighters at least two sets of gear.  (*Id.* ¶ 6.)  The firefighters use the gear for several years before replacing it.  (*Id*. ¶ 120.)  According to the complaint, Peabody bought protective gear from one defendant only: Globe. (*Id.* ¶ 25.)  The complaint does not allege that the gear Peabody purchased from Globe incorporates components manufactured or provided by any moving defendant.

## II.    Allegations of health effects from PFAS in protective gear

The complaint alleges that Peabody's firefighters have been exposed to "unsafe levels of PFAS" through their use of protective gear via dermal absorption, ingestion, and inhalation.  (*See id*. ¶¶ 128-29, 137, 196.)  The complaint does not allege what

amounts of any PFAS any of Peabody's firefighters were exposed to, or how exposure to any unspecified quantity of PFAS occurred.

The complaint also does not allege how any form of exposure, to any particular PFAS, in any quantity, from any piece of protective gear that Peabody purchased, has caused or will cause any specific health outcome for any firefighter. Instead, the complaint alleges that unknown quantities of PFAS could have accumulated in unspecified firefighters' blood and tissue. (*See id.* ¶ 138.) Peabody asserts that this hypothetical accumulation has resulted in an unquantified "increased risk" that unidentified firefighters will develop negative health effects, including cancer, at some future time. (*See id.* ¶¶ 194, 197.)

Although the complaint asserts that "PFAS free" protective gear is available (*see id.* ¶ 228), it does not allege that Peabody has replaced any gear with a "PFAS free" option.

## III.    Allegations of statements attributed to defendants

The complaint alleges that "Defendants" in the aggregate misrepresented and concealed information about the presence of PFAS in protective gear and the alleged dangers of PFAS-containing gear. (*See id.* ¶¶ 229-33.) The complaint quotes a handful of statements that it attributes to certain defendants. (*Id.* ¶¶ 199-219.) These statements are not uniform, and they were allegedly made at various times over a seven-year period—although the complaint does not attribute a specific date for most of the statements and does not attribute any date at all for others. (*See id.*) Some

6

statements relate to the use of PFAS generally.  (*See, e.g.*, *id.* ¶¶ 199-200, 202, 211.) Other statements relate to the presence or absence of certain PFAS in protective gear. (*See id.* ¶¶ 201, 203, 206-08.)  Still other statements relate to certain defendants' stated commitments to keeping firefighters safe, making no mention of PFAS at all. (*See id.* ¶¶ 204, 213-19.)

The complaint does not allege that anyone associated with Peabody saw or considered any of the statements included in the complaint in selecting or purchasing protective gear from Globe.

## IV.    Peabody's alleged injuries

Peabody alleges economic injuries resulting from its purchase of protective gear.  Peabody does not allege that the gear failed to serve its purpose of protecting firefighters from the inherent hazards of fighting fires (*e.g.*, flames, heat, moisture, and chemical exposure).  Instead, Peabody claims that the gear was not suitable for its intended purpose because the gear allegedly contained PFAS.  (*See id.* ¶¶ 258, 267, 274, 279, 284.)  Peabody also claims that it will incur economic injuries from disposing of its existing gear and replacing that gear with gear that does not contain PFAS.  (*See, e.g.*, *id.* ¶¶ 24, 143.)

## V.    Peabody's claims and the putative nationwide class

Peabody asserts six claims against all defendants: (1) unjust enrichment, (2) "knowing concealment and misrepresentation of material information," (3) breach of the implied warranties of merchantability and (4) fitness for use for a particular purpose, (5) unfair and deceptive trade practices, and (6) negligence.  (*See id.* ¶¶ 254-92.)

Peabody seeks to certify a nationwide class of "[a]ll municipalities, or other governmental entities in the various states of the United States of America that have purchased fire fighter PPE during the relevant time period that was treated or contaminated with PFAS resulting from Defendants' manufacturing, distribution, marketing, offering for sale or sales activity."  (*Id.* ¶ 234.)  The "relevant time period" is not defined.

Peabody does not allege under which state's laws it purports to bring its claims. Its implied-warranty and unfair-and-deceptive-trade-practices claims cite the laws of all fifty states and the District of Columbia.  (*Id.* ¶¶ 269, 281.)  Because Peabody is a Massachusetts municipality and the transactions at issue occurred in Massachusetts, this brief applies Massachusetts law.[4]

---

[4]    The moving defendants reserve the right to respond to any choice-of-law arguments that Peabody may raise in its response.  The moving defendants also reserve the right to raise applicable arguments and defenses under the laws of states other than Massachusetts, should the Court determine that Peabody has standing to bring those claims or that non-Massachusetts state law applies.  These defenses include, but are not limited to, Peabody's failure to satisfy applicable pre-suit notice

**LEGAL STANDARD**

The moving defendants seek dismissal of Peabody's complaint under Rules 12(b)(1) and 12(b)(6).

