**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| CITY OF PEABODY, MASSACHUSETTS, individually and on behalf of a class of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>3M COMPANY (F/K/A MINNESOTA MINING AND MANUFACTURING COMPANY); EIDP, INC.; DUPONT DE NEMOURS, INC.; CHEMOURS COMPANY; CHEMOURS COMPANY FC, LLC; CORTEVA, INC.; ELEVATE TEXTILES, INC.; GENTEX CORPORATION; GLOBE MANUFACTURING COMPANY, LLC; W.L. GORE & ASSOCIATES, INC.; FIRE-DEX GW, LLC; HONEYWELL SAFETY PRODUCTS USA, INC.; INTERTECH GROUP, INC.; LION GROUP, INC.; MILLIKEN & COMPANY; MORNING PRIDE MANUFACTURING L.L.C.; PBI PERFORMANCE PRODUCTS, INC.; SAFETY COMPONENTS FABRIC TECHNOLOGIES, INC.; STEDFAST USA, INC.; and TENCATE PROTECTIVE FABRICS USA D/B/A SOUTHERN MILLS, INC.,<br><br>*Defendants*. | Case No. 25-cv-02083-JMB-SGE<br><br>Hon. Jeffrey M. Bryan |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT 3M COMPANY'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ................................................................................1

II.    BACKGROUND ..................................................................................2

III.   LEGAL STANDARD ...........................................................................5

IV.    ARGUMENT .......................................................................................6

    A.    The City Lacks Article III Standing to Bring Any Claim in the
        Complaint Against 3M Because the City's Purported Injury Is Not
        Traceable to 3M. ........................................................................................6

    B.    The City's State-Law Claims Independently Fail as a Matter of Law........11

        1.     The City Lacks Standing to Assert Its Non-Massachusetts
            Claims.................................................................................................11

        2.     The City Fails to Plausibly Allege Its Massachusetts Claims..........15

            i.     The City Fails to Plausibly Allege Unjust Enrichment
                (Count I) as to 3M. ...................................................................15

            ii.    The Court Should Dismiss the Remaining Claims
                Against 3M Because the City has Failed to Plausibly
                Allege Causation (Counts II–V). .............................................17

            iii.   The City Fails to Plausibly Allege that 3M Engaged in
                Fraudulent Misrepresentation or Omission (Count II)..........18

            iv.    The City Fails to Plausibly Allege that 3M Breached
                Any Implied Warranty (Count III)......................................21

            v.     The City Fails to Plausibly Allege that 3M Violated
                Massachusetts's Consumer Protection Act (Count IV). .......23

            vi.    The City Fails to Plausibly Allege Negligence (Count
                V).............................................................................................25

        3.     Dismissal of the City's Individual Claims Requires Dismissal
            of the Class Claims...........................................................................26

V.     CONCLUSION ...................................................................................27

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC,*
    949 F.3d 417 (8th Cir. 2020) ................................................................................20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).........................................................................................6, 9

*Ass'n for Accessible Meds. v. Ellison,*
    140 F.4th 957 (8th Cir. 2025) ..............................................................................13

*Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.,*
    17 N.E.3d 1066 (Mass. 2014) .........................................................................17, 24

*Avery v. State Farm Mut. Auto. Ins. Co.,*
    835 N.E.2d 801 (Ill. 2005)..................................................................................14

*Balles v. Babcock Power Inc.,*
    70 N.E.3d 905 (Mass. 2017)................................................................................17

*Barnstable Cnty. v. 3M Co.,*
    2017 WL 6452245 (D. Mass. Dec. 18, 2017) ..........................................................9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................................6, 18, 24

*Bernbeck v. Gale,*
    829 F.3d 643 (8th Cir. 2016) ..............................................................................11

*Blake v. Prof'l Coin Grading Serv.,*
    898 F. Supp. 2d 365 (D. Mass. 2012) ...................................................................16

*Buffalo-Water 1, LLC v. Fid. Real Estate Co.,*
    111 N.E.3d 266 (Mass. 2018) ..............................................................................20

*Burke v. DJO, LLC,*
    2012 WL 383948 (D. Minn. Feb. 6, 2012) .............................................................15

*Calzone v. Hawley,*
    866 F.3d 866 (8th Cir. 2017) ................................................................................6

*Carpenter v. PetSmart, Inc.,*
    441 F. Supp. 3d 1028 (S.D. Cal. 2020)..................................................................12

*Chen v. Target Corp.,*
    2022 WL 1597417 (D. Minn. May 19, 2022).........................................................11

*Cont'l Res., Inc. v. Wolla Oilfield Servs., LLC,*
    510 P.3d 175 (Okla. 2022)..................................................................................14

**TABLE OF AUTHORITIES**
(*continued*)

<u>Page(s)</u>

*Dittmer Props., L.P. v. FDIC,*
  708 F.3d 1011 (8th Cir. 2013) ....................................................................4, 5

*In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.* (*Hardwick*),
  87 F.4th 315 (6th Cir. 2023) ...............................................................1, 3, 9, 10

*Energizer Brands, LLC v. Procter & Gamble Co.,*
  2016 WL 2894708 (E.D. Mo. May 18, 2016) ...........................................................9

*Fernandes v. Union Bookbinding Co.,*
  507 N.E.2d 728 (Mass. 1987) ....................................................................22

*Ferrari v. Best Buy Co.,*
  2015 WL 2242128 (D. Minn. May 12, 2015)....................................................12

*FMR Corp. v. Bos. Edison Co.,*
  613 N.E.2d 902 (Mass. 1993) .................................................................23, 25

*Frank v. Gaos,*
  586 U.S. 485 (2019)....................................................................6

*Garcia v. Kusan, Inc.,*
  655 N.E.2d 1290 (Mass. App. Ct. 1995) ...........................................................17, 22

*Go-Best Assets Ltd. v. Citizens Bank of Mass.,*
  972 N.E.2d 426 (Mass. 2012) ....................................................................25

*Goshen v. Mut. Life Ins. Co. of N.Y.,*
  774 N.E.2d 1190 (N.Y. 2002)....................................................................14

*Great Rivers Co-op. of Se. Iowa v. Farmland Indus., Inc.,*
  120 F.3d 893 (8th Cir. 1997) ....................................................................26, 27

*Hayes v. Douglas Dynamics, Inc.,*
  8 F.3d 88 (1st Cir. 1993)....................................................................17

*Hershenow v. Enter. Rent-A-Car Co. of Bos., Inc.,*
  840 N.E.2d 526 (Mass. 2006) ....................................................................25

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.,*
  2014 WL 943224 (D. Minn. Mar. 11, 2014) ........................................................12

*Knapp v. Neptune Towers Assocs.,*
  892 N.E.2d 820 (Mass. App. Ct. 2008) ...........................................................21

*Lesnick v. Hollingsworth & Vose Co.,*
  35 F.3d 939 (4th Cir. 1994) ....................................................................13

iii

# TABLE OF AUTHORITIES
(*continued*)

<u>Page(s)</u>

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ..................................................................................................13, 14

*Longaker v. Bos. Sci. Corp.*,
   872 F. Supp. 2d 816 (D. Minn. 2012) .....................................................................13, 14