Under Rule 12(b)(1), a complaint must be dismissed if the plaintiff has not established Article III standing, a prerequisite of subject-matter jurisdiction. *AGRED Found. v. U.S. Army Corps of Eng'rs*, 3 F.4th 1069, 1073 (8th Cir. 2021). Article III standing requires Peabody to allege facts that show that each defendant's actions caused Peabody's alleged injuries. *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017); *see also Peterson*, 2025 WL 2784485, at *4 ("Traceability must be shown for each defendant.").

Under Rule 12(b)(6), the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility demands "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

---

requirements under state U.C.C. and consumer-protection statutes and prohibitions of class claims under state consumer-protection statutes.

## ARGUMENT

**I.    Peabody has not established Article III standing, a prerequisite for subject-matter jurisdiction.**

**A.    As to the moving defendants, Peabody has not established the traceability element of Article III standing.**

To invoke this Court's subject-matter jurisdiction, Peabody must establish Article III standing for each claim, against each defendant, and for each form of relief sought. *Murthy v. Missouri*, 603 U.S. 43, 61 (2024). Named plaintiffs in a class action must establish standing in their own right; they cannot rely on the potential standing of absent class members. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

The traceability element of Article III standing requires a plaintiff to establish that its injury is traceable to the alleged conduct of each defendant. *F.B. v. Our Lady of Lourdes Par. & Sch.*, 125 F.4th 898, 902 (8th Cir. 2025). This requires "a causal connection between the injury and the conduct complained of." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Put another way, Peabody must show that each defendant caused its alleged injury. *Calzone*, 866 F.3d at 869; *see also Peterson*, 2025 WL 2784485, at *4.

Peabody's complaint does not satisfy this requirement. Peabody alleges that it bought protective gear from a single defendant: Globe. (Compl. ¶ 25.) Nowhere in its hundreds of paragraphs of allegations does Peabody allege that it purchased gear from any moving defendant, or that the Globe gear it purchased contained components manufactured in whole or in part by any moving defendant. There is

10

thus no causal connection between the injuries that Peabody alleges and the conduct of any moving defendant. This Court dismissed claims for lack of traceability on similar grounds in *Peterson*, concluding that the plaintiffs' failure to plead that their alleged injury was traceable to PFAS in the defendants' products rendered the plaintiffs without Article III standing. 2025 WL 2784485, at *4. The same failure compels dismissal here.

Peabody cannot rectify this failure through its expansive allegation that it and unnamed putative class members bought protective gear sold by "Fire-Dex, Globe, Honeywell, and/or Lion," containing materials supplied by "3M, DuPont, Elevate Textiles, Gentex, Gore, InterTech, Milliken, Morning Pride, PBI, Safety Components, StedFast, and/or Tencate" and PFAS supplied by "3M and/or DuPont" at some unspecified time. (*Id.* ¶ 113.) This allegation is insufficient for two reasons.

First, it fails to differentiate between Peabody's and unnamed class members' purchases. To invoke Article III standing, Peabody must establish traceability for its own alleged injuries as to each individual defendant. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996). It cannot rely on alleged injuries that unnamed putative class members may have suffered. *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017) (citing cases). Second, this allegation fails to distinguish among the nearly two-dozen defendants or explain how any individual defendant caused Peabody's alleged injury, as the traceability analysis requires. *See Calzone*, 866 F.3d at 869. Like in *Peterson*, Peabody's allegation that "the vast majority of people in the United States are exposed

11

to background levels of PFAS" (*id.* ¶ 66) does not help Peabody's standing arguments. On the contrary, these statements "undermine traceability" because the Peabody firefighters' alleged exposure to PFAS "could be related to the conduct of parties other than the named Defendants." *Peterson*, 2025 WL 2784485, at *4.

Peabody's failure to establish traceability compels dismissal as to the moving defendants. *See Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 895 (8th Cir. 2015) (dismissing claims against defendants that did not cause named plaintiffs' injuries for lack of standing); *see also Fox v. Saginaw Cnty., Mich.*, 67 F.4th 284, 293 (6th Cir. 2023) (dismissing claims against all but one defendant for failure to "tie the injury to each defendant," as traceability requires).

Like this Court's decision in *Peterson*, a recent Sixth Circuit decision, *In re E.I. du Pont de Nemours & Co. C-8 Personal Injury Litigation*, is instructive on this point. *See* 87 F.4th 315 (6th Cir. 2023). In that case, an Ohio firefighter brought a putative class action against ten defendants that had allegedly manufactured and distributed PFAS in Ohio. *Id.* at 321. The complaint alleged broadly that one or more of the defendants was responsible for the presence of trace amounts of PFAS in the plaintiff's blood. *Id.* at 318-19. The Sixth Circuit held that the complaint failed to satisfy Article III's traceability requirement because it did not allege facts plausibly supporting an inference that each individual defendant likely caused PFAS compounds to exist in that plaintiff's blood. *Id.*

12

The same principles apply here. The complaint does not allege that Peabody purchased gear from or made in whole or in part by any moving defendant. It also does not allege other facts that would plausibly support an inference that any moving defendant caused any economic injury that Peabody claims to have suffered.

Peabody therefore has not established traceability.