*Lucke v. Wells Fargo Bank, N.A.*,
   2014 WL 12601035 (D. Minn. Apr. 2, 2014) ................................................................24

*Macoviak v. Chase Home Mortg. Corp.*,
   667 N.E.2d 900 (Mass. App. Ct. 1996) ........................................................................24

*Mathers v. Midland-Ross Corp.*,
   532 N.E.2d 46 (Mass. 1989) .........................................................................................17

*McCabe v. Ford Motor Co.*,
   720 F. Supp. 3d 14 (D. Mass. 2024) .............................................................................21

*McCabe v. Ford Motor Co.*,
   774 F. Supp. 3d 349 (D. Mass. 2025) ...........................................................................19

*Melendez v. Gen. Mills, Inc.*,
   2025 WL 937160 (D. Minn. Mar. 27, 2025) .................................................................10

*Midgett v. Werner Enters., Inc.*,
   2021 WL 1615453 (D. Neb. Apr. 23, 2021) ..................................................................12

*Murray v. Goodrich Eng'g Corp.*,
   566 N.E.2d 631 (Mass. App. Ct. 1991) ........................................................................26

*Murthy v. Missouri*,
   603 U.S. 43 (2024) .................................................................................................6, 7, 11

*Nat'l Pork Producers Council v. Ross*,
   598 U.S. 356 (2023) ......................................................................................................13

*Onaka v. Shiseido Ams. Corp.*,
   2024 WL 1177976 (S.D.N.Y. Mar. 19, 2024) ................................................................7

*In re Packaged Seafood Prod. Antitrust Litig.*,
   242 F. Supp. 3d 1033 (S.D. Cal. 2017) .........................................................................12

*Paulausky v. Mayo Clinic*,
   2025 WL 2194586 (D. Minn. Aug. 1, 2025) .............................................................14, 15

*Pershouse v. L.L. Bean, Inc.*,
   368 F. Supp. 3d 185 (D. Mass. 2019) ........................................................................16, 17

iv

**TABLE OF AUTHORITIES**
(*continued*)

<u>Page(s)</u>

*Peterson v. 3M Co.*,
    2025 WL 2784485 (D. Minn. Sept. 30, 2025) ....................................................1, 7, 8, 9, 10, 17

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
    11 F.4th 90 (2d Cir. 2021) ...................................................................................................26

*Pohl v. Cheatham*,
    718 S.W.3d 173 (Tex. 2025)................................................................................................13

*Pub. Serv. Mut. Ins. v. Empire Comfort Sys., Inc.*,
    573 F. Supp. 2d 372 (D. Mass. 2008)..................................................................................23

*Rezendes v. Mitsubishi Motors N. Am., Inc.*,
    2023 WL 4552030 (D. Mass. July 14, 2023).......................................................................23

*Rick v. Profit Mgmt. Assocs., Inc.*,
    241 F. Supp. 3d 215 (D. Mass. 2017) ...........................................................................18, 19

*Russell v. Cooley Dickinson Hosp., Inc.*,
    772 N.E.2d 1054 (Mass. 2002) ............................................................................................18

*Satchi v. Rheon U.S.A., Inc.*,
    255 F. Supp. 3d 253 (D. Mass. 2017) ..................................................................................26

*Schuster v. Wynn Ma, LLC*,
    118 F.4th 30 (1st Cir. 2024)................................................................................................16

*Simon v. E. Ky. Welfare Rts. Org.*,
    426 U.S. 26 (1976)................................................................................................................7

*Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*,
    781 F.3d 1003 (8th Cir. 2015) ......................................................................................19, 20

*Thole v. U.S. Bank N.A.*,
    590 U.S. 538 (2020)........................................................................................................5, 11

*Thunander v. Uponor, Inc.*,
    887 F. Supp. 2d 850 (D. Minn. 2012)..................................................................................11

*Tomasella v. Nestle USA, Inc.*,
    962 F.3d 60 (1st Cir. 2020)..................................................................................................17

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)........................................................................................................6, 11

*Vervaecke v. Chiles, Heider & Co.*,
    578 F.2d 713 (8th Cir. 1978) ...............................................................................................26

**TABLE OF AUTHORITIES**
(*continued*)

Page(s)

*W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*,
   78 A.3d 167 (Conn. App. Ct. 2013)......................................................................14

*Walgreen Co. v. Haseotes*,
   778 F. Supp. 3d 264 (D. Mass. 2025) ...............................................................15, 16

*Wallace v. ConAgra Foods, Inc.*,
   747 F.3d 1025 (8th Cir. 2014) ..............................................................................9

*In re Wellbutrin XL Antitrust Litig.*,
   260 F.R.D. 143 (E.D. Pa. 2009).............................................................................12

*Williams v. Stop & Shop Supermarket Co.*,
   2025 WL 1279374 (D. Mass. May 2, 2025) .......................................................16, 17

*Zoll Med. Corp. v. Barracuda Networks, Inc.*,
   565 F. Supp. 3d 101 (D. Mass. 2021)................................................................21, 22

**Statutes**

44 U.S.C. § 1507......................................................................................................5

**Regulations**

EPA, *Perfluorooctanoic Acid (PFOA), Fluorinated Telomers; Request for
   Comment, Solicitation of Interested Parties for Enforceable Consent
   Agreement Development, and Notice of Public Meeting*, 68 Fed. Reg. 18,626
   (Apr. 16, 2003).....................................................................................................4

EPA, *Premanufacture Notification Exemption for Polymers; Amendment of
   Polymer Exemption Rule to Exclude Certain Perfluorinated Polymers*, 75 Fed.
   Reg. 4,295 (Jan. 27, 2010) .....................................................................................4

**Treatises**

Restatement (Second) of Torts § 551(2)(e) (1977)......................................................21

**Other Authorities**

Graham F. Peaslee et al., *Another Pathway for Firefighter Exposure to Per- and
   Polyfluoroalkyl Substances: Firefighter Textiles*, Env't Sci. & Tech. Letters
   594 (2020).............................................................................................................3

Letter from George H. Millet, Dir., Env't, Health & Safety, Dyneon LLC, to EPA,
   Off. of Pollution Prevention & Toxics (Oct. 30, 2009), https://rb.gy/oxzeog.........4

## I.     INTRODUCTION

Hoping to represent a class of tens of thousands of fire departments and asserting claims under the laws of every State plus the District of Columbia, the City of Peabody sues 3M on the theory that the company *might* have supplied some of the chemicals that went into fire fighter turnout gear the City purchased.  As the Sixth Circuit commented when dismissing similarly thin allegations, "[s]eldom is so ambitious a case filed on so slight a basis." *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.* (*Hardwick*), 87 F.4th 315, 318 (6th Cir. 2023).

The Court should dismiss the claims against 3M, either without prejudice for lack of standing or with prejudice for failure to state a claim.