**B.    Peabody lacks Article III standing to sue under the laws of states other than Massachusetts.**

Peabody resides and allegedly sustained injury in Massachusetts. Its complaint, however, attempts to raise implied-warranty claims under the laws of every state, plus the District of Columbia. (Compl. ¶ 269.) Its complaint also attempts to allege claims for unfair trade practices under the statutes of forty-four states. (*Id.* ¶ 281.)

The requirements of Article III standing foreclose this strategy. This is because Peabody has not alleged that it sustained an injury-in-fact under the laws of any state other than Massachusetts.

For purposes of Article III standing, an injury-in-fact is the "invasion of a legally protected interest" that is neither conjectural nor hypothetical. *Lujan*, 504 U.S. at 560. When the named plaintiff has not bought a product in a state, the named plaintiff has not incurred harm to any interest that was legally protected under the laws of that state. *McAteer v. Target Corp.*, No. 18-349 (DWF/LIB), 2018 WL 3597675, at *3 (D. Minn. July 26, 2018).

13

Applying this analysis, courts in this District have dismissed named plaintiffs' claims under the laws of states in which they do not reside and where they did not suffer injury for lack of Article III standing. For example, in *McAteer v. Target Corp.*, the court dismissed the plaintiff's Minnesota state-law claims for lack of Article III standing because the named plaintiff did not live or purchase the relevant product in Minnesota. 2018 WL 3597675, at *3. *McAteer* does not stand alone. *See Ferrari v. Best Buy Co.*, No. 14-2956 (MJD/FLN), 2015 WL 2242128, at *9-10 (D. Minn. May 12, 2015); *Insulate SB, Inc. v. Adv. Finishing Sys., Inc.*, No. 13-2664 (ADM/SER), 2014 WL 943224, at *11 (D. Minn. Mar. 11, 2014), *aff'd on other grounds*, 797 F.3d 538 (8th Cir. 2015).

Courts outside of this District have applied the same reasoning to reach the same result. *See, e.g.*, *In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, MDL No. 2895, 2022 WL 736250, at *17 (D. Del. Mar. 11, 2022) (holding that named plaintiffs lacked Article III standing "for claims outside of the 15 states" in which they personally incurred injuries); *In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 390-91 (D.N.J. 2018) (same); *In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 925-27 (N.D. Cal. 2015) (collecting cases). As one court aptly observed, in the absence of this principle, a single named plaintiff, "with no injuries in relation to the laws of certain states referenced in their complaint, [could] embark on lengthy class discovery with respect to injuries in potentially every state in the Union." *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 155 (E.D. Pa. 2009).

14

There is a split in authority in this District on whether a court should first address (a) the issue of a named plaintiff's standing to sue under other states' laws or (b) the issue of class certification. *Compare Insulate SB, Inc.*, 2014 WL 943224, at *10-11, *with In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1160 (D. Minn. 2014). The Eighth Circuit has not resolved the question.

The circumstances here counsel in favor of deciding this issue now. Peabody has no connection to any state other than Massachusetts, yet it seeks to pursue multiple claims across the laws of over forty-four states. Judicial economy would be served by ending this effort now. Even those courts that have deferred the injury-in-fact analysis to the class-certification phase have indicated that cases like this one, in which "a single named plaintiff asserts the laws of a multitude of states in which that plaintiff does not reside," are appropriate for resolution of the state-law standing issue before class certification. *In re Target Corp.*, 66 F. Supp. 3d at 1160.

Consistent with this guidance, this Court should not defer the question of Peabody's standing to assert non-Massachusetts state-law claims to the class-certification phase. Peabody lacks standing to assert claims under the laws of any state other than Massachusetts. Its non-Massachusetts claims therefore merit dismissal.

15

**II.    Peabody has not stated a cognizable claim against the moving defendants.**

Separate from Peabody's threshold failure to establish subject-matter jurisdiction, its claims against the moving defendants are legally deficient. Those deficiencies provide additional, independent bases for dismissal under Rule 12(b)(6).

**A.    Peabody's unjust-enrichment claim fails as a matter of law.**

An unjust enrichment claim under Massachusetts law has three elements: "(1) a benefit conferred upon defendant by plaintiff, (2) an appreciation or knowledge by defendant of the benefit, and (3) that acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value." *Infinity Fluids Corp. v. Gen. Dynamics Land Sys., Inc.*, 210 F. Supp. 3d 294, 309 (D. Mass. 2016) (internal quotation marks omitted).

Because it does not allege that Peabody bought anything from or made by any moving defendant, the complaint does not satisfy the first element as to the moving defendants. That failure alone calls for the claim's dismissal. *See, e.g.*, *Tody's Serv., Inc. v. Liberty Mut. Ins. Co.*, 260 N.E.3d 309, 313 (Mass. 2025) (holding the plaintiff could not maintain an unjust enrichment claim because it did not confer any measurable benefit on defendant); *Walgreen Co. v. Haseotes*, 778 F. Supp. 3d 264, 295 (D. Mass. 2025) (dismissing unjust-enrichment claim for failure to allege a benefit conferred on the defendant by the plaintiff); *Koufos v. U.S. Bank, N.A.*, 939 F. Supp. 2d 40, 52 (D. Mass. 2013) (dismissing unjust-enrichment claim against a defendant that plaintiff did not allege "unjustly received anything").