*First*, the City lacks standing because it has not plausibly alleged that its supposed injuries are traceable to 3M.  The Complaint focuses on turnout gear the City purchased, but the City does not allege that 3M sold it turnout gear.  The City speculates that the per- and polyfluoroalkyl substances (PFAS) in that turnout gear might have come from any one of the Defendants "and/or" any of the others, but this kind of guesswork is insufficient to establish standing even at the motion-to-dismiss stage.  The City tries to keep 3M on the hook by alleging that the company manufactures PFAS, but PFAS are a class of thousands of chemicals, and the Complaint does not identify a single kind of PFAS that 3M allegedly sold to a turnout-gear manufacturer, much less the single turnout-gear manufacturer from which the City claims to have bought its gear.  The Court recently dismissed similarly deficient allegations against 3M, *see Peterson v. 3M Co.*, 2025 WL 2784485 (D. Minn. Sept. 30, 2025), and it should do so again here.  If anything, the traceability allegations are

1

even more implausible in this case because the City is suing based on its purchases of turnout gear during the last four years, which is well more than a decade after 3M stopped selling the relevant kinds of PFAS.

*Second*, the City, a Massachusetts entity, lacks standing to assert non-Massachusetts claims. Whether viewed as a matter of Article III standing or so-called statutory standing, the outcome is the same: Because the City does not allege it was harmed anywhere other than in Massachusetts, it may not invoke other jurisdictions' laws.

*Third*, the claims fail on the merits. Although numerous deficiencies infect each claim, they share a common theme: The Complaint asserts that "Defendants"—as if they were some undivided group—acted inappropriately in advertising and selling turnout gear, but (again) 3M is not alleged to have manufactured turnout gear or to have made any representations about it. As a result, the alleged facts do not establish plausible claims against 3M.

## II.    BACKGROUND

The City of Peabody fits its firefighters with what is known as turnout gear— "hoods, jackets, pants . . . , boots, and gloves" specially designed to protect the firefighter from water and heat. Compl. ¶ 90; *see id.* ¶¶ 92–94. "Over the last four years," the City "has purchased its [turnout gear] from Defendant Globe Manufacturing Company," *id.* ¶ 25, although the City has also named as defendants the turnout-gear manufacturers Fire-Dex, Honeywell, and Lion, *id.* ¶¶ 34, 38, 40.

Globe allegedly sources textiles for its turnout gear from W.L. Gore, InterTech, PBI Performance, and TenCate. Compl. ¶¶ 37, 39, 43, 46, 148. The City has also sued textile

manufacturers Elevate, Gentex, Milliken, Morning Pride, Safety Components Fabric Technologies, and StedFast USA, although the City does not allege that those Defendants sold textiles to Globe.  *Id.* ¶¶ 33, 35, 41, 42, 44, 45.

According to the Complaint, Globe's turnout gear was "treated or contaminated with" PFAS.  Compl. ¶ 8.  PFAS are a "class of thousands of synthetic chemical compounds," first developed in the 1930s and 1940s, that are applied because of their "chemical and thermal stability and water repellant characteristics."  *Id.* ¶¶ 54, 56–57. Given their use in "a wide range of commercial products and industries," *id.* ¶ 57, "[f]or most if not nearly all Americans, interaction with materials containing PFAS is a fact of daily life."  *Hardwick*, 87 F.4th at 318; *see* Compl. ¶ 66 ("Presently, the vast majority of people in the United States are exposed to background levels of PFAS via drinking water, food, and other sources.").

Of the thousands of kinds of PFAS, the City focuses on three: perfluorooctanoic acid (PFOA), perfluorooctane sulfonate (PFOS), and polytetrafluorethylene (PTFE).  *See*, *e.g.*, Compl. ¶¶ 68–86, 100–02, 110, 124, 126–29, 131–32, 134, 136–39, 144, 156, 166, 170, 176–78, 189, 192, 200.  The City alleges that exposure to these substances "is considered hazardous to human health."  *Id.* ¶¶ 71, 87.  And the City maintains that "significant quantities" of these substances have been found in turnout gear, pointing to "a 2020 study" that identified in some gear PFOA and "fluorine levels . . . consistent with use of PTFE," but no detectable amount of PFOS in most of the layers of turnout gear tested. *Id.* ¶¶ 96–97, 99–101; Graham F. Peaslee et al., *Another Pathway for Firefighter Exposure*

*to Per- and Polyfluoroalkyl Substances: Firefighter Textiles*, 7 Env't Sci. & Tech. Letters 594, 596 (2020).[1]

The City attributes the PFAS allegedly in Globe turnout gear to "PFAS-containing materials" from Globe's textile suppliers "and PFAS manufactured by Defendants 3M and/or DuPont."  Compl. ¶ 148.  The Complaint implies that Gore and the DuPont Defendants might have supplied PTFE, *see id.* ¶¶ 144, 149, but it does not identify a particular Defendant or third party that sold PFOA, PFOS (or any other particular kind of PFAS) to Globe.

3M was allegedly the "largest manufacturer of PFAS in the United States from the 1940s through the early 2000s."  Compl. ¶ 164.  In 2000, 3M announced it would phase out the production and sale of PFOA and PFOS—a phase-out it completed in 2002.[2] *See id.* ¶ 166(h) n.23 (relying on article that mentions the phase-out); EPA, *Perfluorooctanoic Acid (PFOA), Fluorinated Telomers; Request for Comment, Solicitation of Interested Parties for Enforceable Consent Agreement Development, and Notice of Public Meeting*, 68 Fed. Reg. 18,626, 18,628–29, 18,631 (Apr. 16, 2003); EPA, *Premanufacture*

---

[1]    The Court may consider the Peaslee article at the Rule 12 stage because the City incorporated the article into the Complaint by reference.  *Dittmer Props., L.P. v. FDIC*, 708 F.3d 1011, 1021 (8th Cir. 2013).

[2]    3M has acknowledged that, at facilities not at issue here, it used PFOA in the manufacturing process of some of its own fluoropolymer products until 2008—over a decade before the City's alleged turnout-gear purchases began.  Letter from George H. Millet, Dir., Env't, Health & Safety, Dyneon LLC, to EPA, Off. of Pollution Prevention & Toxics (Oct. 30, 2009), https://rb.gy/oxzeog.

*Notification Exemption for Polymers; Amendment of Polymer Exemption Rule to Exclude Certain Perfluorinated Polymers*, 75 Fed. Reg. 4,295, 4,297 (Jan. 27, 2010).[3]

The City seeks to represent all municipalities or other governmental entities that purchased turnout gear that was "treated or contaminated with PFAS resulting from Defendants' manufacturing, distribution, marketing, offering for sale or sales activity" during an undefined "relevant time period."  Compl. ¶ 234.

The City asserts claims for (1) unjust enrichment, (2) knowing concealment and misrepresentation of material information, (3) breach of UCC implied warranties, (4) unfair and deceptive business acts or practices declared to be unlawful, and (5) negligence.  The City does not expressly assert causes of action under the laws of a particular State, but for claims (3) and (4) it alleges that "statutes of the various [*i.e.*, all] states . . . are applicable." Compl. ¶¶ 269, 281.  The City does not allege a connection to a State other than Massachusetts.  It seeks money damages to "properly remove and dispose of" and replace its turnout gear.  *Id*. at p. 67.

### III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), dismissal is warranted when a plaintiff "fail[s] to plausibly and clearly allege" facts establishing Article III standing. *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 544 (2020).

---

[3]   The Court may also consider these materials at the Rule 12 stage.  *See Dittmer Props.*, 708 F.3d at 1021 ("[I]n determining whether to grant a Rule 12(b)(6) motion, courts . . . consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'"); 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed.").