16

The complaint fares no better on the second element—that any moving defendant has appreciation or knowledge of an alleged benefit. Peabody does not allege facts showing how any moving defendant would know or appreciate that Peabody's purchase of Globe gear would confer a benefit on that moving defendant, which is not alleged to have been involved in the manufacture or sale of the gear.

On the third element, the complaint alleges no facts to suggest that any moving defendant's acceptance or retention of any benefit would be inequitable. The complaint does not allege that any moving defendant received any benefit from Peabody's purchase of Globe gear—much less an inequitable benefit.

Even if the complaint did adequately allege the required elements of an unjust-enrichment claim, that claim would still be barred because Peabody has an adequate remedy at law. *Williams v. Stop & Shop Supermarket Co.*, No. 1:24-CV-12055-JEK, 2025 WL 1279374, at *2 (D. Mass. May 2, 2025). Peabody brings claims for fraud and violation of Chapter 93A. For that reason, its unjust-enrichment claim seeking to redress the same alleged injury is barred. *Id.* It is not relevant that Peabody's other claims fail for the reasons explained below; the likelihood of success of the available alternative remedy does not affect the analysis. *Schuster v. Wynn MA, LLC*, 118 F.4th 30, 38 (1st Cir. 2024). The availability of a remedy at law—even one that is not viable—precludes an unjust enrichment claim. *Id.*

For these reasons, the complaint fails to state an unjust-enrichment claim.

17

**B.    Peabody's claim for "knowing concealment and misrepresentation of material information" is legally insufficient.**

Massachusetts law does not recognize Peabody's claim for "knowing concealment and misrepresentation of material information." (Compl. ¶¶ 261-67.) The moving defendants interpret the claim as a fraud claim, raising fraudulent-misrepresentation and fraudulent-omission theories.

The claim should be dismissed for three independent reasons. First, Peabody does not allege facts supporting any element of a fraudulent-misrepresentation claim. Second, Peabody does not allege facts giving rise to a duty to disclose on the part of any moving defendant, which is a necessary element of a fraudulent-omission claim. Third, the claim violates Rule 9(b).

**1.    The complaint does not plead facts supporting the required elements of a fraudulent-misrepresentation claim.**

A fraudulent-misrepresentation claim requires "that (1) the defendant made a false representation of material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon; (2) the plaintiff relied upon the representation as true and acted upon it to his or her detriment; and (3) such reliance was reasonable under the circumstances." *Gattineri v. Wynn MA, LLC*, 63 F.4th 71, 87-88 (1st Cir. 2023) (cleaned up).

Peabody does not allege facts supporting these elements.

First, Peabody does not allege that any moving defendant made a false representation of material fact. The complaint does not allege that *any* moving

18

defendant represented that its protective gear did not contain PFAS. (*See* Compl. ¶¶ 198-219.) To the contrary, the complaint alleges that some moving defendants *acknowledged* that their gear contained PFAS. (*Id.* ¶¶ 203, 207, 213.) Other moving defendants made generic statements about the safety of protective gear generally and their commitments to firefighter safety. (*Id.* ¶¶ 206-10, 213-19.) Still others said that PFAS has safe uses (*id.* ¶¶ 199, 201-02) and need not be labeled universally as hazardous (*id.* ¶ 211).

Peabody does not explain how these statements are false. Peabody also does not allege how any statement made by any moving defendant could have been—let alone was—material to Peabody's decision to purchase protective gear from another defendant (Globe). Peabody's failure to allege any false representation of material fact is fatal to its fraudulent-misrepresentation claim.

Peabody fares no better on the second and third elements of a fraudulent-misrepresentation claim. It does not allege that it considered—much less relied on—any statement made by any moving defendant in deciding what protective gear to buy or, more specifically, in deciding to buy gear from Globe. Because Peabody does not plead facts to show reliance, it also does not plead facts to show reasonableness. These deficiencies render Peabody's fraud claim legally insufficient. *See McCabe v. Ford Motor Co.*, 774 F. Supp. 3d 349, 387-88 (D. Mass. 2025) (dismissing fraud claim for lack of allegations to establish reliance or reasonableness).

19

Because Peabody has not alleged facts to support the required elements of a fraudulent-misrepresentation claim, that claim fails under Rule 12(b)(6).

### 2.  The complaint's failure to allege that Peabody purchased protective gear from any moving defendant is fatal to a fraudulent-omission claim.

A plaintiff can base a fraud claim on an alleged omission or failure to disclose a material fact.  *Walgreen Co.*, 778 F. Supp. 3d at 285.  To do so, a plaintiff must allege both that the defendant had a duty to disclose and that the defendant concealed material information.  *Id.*  A duty to disclose exists when "(i) there is a fiduciary or other similar relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to the essence of, the transaction."  *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 71 (1st Cir. 2020) (internal quotation marks omitted).