Dismissal is independently warranted under Rule 12(b)(6) when a plaintiff fails "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The complaint's factual allegations must therefore "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## IV.    ARGUMENT

### A.    The City Lacks Article III Standing to Bring Any Claim in the Complaint Against 3M Because the City's Purported Injury Is Not Traceable to 3M.

To establish standing, as Article III requires, a plaintiff must establish that its "injury was likely caused by the defendant." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Because "standing is not dispensed in gross," a plaintiff must satisfy this traceability requirement "for each claim that [the plaintiff] press[es] against each defendant, and for each form of relief that [it] seek[s]." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (internal quotation marks omitted); *accord Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017). In a putative class action, "federal courts lack jurisdiction if no named plaintiff has standing." *Frank v. Gaos*, 586 U.S. 485, 492 (2019).

For at least three reasons, the City has not established that its injuries were likely caused by 3M.

*First*, the City fails to plausibly allege a connection between its turnout gear and 3M, as opposed to some other supplier. Nowhere does the City allege it purchased turnout gear containing a 3M product. *See Peterson*, 2025 WL 2784485, at *3 ("Plaintiffs never allege that the carpet they purchased actually has been treated with [3M] PFAS products."); *Onaka v. Shiseido Ams. Corp.*, 2024 WL 1177976, at *3 (S.D.N.Y. Mar. 19, 2024) (dismissing PFAS-related claims because of similar omission). Instead, the Complaint joins multiple parties together in ways that obscure which Defendant's products the City purchased.

For example, the City asserts that "Plaintiff *and* Class members purchased Turnout Gear . . . designed, manufactured, marketed, distributed, and sold by Defendants Fire-Dex, Globe, Honeywell, and/or Lion" using materials "supplied by" all the other Defendants, including 3M. Compl. ¶ 113 (emphasis added). But the City cannot establish its own standing by relying on purchases of the putative class. *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976); s*ee Murthy*, 603 U.S. at 61 (court of appeals "erred" in its standing analysis "by treating the defendants[ and] plaintiffs . . . each as a unified whole"). And when it comes to the City's own purchases—all that matters for standing since the City is the only named plaintiff—they were allegedly limited to turnout gear "from Defendant Globe Manufacturing." Compl. ¶ 25. That means any 3M sales to the other turnout-gear-manufacturer Defendants are irrelevant for traceability purposes.

The City repeats this pleading error in its allegation about Globe's suppliers: "Since 1966," the City asserts, Globe has "us[ed] PFAS-containing materials supplied by Defendants 3M, DuPont, Gore, InterTech, PBI, and TenCate and PFAS manufactured by

7

Defendants 3M *and/or* DuPont." Compl. ¶ 148 (emphasis added). This extended and/or list means the PFAS or PFAS-containing material allegedly used in the turnout gear Globe manufactured during the past four years—the period when the City allegedly purchased turnout gear—could have been supplied by DuPont, Gore, InterTech, PBI, or TenCrate, rather than 3M (if any of them). *Id.* ¶ 25. And even if these Defendants *all* supplied PFAS or PFAS-containing materials to Globe during that period, the City does not allege the gear it purchased contained PFAS from *all* these entities.[4]

The same kind of pleading deficiency recently led this Court to dismiss another PFAS-related case against 3M for lack of standing. *See Peterson*, 2025 WL 2784485, at *3–4. Though that case involved allegations of PFAS in carpet rather than in turnout gear, both complaints share the same traceability problem: "[N]one of the allegations in the Complaint trace any potential injury to [3M's] products, as opposed to the products developed by" others, including "nonparties." *Id.* at *4. There, as here, "the Complaint d[id] not distinguish between Defendants' products," instead alleging that "'PFAS products [were] sold by Defendants,'" as if they were some collective whole. *Id.* There, too, the only effort to connect 3M to the purchased goods was an allegation that 3M "played a prominent role as [a] producer[] of PFAS . . . before 2020." *Id.*; *see* Compl. ¶ 164 ("Defendant 3M was the largest manufacturer of PFAS in the United States from the 1940s

---

[4] Making matters worse, the City groups 3M with Defendants that allegedly sold "PFAS-containing materials," but the City does not explain what those materials were and otherwise alleges only that 3M manufactured "PFAS." Compl. ¶¶ 26, 114, 146, 148, 162, 164.

through the early 2000s."). But there, too, there was no getting away from the fact that "other allegations acknowledge that [3M was] not the only entit[y] responsible for developing, selling, or using PFAS products." *Peterson*, 2025 WL 2784485 at \*4. Those allegations "undermine[d] traceability," such that the *Peterson* plaintiffs "failed to allege Article III standing." *Id.* Just so here.[5]

The City cannot get out from under the foundational rules *Peterson* applied. Because "'[t]raceability must be shown for *each* defendant,'" *id.* (emphasis added), "general allegation[s]" like those the City offers are "inconsistent with Article III," *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014). By "treat[ing] the defendants as a collective" and "lumping them all together in" the Complaint, *Hardwick*, 87 F.4th at 320, "it remains entirely possible, maybe probable" that the PFAS allegedly in Plaintiff's turnout gear was produced by non-3M Defendants or unnamed, nonparty suppliers, *Wallace*, 747 F.3d at 1030. And where "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

*Second*, Plaintiff never alleges that 3M supplied Globe or any other turnout-gear manufacturer with the particular types of PFAS the City alleges are found in its turnout gear. *See* Compl. ¶ 99. Although the Complaint concerns PFOA, PFOS, and PTFE

---

[5]  *See also*, *e.g.*, *Barnstable Cnty. v. 3M Co.*, 2017 WL 6452245, at \*11 (D. Mass. Dec. 18, 2017) (dismissing negligence claim because "complaint [was] devoid of specific allegations as to how each defendant caused the contamination"); *Energizer Brands, LLC v. Procter & Gamble Co.*, 2016 WL 2894708, at \*2 (E.D. Mo. May 18, 2016) (dismissing certain claims because "allegations indiscriminately lump[ed] [certain] defendants together").

specifically, the Complaint alleges 3M supplied "PFAS" or "PFAS-containing materials" generally, *id.* ¶¶ 148, 151, 153, 155, 162.  But the Complaint does not identify a single kind of PFAS that 3M allegedly sold to a turnout-gear manufacturer.  And as the City explains, PFAS are a "class of thousands of synthetic chemical compounds" that encompass far more than PFOA, PFOS, and PTFE.  *Id.* ¶ 54.  Given the sheer number of substances the PFAS label covers, merely alleging that 3M "manufactured or otherwise distributed 'PFAS'" is "patently insufficient to support a plausible inference that" 3M "bear[s] responsibility for the particular PFAS" at issue.  *Hardwick*, 87 F.4th at 321.  Indeed, the Complaint does not include a single allegation linking 3M to PTFE.  *See* Compl. ¶¶ 144, 149 (suggesting Gore and DuPont manufactured PTFE); *cf. Melendez v. Gen. Mills, Inc.*, 2025 WL 937160, at *2 (D. Minn. Mar. 27, 2025) (dismissing lead-contamination case on standing grounds because plaintiffs hadn't plausibly alleged the products they purchased from defendant "contained harmful levels of lead, or indeed any lead").