Peabody does not allege that any moving defendant owed it a duty to disclose. (*See* Compl. ¶¶ 261-67.)  The complaint does not allege any relationship between Peabody and the moving defendants, let alone a fiduciary or special relationship.  The complaint also does not allege that any moving defendant made any partial or ambiguous statement about the gear that Peabody purchased from Globe, much less a statement about that gear that gave rise to a duty to complete or correct.

Further, because Peabody does not allege that it purchased gear from or made in whole or in part by any moving defendant, any omission by a moving defendant

20

about the presence or absence of PFAS in its *own* gear could not go to the essence of Peabody's purchase of gear sold by *others*.

A duty to disclose based on information that goes to the essence of the transaction arises when a party to the transaction fails to disclose "facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to" those facts. *McCabe v. Ford Motor Co.*, 720 F. Supp. 3d 14, 30 (D. Mass. 2024) (emphasis omitted) (quoting Restatement (Second) of Torts § 551(2)(e) (1977)). Here, the complaint does not allege any transaction between Peabody and any moving defendant, that any moving defendant had knowledge of Peabody's purchases from Globe or facts relevant to those transactions, or that any moving defendant knew that Peabody was entering any transaction under a mistake of basic facts. In these circumstances, there is no duty to disclose as a matter of law.

Rule 12(b)(6) thus calls for dismissal of the fraudulent-omission claim.

### 3. The fraud claim does not satisfy Rule 9(b).

Whether Rule 9(b) applies to a particular claim "is a matter of substantive state law." *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1075 (8th Cir. 2018). Under Massachusetts law, Peabody's fraud claims must meet Rule 9(b)'s particularity requirements. *Rick v. Profit Mgmt. Assocs., Inc.*, 241 F. Supp. 3d 215, 223-24 (D. Mass. 2017).

Because Rule 9(b) is a procedural rule, this Court applies Eighth Circuit law to determine whether a complaint meets the rule's heightened pleading requirement.

*See Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011).  To satisfy Rule 9(b), a plaintiff must plead specific facts, including who committed the fraud, where and when the fraud occurred, and what the defendant obtained because of the fraud. *Olin*, 910 F.3d at 1075.

In cases with multiple defendants, the complaint must put each defendant on notice of the actions underlying its alleged participation in the fraud.  *Id.*  Using group pleading to allege that defendants collectively committed fraud is not sufficient. *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015); *Block v. Toyota Motor Corp.*, No. CIV 10-2802 ADM/AJB, 2010 WL 5422555, at *5 (D. Minn. Dec. 23, 2010), *aff'd*, 665 F.3d 944 (8th Cir. 2011).  Courts in this District have dismissed fraud claims on this basis.  *See, e.g.*, *Block*, 2010 WL 5422555, at *5; *Daher v. G.D. Searle & Co.*, 695 F. Supp. 436, 440 (D. Minn. 1988).

Peabody's complaint violates Rule 9(b).  Every paragraph of the fraud claim refers to defendants collectively.  (*See* Compl. ¶¶ 262-67.)  Peabody alleges that (1) "Defendants" possessed material information regarding Peabody's purchase of protective gear (*id.* ¶ 262); (2) "Defendants" failed to adequately disclose this material information (*id.* ¶ 263); (3) "Defendants" made material misrepresentations about the gear (*id.* ¶ 264); and (4) because of "Defendants'" actions, Peabody purchased gear and suffered resulting economic injury (*id.* ¶¶ 265-67).

As these allegations show, the complaint lacks any specifics about where, when, or how each moving defendant supposedly engaged in fraud, or what any

moving defendant gained through the alleged fraud.  It also does not allege any facts about Peabody's decision to purchase Globe protective gear, whether that decision was based on any representation by any defendant (much less a moving defendant), or how any moving defendant could have benefitted from Peabody's purchase of gear from Globe.

Dismissal for failure to satisfy Rule 9(b) is appropriate here.

## C.    The complaint's warranty claims should be dismissed.

The complaint attempts to assert claims for breach of the implied warranties of merchantability and fitness for a particular purpose.  These claims fail as a matter of law for at least three reasons.

First, Peabody's failure to allege that it purchased gear from or incorporating components made by any moving defendant renders it unable to plead the required elements of its warranty claims as to those defendants.  Second, the economic-loss doctrine bars the claims.  Third, Peabody's failure to allege that it intended to use or used the gear for anything other than the gear's ordinary use is fatal to the particular-purpose claim.

### 1.    Peabody has no warranty claims against the moving defendants because it does not allege that it bought any of the moving defendants' products.