*Third,* the Complaint nowhere alleges that 3M supplied PFOA or PFOS to Globe or any of the other Defendants during the period at issue.  For good reason:  Plaintiff alleges it purchased turnout gear from Globe "[o]ver the last four years," Compl. ¶ 25, but 3M phased out the production and sale of PFOA and PFOS years earlier, by 2002, *see supra* pp. 4–5.  That temporal disconnect dooms the City's attempt to somehow trace its injury to 3M.  *See Peterson*, 2025 WL 2784485 at *3 ("Plaintiffs lack[ed] standing" because there were "no allegations in the Complaint concerning" 3M PFAS in carpets "at the time that Plaintiffs purchased the carpets at issue").

10

Independently or cumulatively, each of these three deficiencies requires dismissal. Because the City has failed to plausibly allege its turnout gear contained PFAS from 3M, it has likewise "failed to plausibly and clearly allege," *Thole*, 590 U.S. at 544, that its claimed "injury was likely caused by" 3M, *TransUnion*, 594 U.S. at 423. The Court should dismiss all the claims against 3M for lack of standing.

## B. The City's State-Law Claims Independently Fail as a Matter of Law.

The City asserts claims under the laws of Massachusetts, every other State, and the District of Columbia. Beyond the standing problem described above, the City, a Massachusetts public entity, also lacks standing to sue for alleged violations of other jurisdictions' laws. Additionally, the City fails to state a claim and thus cannot represent the putative class.

### 1. The City Lacks Standing to Assert Its Non-Massachusetts Claims.

As a Massachusetts public entity that asserts it was injured in Massachusetts in violation of Massachusetts law, Compl. ¶¶ 1, 25, 47, 269, 281, the City's alleged injury cannot be traced to a violation of the laws of any State other than Massachusetts. Because the City cannot establish standing "for each claim," its non-Massachusetts claims should be dismissed. *Murthy*, 603 U.S. at 61.[6]

---

[6] Although some courts have deferred ruling on standing until after class certification under certain circumstances, *see Chen v. Target Corp.*, 2022 WL 1597417, at *4 (D. Minn. May 19, 2022), it would be improper to do so here. The City's standing is "a threshold issue," *Bernbeck v. Gale*, 829 F.3d 643, 646 (8th Cir. 2016), which "must be addressed at this time" because "[a] class representative must have standing to assert claims on his or her own behalf in order to have standing to assert claims as a class representative," *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 863 (D. Minn. 2012).

11

"Named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury." *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 2014 WL 943224, at \*11 (D. Minn. Mar. 11, 2014) (granting motion to dismiss), *aff'd*, 797 F.3d 538 (8th Cir. 2015). "The overwhelming majority of courts have [therefore] held that Article III standing for state law claims is necessarily lacking when no plaintiff is alleged to have purchased a product within the relevant state." *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1095 (S.D. Cal. 2017); *see Midgett v. Werner Enters., Inc.*, 2021 WL 1615453, at \*3 (D. Neb. Apr. 23, 2021) ("[A]s a constitutional issue, named plaintiffs generally lack standing to assert class-wide claims under laws of states with which they have no connection." (internal quotation marks omitted)) (collecting cases); *Ferrari v. Best Buy Co.*, 2015 WL 2242128, at \*9–10 (D. Minn. May 12, 2015) (same).

As a Massachusetts entity that allegedly purchased PFAS-infused turnout gear for use in Massachusetts, the City "does not have standing to assert a claim against [3M] under any state's law but [that of Massachusetts]." *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1039 (S.D. Cal. 2020). It "did not suffer any injuries in fact traceable to any alleged violations of any other states' laws"—a "fatal deficiency" the class-action label "does not overcome." *Id.*; *see Ferrari*, 2015 WL 2242128, at \*10 (granting motion to dismiss because Massachusetts plaintiff who purchased relevant product in Massachusetts "lack[ed] standing to bring his claims under Minnesota's consumer protection statutes"); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009) (same).

The analysis comes out the same way if this problem is viewed as an issue of so-

12

called "'statutory standing'"—that is, whether the non-Massachusetts "cause[s] of action . . . extend to" out-of-state plaintiffs like the City. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4, 129 (2014). As common sense would suggest, they do not, and it is not difficult to see why. "[U]nder the Constitution's horizontal separation of powers," States lack authority to enact "law[s] that directly regulate[] out-of-state transactions by those with no connection to the State." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 376 n.1 (2023) (emphases omitted); *see Ass'n for Accessible Meds. v. Ellison*, 140 F.4th 957, 960 (8th Cir. 2025) ("a state has no power to project its legislation into another state" (alterations and internal quotation marks omitted)); *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 941 (4th Cir. 1994) ("inherent in our system of federalism" is the rule that state sovereignty "extends only within the state's geographical borders"). Because of this limitation—and because States pass laws for the benefit of their own citizens and not for others—it is well-established that a Massachusetts plaintiff like the City may not sue under the laws of the 49 other States. *See*, *e.g.*, *Longaker v. Bos. Sci. Corp.*, 872 F. Supp. 2d 816, 819–20 (D. Minn. 2012), *aff'd*, 715 F.3d 658 (8th Cir. 2013); *Pohl v. Cheatham*, 718 S.W.3d 173, 182–83 (Tex. 2025) ("strong presumption against extraterritorial application" exists because "the [Texas] Legislature generally legislates with Texas concerns in mind"); *cf. Lexmark*, 572 U.S. at 129 ("we presume that a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked'").

State courts applying some of the laws at issue here have recognized as much. The Illinois Supreme Court, for example, has held that "a plaintiff may pursue a private cause

13

of action under the [Illinois] Consumer Fraud Act" only "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853–54 (2005); *see also Cont'l Res., Inc. v. Wolla Oilfield Servs., LLC*, 510 P.3d 175, 180 (Okla. 2022) ("adopt[ing] the *Avery* court's approach" and applying it to the Oklahoma Consumer Protection Act); Compl. ¶ 281 (invoking the Illinois and Oklahoma Acts). Connecticut courts have similarly limited the reach of the Connecticut Unfair Trade Practices Act to "unfair trade practices occurring within the state of Connecticut." *W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 78 A.3d 167, 187–88 (Conn. App. Ct. 2013); *see* Compl. ¶ 281 (invoking the Connecticut Act). And the New York Court of Appeals has concluded that, under the State's Consumer Protection Act, "the transaction in which the consumer is deceived must occur in New York." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (2002); *see* Compl. ¶ 281 (invoking the New York Act). To hold otherwise, the court explained, "would tread on the ability of other states to regulate their own markets and enforce their own consumer protection laws." *Goshen*, 774 N.E.2d at 1196.

The bottom line is that States do not and constitutionally cannot allow plaintiffs with no connection to the State to invoke state law. The City, a Massachusetts plaintiff alleging Massachusetts-based injuries, is therefore not "within the class of plaintiffs . . . authorized to sue under" the non-Massachusetts laws it invokes, *Lexmark*, 572 U.S. at 137, and the Court should dismiss the corresponding claims for lack of statutory standing, *see*, *e.g.*, *Longaker*, 872 F. Supp. 2d at 819 (dismissing on standing grounds because out-of-state plaintiff could not invoke the Minnesota law at issue); *Paulausky v. Mayo Clinic*, 2025 WL

14

2194586, at *4 (D. Minn. Aug. 1, 2025) (same).