A breach of the implied warranty of merchantability requires that "1) [the] defendant manufactured or sold the subject product, 2) that product contained a defect or unreasonably dangerous condition rendering it unsuitable for its ordinary

23

use, 3) plaintiff was using the product in a manner that [the] defendant intended or reasonably could have foreseen and 4) the defect or dangerous condition was a legal cause of plaintiff's injury." *Zoll Med. Corp. v. Barracuda Networks, Inc.*, 565 F. Supp. 3d 101, 107 (D. Mass. 2021). A claim for breach of the implied warranty of fitness for a particular purpose requires factual allegations supporting the same elements (and additional elements, discussed below at pp. 25-26). *Id.*

The complaint does not allege that any moving defendant made or sold the gear that Peabody bought from Globe. The warranty claims against the moving defendants therefore fail as a matter of law.

### 2.    The claims are barred by the economic-loss doctrine.

Under Massachusetts law, the economic-loss doctrine bars implied-warranty claims that seek recovery of purely economic losses. *Hooper v. Davis-Standard Corp.*, 482 F. Supp. 2d 157, 159 (D. Mass. 2007). This doctrine forecloses the recovery of economic losses in tort and strict liability. *FMR Corp. v. Bos. Edison Co.*, 613 N.E.2d 902, 903 (Mass. 1993). Massachusetts law treats implied-warranty claims as "the functional equivalent of strict liability" tort claims. *Haglund v. Philip Morris, Inc.*, 847 N.E.2d 315, 322 (Mass. 2006) (quoting *Cigna Ins. Co. v. Oy Saunatec, Ltd.*, 241 F.3d 1, 15 (1st Cir. 2001)). Courts therefore have dismissed claims under Massachusetts law for breach of the implied warranties of merchantability and of fitness for a particular purpose where the plaintiff seeks to recover economic damages only. *See Hooper*, 482

24

F. Supp. 2d at 159-61; *Cruickshank v. Clean Seas Co.*, 346 B.R. 571, 582-83 (D. Mass. 2006).

Here, for warranty damages, Peabody seeks the amount that it allegedly budgeted and spent for past purchases of protective gear, as well as the costs of disposing of its existing gear and replacing that gear with gear that does not contain PFAS.  (*See* Compl. ¶¶ 274, 279.)  Under Massachusetts law, those damages are economic.  *See Berish v. Bornstein*, 770 N.E.2d 961, 975 (Mass. 2002) (defining economic loss to include the cost of replacing a defective product and damages for inadequate value).

The economic-loss doctrine therefore bars Peabody's implied-warranty claims.

### 3. Peabody's particular-purpose claim fails because Peabody bought and used the protective gear for its ordinary use.

The implied warranty of fitness for a particular purpose arises when (a) the seller has reason to know that the buyer has a particular purpose for the goods, and (b) the buyer relies on the seller's skill or judgment to select or furnish suitable goods. *Zoll Medical Corp.*, 565 F. Supp. 3d at 107-08.

A particular purpose envisions a specific use that is peculiar to the nature of the buyer's business. *Hannon v. Original Gunite Aquatech Pools, Inc.*, 434 N.E.2d 611, 616 (Mass. 1982).  A plaintiff that does not allege that the product at issue had a purpose distinct from its ordinary purpose cannot maintain a particular-purpose claim. *Courtemanche v. Motorola Sols., Inc.*, 774 F. Supp. 3d 289, 323 (D. Mass. 2025).

25

Here, the complaint does not say that Peabody intended to use its protective gear in any way that differs from the gear's ordinary use: protecting firefighters from the inherent dangers of fighting fires. That failure defeats Peabody's particular-purpose claim. *See id.* (dismissing particular-purpose claim where plaintiff failed to allege that purpose of purportedly defective apps differed from the apps' ordinary purpose); *Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288, 297 (D. Mass. 2009) (dismissing particular-purpose claim because plaintiff did not allege that pet medication was intended or used for a particular purpose different from its ordinary use), *aff'd* 607 F.3d 250 (1st Cir. 2010).

**D.    The complaint fails to plead a violation of the Massachusetts Consumer Protection Act.**

Peabody next tries to assert an unfair-and-deceptive-trade-practices claim under the laws of forty-four different states. (*See* Compl. ¶¶ 280-87.) The moving defendants interpret that claim as a claim under Chapter 93A of the Massachusetts General Laws. *See supra* p. 8 & n.4.

That claim should be dismissed for two independent reasons. First, the complaint fails to allege facts that satisfy the elements of a Chapter 93A claim. Second, the claim violates Rule 9(b).

**1.    The complaint does not allege facts that satisfy the elements of a Chapter 93A claim.**

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws

26

ch. 93A, § 2. A claim for violation of Chapter 93A requires that the defendant engaged in an unfair or deceptive act or practice, that the plaintiff sustained a resulting loss, and that there is a causal connection between the loss and the unfair or deceptive act or practice. *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 17 N.E.3d 1066, 1074-75 (Mass. 2014).

Peabody has not alleged these elements. As to the first element, Peabody does not allege what the moving defendants' purported "unfair and deceptive" practices were. (*See* Compl. ¶¶ 280-87.) Instead, the complaint lumps all defendants together and asserts that they all employed undefined and unspecified "unfair and deceptive acts and practices" that allegedly caused Peabody to buy protective gear from a single defendant. (*Id.* ¶¶ 283-84.) This group pleading does not satisfy the first element of a Chapter 93A claim. *See Whitman & Co. v. Longview Partners (Guernsey) Ltd.*, No. 14-CV-12047-ADB, 2015 WL 4467064, at *10 (D. Mass. July 20, 2015).