### 2.    The City Fails to Plausibly Allege Its Massachusetts Claims.

Plaintiff also fails to plead facts sufficient to support its Massachusetts claims. Compl. ¶¶ 254–92.[7]

#### i.    The City Fails to Plausibly Allege Unjust Enrichment (Count I) as to 3M.

To establish unjust enrichment under Massachusetts law, a plaintiff must plausibly allege, among other things, "(1) a benefit conferred upon the defendant by plaintiff" and "(2) an appreciation or knowledge by the defendant of the benefit." *Walgreen Co. v. Haseotes*, 778 F. Supp. 3d 264, 295 (D. Mass. 2025) (internal quotation marks omitted). The Complaint fails to sufficiently allege these elements against 3M.

*First*, the Complaint does not allege that the City conferred a benefit on 3M. Instead, the City asserts that it "bestow[ed] upon the Defendants"—as a group—"the benefit of a financial transaction in which money was paid by Plaintiff," and that the City "legitimiz[ed] in the marketplace" the notion that turnout gear was merchantable and safe. Compl. ¶¶ 255–56. But even if the City had plausibly connected its turnout gear to 3M (*see supra* Part IV.A), there is no getting away from the fact that the only Defendant the City allegedly transacted with—and thus conferred a benefit on—was Globe. *Id.* ¶ 25.

---

[7]    Because the City is a Massachusetts entity and does not allege a connection to any other jurisdiction, 3M evaluates the City's claims under Massachusetts law. *See*, *e.g.*, *Burke v. DJO, LLC*, 2012 WL 383948, at *2 (D. Minn. Feb. 6, 2012) (Massachusetts law applied in product-liability case where plaintiff was "a resident of Massachusetts and all relevant events took place in Massachusetts"). But it reserves the right to respond to any choice-of-law arguments the City may raise in its response.

15

Under Massachusetts law, however, "'unjust enrichment requires that the plaintiff *directly* bestow[] a benefit on the defendant.'"  *Walgreen*, 778 F. Supp. 3d at 295.  Because 3M was not a party to the City's transactions with Globe, 3M is "too far removed . . . to warrant liability on an unjust enrichment theory." *Blake v. Prof'l Coin Grading Serv.*, 898 F. Supp. 2d 365, 390–91 (D. Mass. 2012).

*Second*, the City does not allege that 3M had "'an appreciation or knowledge'" of the benefit the City supposedly conferred. *Walgreen*, 778 F. Supp. 3d at 295.  In its unjust-enrichment allegations, the City again relies, improperly, on the supposed "collective misconduct" of all "Defendants," and it elsewhere alleges 3M had "long-standing knowledge of the dangers of PFAS." Compl. ¶¶ 164–68, 260.  But the City never alleges, as it must to sustain this claim, that 3M (or any other non-Globe Defendant for that matter) had any awareness about the City's turnout-gear purchases from Globe.

*Finally*, even if the City had adequately alleged the elements of unjust enrichment, the Court should still dismiss the claim because the City has available adequate legal remedies.  A "party with an adequate remedy at law cannot also assert a claim for unjust enrichment." *Williams v. Stop & Shop Supermarket Co.*, 2025 WL 1279374, at *2 (D. Mass. May 2, 2025).  An unjust enrichment claim should therefore be dismissed even when a plaintiff's legal claim is "ultimately unviable." *Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185, 190 (D. Mass. 2019); *Schuster v. Wynn Ma, LLC*, 118 F.4th 30, 38 (1st Cir. 2024) ("It is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." (citation omitted)).  Here, the City's claim for fraudulent misrepresentation and omission and its Chapter 93A claim "preclude[]" the City "from

16

bringing a parallel claim for unjust enrichment that seeks to redress the same alleged injury," *Williams*, 2025 1279374, at \*2, even though the City's legal claims fail for the reasons explained below, *see Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 83–84 (1st Cir. 2020) (the "viability" of legal claims is "beside the point"); *Pershouse*, 368 F. Supp. 3d at 190 (dismissing unjust enrichment claim given existence of Chapter 93A claim that was likewise dismissed).

> ii. **The Court Should Dismiss the Remaining Claims Against 3M Because the City has Failed to Plausibly Allege Causation (Counts II–V).**

The City's other claims require it to plausibly allege that 3M's alleged conduct caused the City's injuries. *See Balles v. Babcock Power Inc.*, 70 N.E.3d 905, 913 (Mass. 2017) (fraud); *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 89 (1st Cir. 1993) (breach of warranty); *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 17 N.E.3d 1066, 1075 (Mass. 2014) (Chapter 93A); *Garcia v. Kusan, Inc.*, 655 N.E.2d 1290, 1293 (Mass. App. Ct. 1995) (negligence). Because the City has not plausibly alleged it bought turnout gear containing PFAS manufactured by 3M, *see supra* Part IV.A, the City cannot establish causation, *see*, *e.g.*, *Mathers v. Midland-Ross Corp.*, 532 N.E.2d 46, 49 (Mass. 1989) ("A plaintiff who sues a particular manufacturer for product liability generally must be able to prove that the item which it is claimed caused the injury can be traced to that specific manufacturer."); *Garcia*, 655 N.E.2d at 1293 (dismissing warranty claim where plaintiff could not be sure which of several manufacturers produced the item that harmed him). In that respect, the remaining claims have the same causation problem this Court recognized in *Peterson*. *See Peterson*, 2025 WL 2784485 at \*6 (absence of "allegations that Plaintiffs' carpet was

17

treated with [3M] PFAS products[] undermin[ed]" causation).

### iii. The City Fails to Plausibly Allege that 3M Engaged in Fraudulent Misrepresentation or Omission (Count II).

The City asserts a claim for "knowing concealment & misrepresentation of material information," Compl. ¶¶ 261–67, which under Massachusetts law would likely be treated as a claim for either fraudulent misrepresentation or fraud by omission. However construed, the claim fails.

Fraudulent Misrepresentation. To sustain this kind of claim, a plaintiff "must establish that the defendant 'made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage.'" *Rick v. Profit Mgmt. Assocs., Inc.*, 241 F. Supp. 3d 215, 223 (D. Mass. 2017) (quoting *Russell v. Cooley Dickinson Hosp., Inc.*, 772 N.E.2d 1054, 1066 (Mass. 2002)).

To start, the Complaint fails to adequately allege that 3M knowingly made any false representation of a material fact. The City asserts that "Defendants . . . affirmatively misrepresented the risk of injury to potential purchasers" and that "Defendants, prior to and at the time of the transaction at issue, affirmatively misrepresented . . . that the goods at issue were fit for the ordinary purposes for which they were to be used." Compl. ¶¶ 18, 198, 247, 264. But these are precisely the kind of conclusory allegations that are insufficient to state a claim. *Twombly*, 550 U.S. at 555. And they "do not come close" to satisfying the heightened pleading standard applicable to fraud claims: Under Rule 9(b), a plaintiff may not "attribute[] fraudulent representations and conduct to multiple defendants

18

generally, in a group pleading fashion." *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015); *accord*, *e.g.*, *Rick*, 241 F. Supp. 3d at 224 ("[W]here there are multiple defendants, the specific role of each must be alleged.").