In addition, because the Chapter 93A claim is based on alleged fraud (*see id.* ¶¶ 198-219), and the fraud claim fails as a matter of law (*see supra* pp. 18-23), the Chapter 93A claims also fails. *See Gattineri v. Wynn MA, LLC II*, 93 F.4th 505, 511-12 (1st Cir. 2024). This is an independent basis to dismiss the Chapter 93A claim.

Peabody's Chapter 93A claim also fails because it does not allege proximate cause. The complaint does not link any alleged unfair or deceptive act by any moving defendant to Peabody's alleged injury. Nor does it allege facts showing that any loss by Peabody from its purchase of protective gear from Globe could foreseeably result

27

from the alleged deception of any other defendant with no involvement in the purchase. As this Court held in *Peterson*, a plaintiff does not establish proximate cause where there is no connection between the defendant's alleged conduct and the plaintiff's alleged injury. 2025 WL 2784485, at *6.

Further, Peabody does not allege that it complied with the pre-suit demand requirement that Chapter 93A imposes. *See* Mass. Gen. Laws ch. 93A, § 9(3) (requiring plaintiffs to provide a written demand identifying the claimant and describing the unfair or deceptive act or practice and resulting injury at least thirty days before filing a Chapter 93A claim). Nor does Peabody plead facts to establish that no written demand was required. *See id.* (stating that no written demand is required if the prospective respondent has no place of business or assets in Massachusetts). This failure also warrants dismissal. *Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 779 (Mass. 1975) (confirming that allegations of compliance with Chapter 93A's demand requirement are a "prerequisite to suit").

### 2. Peabody cannot succeed on its fraud-based Chapter 93A claim because the complaint does not satisfy Rule 9(b).

Peabody's Chapter 93A claim also fails because it does not meet Rule 9(b)'s particularity requirements. Those particularity requirements apply to Chapter 93A claims based on alleged fraud. *See, e.g.*, *Holland v. Select Portfolio Servicing, Inc.*, 299 F. Supp. 3d 271, 275-76 (D. Mass. 2018).

Peabody's Chapter 93A claim has no particularity at all.  It lacks any allegations that put any moving defendant on notice of what its alleged unfair and deceptive trade practices were.  (*See* Compl. ¶¶ 280-87.)  Instead, it alleges that all defendants engaged in undefined "unfair and deceptive acts and practices in the conduct of trade and commerce in violation of the statutes against the use of unfair or deceptive acts or practices in the conduct of business of the various states of the United States of America." (*Id.* ¶ 282.)  Peabody's failure to identify each moving defendant's allegedly wrongful conduct subjects its Chapter 93A claim to dismissal.  *See Rick*, 241 F. Supp. 3d at 225 (dismissing fraud-based Chapter 93A claim for failure to satisfy Rule 9(b)).

### E.     The complaint does not state a cognizable negligence claim.

Finally, Peabody asserts a negligent-design claim.  That claim fails for two reasons:  It does not allege the elements of a negligence claim, and it is barred by the economic-loss doctrine.

### 1.     The complaint does not allege the elements of negligence.

Negligence requires duty, breach of duty, cause in fact, and proximate cause. *Provanzano v. MTD Prods. Co.*, 215 F. Supp. 3d 134, 139 (D. Mass. 2016).

Peabody alleges that it purchased gear from Globe.  (*See* Compl. ¶ 25.)  It does not allege that it purchased gear from any moving defendant or that the Globe gear it did purchase contained components manufactured or sold by any moving defendant. That failure is fatal to each element of Peabody's negligence claim.

Under Massachusetts law, a plaintiff in a product-liability claim must show that the plaintiff's alleged injury can be traced to the manufacturer that the plaintiff sues. *Mathers v. Midland-Ross Corp.*, 532 N.E.2d 46, 49 (Mass. 1989). Relatedly, a product-liability plaintiff must also show that it is "the user" of the product that it claims caused its injury. *Killeen v. Harmon Grain Prods., Inc.*, 413 N.E.2d 767, 770 (Mass. 1980); *see also Johnson v. Murph Metals, Inc.*, 562 F. Supp. 246, 248-49 (N.D. Tex. 1983) (explaining that liability under traditional theories of negligent design and negligent failure to warn "extends only to 'users' of the product in question").

Here, the complaint does not allege that the moving defendants manufactured the gear that Peabody purchased. Necessarily, the complaint also does not allege that Peabody was the "user" or end purchaser of gear sold or manufactured in whole or in part by any moving defendant. The complaint thus does not adequately allege that any moving defendant owed a duty to Peabody that could have been breached, or that any moving defendant factually or proximately caused Peabody's alleged injury, which arose, if at all, from Peabody's purchase of Globe gear. Failure to allege that the defendant produced the product that allegedly caused the plaintiff's injury warrants the complaint's dismissal for lack of duty. *See Satchi v. Rheon U.S.A., Inc.*, 255 F. Supp. 3d 253, 259-60 (D. Mass. 2017). And as in *Peterson*, absent some connection between the defendant's alleged conduct and the plaintiff's alleged injury, there can be no causation. 2025 WL 2784485, at *6.