To be sure, the Complaint contains certain statements attributed to 3M, but the City does not explain how these statements were either false or material to the City's decision to purchase turnout gear. For example, the Complaint notes that 3M has stated that, generally, "PFAS are safely used in many modern products for their important properties and can be safely manufactured." Compl. ¶ 199 (alteration adopted). But "[a]s to PFOA and PFOS" specifically, it is undisputed that 3M publicly acknowledged that "some research shows that these materials are associated with negative health outcomes." *Id.* ¶ 200.

Additionally, the City does not allege it reasonably relied on any of 3M's supposed misrepresentations—unsurprising, given that the City cannot plausibly connect 3M products to the turnout gear it purchased. Instead, the City asserts that "Plaintiff and Class members relied on Defendants' representations that the Turnout Gear was safe and suitable for use by humans," Compl. ¶ 115, and that "Defendants' conduct induced Plaintiff and the Class members to purchase fire fighter PPE treated and/or contaminated with PFAS," *id.* ¶ 255. Again, these classic examples of impermissible group pleading do not pass muster under Rule 8, much less under Rule 9's particularity standard. *See McCabe v. Ford Motor Co.*, 774 F. Supp. 3d 349, 387 (D. Mass. 2025) (dismissing similarly conclusory Massachusetts fraud claim and explaining that "[r]eliance is one of the 'circumstances' that

19

must be pleaded with particularity"); *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 423 (8th Cir. 2020) ("Conclusory allegations that a plaintiff detrimentally relied on defendants' representations are not sufficient factual matter to state a claim of relief plausible on its face.").

Nothing in the Complaint identifies a specific statement from 3M that led the City to purchase turnout gear during the past four years. That is fatal to the fraudulent misrepresentation claim.

Fraudulent Omission: To state an omission claim, a "plaintiff must allege 'both concealment of material information and a duty requiring disclosure.'" *Buffalo-Water 1, LLC v. Fid. Real Estate Co.*, 111 N.E.3d 266, 277 (Mass. 2018). The Complaint does not adequately allege either.

Start with concealment. The conclusory assertion that "Defendants," as a group, "did not adequately disclose to and concealed the material information from Plaintiff," Compl. ¶¶ 18, 231, 246, 263, 265, fails under any applicable pleading standard. And given that the City alleges that, back in 1998, "3M produced over 1,000 studies it had previously withheld from the EPA," *id.* ¶ 169, it is unclear what the City believes 3M concealed nearly 25 years later when the City began purchasing Globe gear, *id.* ¶ 25. So much for the Rule 9 requirement to "'specify the time, place, and content of the defendant's false representations.'" *Streambend*, 781 F.3d at 1013 (alteration adopted).

The Complaint falls short on the duty element, too. In the context of an omission claim, a duty arises "where '(i) there is a fiduciary or other similar relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be necessary to

20

prevent his partial or ambiguous statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to the essence of, the transaction.'" *Knapp v. Neptune Towers Assocs.*, 892 N.E.2d 820, 824 (Mass. App. Ct. 2008). "First," however, "the complaint does not allege any fiduciary relationship between plaintiffs and" 3M. *McCabe v. Ford Motor Co.*, 720 F. Supp. 3d 14, 30 (D. Mass. 2024). And "[s]econd, it does not identify any 'partial or ambiguous statement of the facts' made by" 3M to the City about the turnout gear it purchased. *Id.*

Nor was there a duty to disclose facts basic to the transaction. That duty arises only as between "'part[ies] to a business transaction" and only where the non-disclosing party "'knows that the other is about to enter into it under a mistake as to them.'" *Id.* (quoting Restatement (Second) of Torts § 551(2)(e) (1977)); *see Knapp*, 892 N.E.2d at 824 (relying on Restatement when discussing duty to disclose). Here, there is no business transaction alleged between the City and 3M. And there are no allegations suggesting 3M knew about the City's purchases from Globe or about the City's knowledge at the time.

The fraudulent-omission claim is deficient from beginning to end and must be dismissed.

### iv. The City Fails to Plausibly Allege that 3M Breached Any Implied Warranty (Count III).

Under Massachusetts law, manufacturers impliedly warrant that their products will be merchantable and fit for ordinary use. *Zoll Med. Corp. v. Barracuda Networks, Inc.*, 565 F. Supp. 3d 101, 107 (D. Mass. 2021). In certain circumstances, Massachusetts also

recognizes "an implied warranty of fitness with respect to goods used for a particular purpose." *Id.* The City claims that 3M breached both warranties, but both claims fail.

*First*, the City's warranty claims focus on turnout gear, which 3M did not manufacture. To state a claim for breach of either implied warranty, a plaintiff must establish that the relevant "defendant manufactured or sold the subject product." *Zoll*, 565 F. Supp. 3d at 107. The City does not contend that *PFAS* was not merchantable or fit for ordinary purposes; according to the Complaint, "the subject of this action" is "fire fighter PPE" or "Turnout Gear." Compl. ¶ 270; *see Garcia*, 655 N.E.2d at 1293 (focusing on "plaintiff's theory" of what the subject product was). The warranty claims therefore rest on "Defendants' proffering firefighter [turnout gear] that was unmerchantable." Compl. ¶ 269. And without an allegation that 3M sold turnout gear, the City cannot establish that 3M "manufactured or sold the subject product." *Zoll*, 565 F. Supp. 3d at 107.

*Second*, the implied-warranty claim for fitness for a particular purpose fails because there are no allegations 3M knew the City would use a product for anything other than its ordinary purpose. The particular-purpose warranty "'applies only where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods.'" *Zoll*, 565 F. Supp. 3d at 107–08. In other words, the warranty is implied only where the buyer plans to use the product for some "purpose other than for what [the product] is normally used." *Fernandes v. Union Bookbinding Co.*, 507 N.E.2d 728, 733 (Mass. 1987). Here, however, there is no reason to suppose the City intended to (or did) use turnout gear for anything other than its ordinary purpose: "to allow [the City's]

22

firefighting personnel to safely and efficiently perform their duties." Compl. ¶ 3. Nor has the City plausibly alleged that 3M knew of any such unordinary purpose—or even that 3M knew the purchase (from Globe, not 3M) happened at all. *Supra* p. 21; *see Pub. Serv. Mut. Ins. v. Empire Comfort Sys., Inc.*, 573 F. Supp. 2d 372, 381 (D. Mass. 2008) (dismissing, in part because plaintiff "relied on the heating contractor, not [defendant] Empire, in selecting the" product at issue).

*Third*, the economic loss doctrine bars both warranty claims. "Massachusetts precludes recovery for solely economic losses on the implied warranty of merchantability." *Rezendes v. Mitsubishi Motors N. Am., Inc.*, 2023 WL 4552030, at *2 (D. Mass. July 14, 2023). That is, a plaintiff may not recover the "costs associated with repair [or] replacement of the product," *id.*, unless the plaintiff can establish that it also suffered "personal injury or property damage," *FMR Corp. v. Bos. Edison Co.*, 613 N.E.2d 902, 903 (Mass. 1993). The City's allegations run headlong into this rule: The Complaint seeks damages related to the disposal and replacement of PFAS-treated turnout gear, Compl. ¶¶ 274, 278–79, but the City does not allege property damage and cannot allege it suffered a personal injury.