Peabody's negligence claim therefore fails as a matter of law.

30

### 2.    The economic-loss doctrine bars the negligence claim.

Peabody seeks to recoup through its negligence claim the "costs associated with purchasing the PFAS-containing" gear, as well as the cost to replace that gear. (Compl. ¶ 292.)  These damages are economic.  *Berish*, 770 N.E.2d at 975.

As discussed *supra* pp. 24-25, the economic-loss doctrine bars tort claims for economic losses unless the plaintiff alleges personal injury or property damage other than to the defective product itself.  *Patterson v. Bosch Marine LLC*, 744 F. Supp. 3d 142, 148 (D. Mass. 2024).  Because Peabody's negligence claim alleges only economic damages, the economic-loss doctrine is an independent basis for the claim's dismissal. *See Hooper*, 482 F. Supp. 2d at 159-61.

### CONCLUSION

The moving defendants ask the Court to dismiss the complaint and grant all further relief that the Court deems appropriate.

[*Signature pages follow*]

31

This 16th day of October, 2025.

Respectfully submitted,

*s/ Caitlinrose H. Fisher*
**FORSGREN FISHER MCCALMONT
DEMAREA TYSVER LLP**
Robert J. Gilbertson, Reg. No. 22361X
Caitlinrose H. Fisher, Reg. No. 0398358
1500 Capella Tower
225 South Sixth Street
Minneapolis, MN 55402
(612) 474-3300
bgilbertson@forsgrenfisher.com
cfisher@forsgrenfisher.com

**ROBINSON, BRADSHAW & HINSON, P.A.**
Gregory L. Skidmore, N.C. Bar No. 35571
(*pro hac vice*)
Travis S. Hinman, N.C. Bar No. 50779 (*pro hac vice*)
600 S. Tryon Street, Suite 2300
Charlotte, NC 28202
(704) 377-2536
gskidmore@rbh.com
thinman@rbh.com

Stephen D. Feldman, N.C. Bar No. 34940
(*pro hac vice*)
434 Fayetteville Street, Suite 1600
Raleigh, NC 27601
(919) 239-2600
sfeldman@rbh.com

*Attorneys for Defendants
Honeywell Safety Products USA, Inc. and
Morning Pride Manufacturing, LLC*

*s/ Zachary A. Alter*
**FELHABER LARSON**
Zachary A. Alter, MN Bar No. 0399991
220 South 6th Street, Suite 2200
Minneapolis, MN 55402
(612) 339-6321
zalter@felhaber.com

**CARROLL & WEISS LLP**
Jameson B. Carroll (*pro hac vice motion forthcoming*)
Michael Weiss (*pro hac vice motion forthcoming)*
2870 Peachtree Road N.W., Suite 193
Atlanta, GA 30305-2918
(404) 668-4063

*Attorneys for Defendant
Milliken & Company*

*s/ Libretta P. Stennes*
**GREENBERG TRAURIG, LLP**
Libretta P. Stennes (#390951)
Michael T. Vangel (#505737)
90 South Seventh Street, Suite 3500
Minneapolis, MN 55402
612-259-9700
libby.stennes@gtlaw.com
mike.vangel@gtlaw.com

**DECHERT LLP**
Douglas E. Fleming III (*pro hac vice*)
Jacqueline D. Harrington (*pro hac vice*)
Paul A. LaFata (*pro hac vice*)
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
douglas.fleming@dechert.com
jacqueline.harrington@dechert.com
paul.lafata@dechert.com

*Attorneys for Defendant W. L. Gore & Associates, Inc.*

*s/ Marc J. Shrake*
**FREEMAN MATHIS & GARY, LLP**
Marc J. Shrake, MN # 0255166
Roundabout Plaza
1600 Division Street, Suite 590
Nashville, Tennessee 37203
(615) 208-5639
mshrake@fmglaw.com

*Attorneys for Defendant*
*Fire-Dex GW, LLC*

*s/ Arthur G. Boylan*
**ANTHONY OSTLUND LOUWAGIE**
**DRESSEN & BOYLAN P.A.**
Arthur G. Boylan (MN #338229)
90 South Seventh Street
3600 Wells Fargo Center
Minneapolis, MN 55402
 (612) 349-6969
aboylan@anthonyostlund.com

**SHOOK, HARDY & BACON L.L.P.**
Andrew Carpenter (*pro hac vice motion forthcoming)*
Brent Dwerlkotte (*pro hac vice*)
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550
acarpenter@shb.com
dbdwerlkotte@shb.com

*Attorneys for Defendants EIDP, Inc., f/k/a*
*E.I. du Pont de Nemours and Company,*
*The Chemours Company,*
*The Chemours Company FC, LLC,*
*DuPont de Nemours, Inc. and Corteva, Inc.*