### v. The City Fails to Plausibly Allege that 3M Violated Massachusetts's Consumer Protection Act (Count IV).

The City's claim against 3M under Massachusetts General Law chapter 93A likewise fails as a matter of law. To state a Chapter 93A claim, a plaintiff must plausibly allege that (1) the defendant engaged in an unfair method of competition or committed an unfair deceptive act or practice, and (2) the defendant's unfair or deceptive conduct caused

23

the loss suffered. *Auto Flat*, 17 N.E.3d at 1074–75. The City has not plausibly alleged either element as to 3M.

*First*, as with so many of the counts, the claim against 3M rests on improper group pleading and legal conclusions, not factual allegations. According to the Complaint, "Defendants' conduct at issue constitutes unfair and deceptive acts and practices." Compl. ¶ 282. This recitation of an element of the cause of action does nothing to advance the City's cause, *Twombly*, 550 U.S. at 555, even when repeated throughout the count, *see* Compl. ¶¶ 284–85, 287.

The City does assert that "Defendants," collectively, "misrepresented to Plaintiff" that the "fire fighting [turnout gear it purchased] comported with industry standards as detailed in NFPA [National Fire Protection Association] standards," Compl. ¶ 284, but that assertion is also insufficient to establish 3M's liability. There are no allegations that 3M made any misrepresentations about the Globe turnout gear the City purchased. *Supra* Part IV.B.2.iii (same deficiency dooms fraud claim); *cf. Macoviak v. Chase Home Mortg. Corp.*, 667 N.E.2d 900, 904 (Mass. App. Ct. 1996) (dismissing Chapter 93A claim because it was derivative of dismissed fraud claim). There is no precedent for imposing deceptive-acts liability on a defendant not alleged to have made or facilitated misrepresentations about the relevant product. And, elsewhere in the Complaint, Plaintiff suggests that the "durable water repellent and heat resistive characteristics" of PFAS-containing turnout gear *did* "comply with the industry standards." Compl. ¶ 223; *see id.* ¶ 228; *Lucke v. Wells Fargo Bank, N.A.*, 2014 WL 12601035, at *4 (D. Minn. Apr. 2, 2014) ("the court need not accept as true the inconsistent allegations in [a] complaint").

24

*Second*, the City's allegations fall far short of establishing causation. The City contends that as a "result of Defendants' . . . unfair and deceptive acts . . . , Plaintiff incurred the loss of money and property." Compl. ¶ 284. For now-familiar reasons, however, the facts alleged do not back up this conclusory statement: Nothing but unwarranted inferences connects 3M to the Globe turnout gear the City purchased, *supra* Part IV.A; there is nothing to plausibly suggest the City was aware of any statement by 3M about PFAS, *supra* pp. 21, 23; and 3M disclosed over 1,000 studies about—and stopped the production of—PFOA and PFOS decades before the City's alleged purchases, *supra* pp. 4–5, 20. In short, the City has not plausibly alleged "a causal connection between a deceptive act" by 3M "and a loss to the" City. *Hershenow v. Enter. Rent-A-Car Co. of Bos., Inc.*, 840 N.E.2d 526, 528 (Mass. 2006); *see id.* at 533 (misrepresentation not actionable without "causal connection to a loss").

### vi.   The City Fails to Plausibly Allege Negligence (Count V).

Finally, the City's barebones negligence claim fails, too. Compl. ¶¶ 288–92. "To make out a claim for negligence, the plaintiff must show [1] that the defendant 'owed him a duty of reasonable care, [2] that the defendant committed a breach of that duty, [3] that damage resulted, and [4] that there was a causal relation between the breach of duty and the damage.'" *Go-Best Assets Ltd. v. Citizens Bank of Mass.*, 972 N.E.2d 426, 431 (Mass. 2012) (alteration adopted). The Complaint, however, has a causation problem. *Supra* Part IV.B.2.ii. And the economic-loss doctrine, which bars the implied-warranty claims, similarly bars the negligence claim, which also alleges purely economic damages. *See supra* p. 23; *FMR*, 613 N.E.2d at 903 (doctrine applies to "[n]egligence claims for

25

economic damage"); Compl. ¶ 292 (under the negligence count, seeking recovery for "costs associated with purchasing" and "replacing the PFAS-containing PPE").

The allegations do not support the duty and breach elements of negligence either. That's because the duty the City imagines has no connection to 3M. According to the Complaint, "Defendants were negligent and breached their duty of care in producing [turnout gear] containing PFAS." Compl. ¶ 291. But the City does not allege 3M produced turnout gear, and it is anyone's guess what legal duty the City believes 3M owed with respect to a product it "did not manufacture." *Murray v. Goodrich Eng'g Corp.*, 566 N.E.2d 631 (Mass. App. Ct. 1991) (component manufacturer had no duty to warn about dangers associated with machine as a whole); *see*, *e.g.*, *Satchi v. Rheon U.S.A., Inc.*, 255 F. Supp. 3d 253, 262 (D. Mass. 2017) (under Massachusetts's "limited affirmative duty to warn," "affirmative duty to warn" applies only to "dangers inherent to [manufacturers'] own products").

### 3.      Dismissal of the City's Individual Claims Requires Dismissal of the Class Claims.

Because the putative class representative's individual claims fail, its putative class claims, under the laws of Massachusetts and other jurisdictions, must be dismissed with prejudice. A putative class representative "'must have a cause of action in his own right in order to bring a class action,'" *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 101–02, 106 (2d Cir. 2021), so class claims "cannot survive" if the named plaintiff's claims are dismissed, *Great Rivers Co-op. of Se. Iowa v. Farmland Indus., Inc.*, 120 F.3d 893, 899 (8th Cir. 1997); *cf. Vervaecke v. Chiles, Heider & Co.*, 578

F.2d 713, 719–20 (8th Cir. 1978) (no abuse of discretion where district court struck class claims before class certification because class representative's claims failed).

Without viable claims of its own, the City's putative class-action claims should be dismissed. *See Great Rivers*, 120 F.3d at 899.

## V.    CONCLUSION

The Court should dismiss the claims against 3M, either without prejudice for lack of standing or with prejudice for failure to state a claim.

Dated:    October 16, 2025

Respectfully submitted,

**Norton Rose Fulbright US LLP**

By:    /s/*Benjamin W. Hulse*
Benjamin W. Hulse (MN #390952)
G. Tony Atwal (MN #0331636)
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Telephone: (612) 321-2278
Facsimile: (612) 321-2288
Ben.hulse@nortonrosefulbright.com
Tony.atwal@nortonrosefulbright.com

**Gibson, Dunn & Crutcher LLP**

Lauren R. Goldman (*pro hac vice*)
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-2375
lgoldman@gibsondunn.com

Gregg J. Costa (*pro hac vice*)
811 Main Street, Suite 3000
Houston, TX 77002-6117
Telephone: (346) 718-6649
gcosta@gibsondunn.com

27

Adam I. Steene (*pro hac vice*)
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone: (202) 777-9326
asteene@gibsondunn.com

*Counsel for Defendant 3M Company*

28