UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CITY OF PEABODY, MASSACHUSETTS, individually and on behalf of a class of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>3M COMPANY (F/K/A MINNESOTA MINING AND MANUFACTURING COMPANY) et al.,<br><br>Defendants. | Case No. 25-cv-2083 (JMB/SGE) |

**MEMORANDUM OF LAW IN SUPPORT OF
GLOBE MANUFACTURING COMPANY, LLC'S MOTION TO DISMISS
PLAINTIFF'S CORRECTED COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

I.  INTRODUCTION. ................................................................................................... 1

II.  BACKGROUND. ...................................................................................................... 4

III.  LEGAL STANDARD. .............................................................................................. 5

IV.  ARGUMENT ............................................................................................................ 7

    A.  Peabody's Claims Against Globe Must Be Dismissed In Their Entirety For Lack Of Personal Jurisdiction. .................................................... 7

        1.  Globe Is Not Subject To General Jurisdiction In Minnesota. ............ 8

        2.  The Complaint Does Not Allege Any Facts To Support The Exercise Of Specific Personal Jurisdiction Over Globe. ................... 9

    B.  Peabody's Complaint Fails To Establish Article III Standing. ................... 10

        1.  Peabody Has Not Pled An Injury-in-Fact. ...................................... 11

        2.  Peabody Has Not Pled Traceability. ............................................... 12

    C.  Peabody's Claims Are Subject To Dismissal For Failure To State A Claim. .......................................................................................................... 14

        1.  Peabody's Claim of "Knowing Concealment And Misrepresentation Of Material Information" Fails To Satisfy Rule 9(b)'s Heightened Pleading Standard ..................................... 14

        2.  Independent Grounds Warrant Dismissal of Peabody's Warranty Claims. ......................................................................... 18

        3.  Peabody's Negligence Claim Is Barred By The Economic Loss Doctrine. .......................................................................................... 21

        4.  Peabody Fails To State A Claim For Unfair Or Deceptive Business Acts Or Practices Under Massachusetts Law. .................. 21

        5.  Peabody Has An Adequate Remedy at Law, Precluding Its Unjust Enrichment Claim. ............................................................... 24

V.  CONCLUSION ........................................................................................................ 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alleruzzo v. SuperValu, Inc. (In re SuperValu, Inc. Customer Data Sec. Breach Litig.)*,
   870 F.3d 763 (8th Cir. 2017) ................................................................................ 10

*Anoush Cab, Inc. v. Uber Techs., Inc.*,
   8 F.4th 1 (1st Cir. 2021) ....................................................................................... 22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................. 6, 7

*Block v. Toyota Motor Corp.*,
   Civ. Nos. 10-2802, 10-2803, 2010 WL 5422555 (D. Minn. Dec. 23, 2010), *aff'd*, 665 F.3d 944 (8th Cir. 2011) ............................................................... 16

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
   582 U.S. 255 (2017) .............................................................................................. 10

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ............................................................................................... 8

*Burlington Indus., Inc. v. Maples Indus., Inc.*,
   97 F.3d 1100 (8th Cir. 1996) ................................................................................. 8

*Calzone v. Hawley*,
   866 F.3d 866 (8th Cir. 2017) ............................................................................... 12

*Daher v. G.D. Searle & Co.*,
   695 F. Supp. 436 (D. Minn. 1988) ....................................................................... 17

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ............................................................................................... 8

*Dever v. Hentzen Coatings, Inc.*,
   380 F.3d 1070 (8th Cir. 2004) ............................................................................... 7

*FMR Corp. v. Boston Edison Co.*,
   613 N.E.2d 902 (Mass. 1993) .............................................................................. 18

*Frank v. Gaos*,
   586 U.S. 485 (2019) ............................................................................................ 6, 11

ii

*Gattineri v. Wynn MA, LLC,*
  63 F.4th 71 (1st Cir. 2023)............................................................................. 15, 17

*Glick v. W. Power Sports, Inc.,*
  944 F.3d 714 (8th Cir. 2019) .................................................................................. 7

*Haglund v. Philip Morris, Inc.,*
  847 N.E.2d 315 (Mass. 2006) .............................................................................. 18

*Hardwick v. 3M Co.,*
  87 F.4th 315 (6th Cir. 2023) ................................................................................ 11

*Helicopteros Nacionales de Columbia, S.A. v. Hall,*
  466 U.S. 408 (1984)................................................................................................ 8

*Hooper v. David-Standard Corp.,*
  482 F. Supp. 2d 157 (D. Mass. 2007) ............................................................. 18, 19

*IAFF v. NFPA, Inc.,*
  No. 2384CV02517-BLS2 (Mass. Super. Ct. Mar. 5, 2024) ......................................... 5

*Iannacchino v. Ford Motor Co.,*
  888 N.E.2d 879 (Mass. 2008) ........................................................................... 22, 23

*K-V Pharm. Co. v. J. Uriach & CIA, S.A.,*
  648 F.3d 588 (8th Cir. 2011) .................................................................................. 6

*Karl's Shoe Stores, Ltd. v. United Shoe Mach. Corp.,*
  145 F. Supp. 376 (D. Mass. 1956) ......................................................................... 21

*Laver v. Peal,*
  516 F. Supp. 3d 931 (D. Minn. 2021)................................................................. 7, 8, 9

*Lexion Medical, LLC v. SurgiQuest, Inc.,*
  8 F. Supp. 3d 1122 (D. Minn. 2014)........................................................................ 9

*Lingis v. Waisbren,*
  914 N.E.2d 976 (Mass. App. 2009) ........................................................................ 21

*United States ex rel. Louderback v. Sunovion Pharms., Inc.,*
  703 F. Supp. 3d 961 (D. Minn. 2023)....................................................................... 5

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992)............................................................................................... 10

iii

*Martin v. Mead Johnson Nutrition Co.*,
No. 09-11609-NMG, 2010 WL 3928707 (D. Mass. Sept. 30, 2010) .......................... 22

*McCabe v. Ford Motor Co.*,
720 F. Supp. 3d 14 (D. Mass. 2024) ............................................................................. 17

*Murthy v. Missouri*,
603 U.S. 43 (2024) .................................................................................................. 6, 10

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ...................................................................................................... 11

*Olin v. Dakota Access LLC*,
910 F.3d 1072 (8th Cir. 2018) ................................................................................ 15, 16

*Peterson v. 3M Co.*,
No. 24-CV-03497, 2025 WL 2784485 (D. Minn. Sept. 30, 2025) .......................... 6, 12

*Pub. Serv. Mut. Ins. v. Empire Comfort Sys., Inc.*,
573 F. Supp. 2d 372 (D. Mass. 2008) .......................................................................... 20

*Rezendes v. Mitsubishi Motors N. Am., Inc.*,
No. 22-CV-10211-AK, 2023 WL 4552030 (D. Mass. July 14, 2023) ........................ 18

*Rick v. Profit Mgmt. Assocs., Inc.*,
241 F. Supp. 3d 215 (D. Mass. 2017) .......................................................................... 15

*Rule v. Fort Dodge Animal Health, Inc.*,
604 F. Supp. 2d 288 (D. Mass. 2009), *aff'd* 607 F.3d 250 (1st Cir. 2010).................. 20

*Schuster v. Wynn MA, LLC*,
118 F.4th 30 (1st Cir. 2024)......................................................................................... 24

*Shoutov v. LD Assocs., Inc.*,
150 N.E.3d 1147 (Mass. App. Ct. 2020) ..................................................................... 18

*Sovereign Bank v. Sturgis*,
863 F. Supp. 2d 75 (D. Mass. 2012) ............................................................................ 15

*Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*,
781 F.3d 1003 (8th Cir. 2015) ..................................................................................... 16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)...................................................................................................... 10

iv

*Wells Dairy, Inc. v. Food Movers Int'l, Inc.*,
607 F.3d 515 (8th Cir. 2010) .................................................................................. 6

*Williams v. Stop & Shop Supermarket Co.*,
No. 1:24-CV-12055-JEK, 2025 WL 1279374 (D. Mass. May 2, 2025) ..................... 24

*Wines v. Lake Havasu Boat Mfg., Inc.*,
846 F.2d 40 (8th Cir. 1988) .................................................................................... 7

*Zoll Med. Corp. v. Barracuda Networks, Inc.*,
565 F. Supp. 3d 101 (D. Mass. 2021) ................................................................. 19, 20

**Statutes**

Mass. Gen. Laws. Ch. 93A ........................................................................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 9(b) .........................................................................*passim*

Federal Rule of Civil Procedure 12(b) .......................................................................*passim*

v

## I.     INTRODUCTION.

Plaintiff, the City of Peabody, Massachusetts ("Peabody"), brings this purported class action against Defendant Globe Manufacturing Company, LLC ("Globe") and nineteen other Defendants seeking to recover costs to dispose of and replace its current firefighter protective gear, known as turnout gear.  Peabody does not claim that the gear fails to fulfill its purpose of protecting firefighters against flame, heat, and other hazards inherent in their work.  Instead, Peabody seeks costs to replace its existing turnout gear because it allegedly contains unspecified amounts of PFAS[1]—substances that Peabody acknowledges are "universal[ly] presen[t]" in human bloodstreams, exist at "background levels [in] drinking water, food, and other sources" and are also "use[d] in a wide range of commercial products and industries."  Compl. ¶¶ 57, 66, 166(d).  Peabody specifically asks for funds to provide each firefighter with "two sets of suitable Turnout Gear that has not been treated and/or contaminated with PFAS compounds and that complies with industry standards as detailed in the NFPA [National Fire Protection Association®] standards."  Compl. ¶ VII.D.  But Peabody's own allegations reveal its awareness that Peabody knew or should have known that Globe turnout gear might contain PFAS, *before it ever alleges to have begun purchasing* Globe turnout gear *and* that, only recently, has it become possible to purchase new turnout gear that contains no added PFAS and still complies with NFPA standards.  Compl. ¶¶ 96-105, 227-28.

---

[1] Per- and polyfluoroalkyl substances, or "PFAS" "are a class of thousands of synthetic chemical compounds" for which no set definition exists.  *See* Compl. ¶ 54.

There are three independent grounds for dismissal of Peabody's Corrected Class Action Complaint ("Complaint" or "Compl.") against Globe:

*First*, Peabody, a Massachusetts municipality, alleges it purchased turnout gear from Globe, a New Hampshire-based turnout gear assembler. Peabody does not allege any connection between Globe (or even itself) and Minnesota, yet seeks relief from this Minnesota Court. As the Complaint acknowledges, Globe is a New Hampshire company with its principal place of business in New Hampshire. Globe is not even registered to conduct business in Minnesota, and the Complaint does not include *any* allegations that Globe has any connection to Minnesota, much less connections sufficient to support this Court's exercise of personal jurisdiction over non-resident Globe. As a result, this Court does not have personal jurisdiction over Globe, and Peabody's claims against Globe must be dismissed in their entirety pursuant to Federal Rule of Civil Procedure 12(b)(2). *See* Section IV.A *infra.*

*Second*, this Court does not have subject matter jurisdiction over Peabody's claims against Globe. Peabody's entire 292-paragraph Complaint contains just six allegations specific to its claims against Globe (as opposed to references to all twenty "Defendants" generally), none of which establishes any cognizable injury, let alone traces any such injury to Globe turnout gear, as required for Article III standing. Those allegations are:

- Peabody has purchased turnout gear from Globe for the past four years. Compl. ¶ 25.

- Globe is a New Hampshire limited liability company with its principal place of business in New Hampshire. Compl. ¶ 36.

2

- A study published in 2020—before Peabody chose to purchase Globe turnout gear in 2021 and later—purportedly detected PFAS in turnout gear manufactured in 2017 and earlier.  Compl. ¶¶ 96-105.

- Globe has "continued to manufacture, market, and sell Turnout Gear containing PFAS, using PFAS-containing materials supplied by Defendants 3M, DuPont, Gore, InterTech, PBI, and TenCate and PFAS manufactured by Defendants 3M and/or DuPont."  Compl. ¶¶ 147-48.

- Globe, as with all other named turnout gear assembler Defendants, allegedly "expected their Turnour Gear to reach their ultimate users without substantial change in the condition in which they were designed and manufactured." Compl. ¶ 163.

- "Globe maintained and publicly advertised that the company is 'committed to firefighter health and safety.'" Compl. ¶ 215.  This allegation purports to quote language from an unidentified source on an unidentified date, and contains no reference to either turnout gear or PFAS.

Peabody does not allege Globe turnout gear caused any specific physical harm.  Nor does it allege that an alternative formulation of turnout gear that complied with NFPA standards was available, *see* Compl. ¶ 225, that it would have purchased such gear, or that it has stopped using the gear it previously purchased to protect its firefighters in the life-or-death situations their work may present.  Peabody's threadbare, conclusory allegations cannot establish Article III standing, which requires Peabody's claims against Globe to be dismissed in their entirety pursuant to Rule 12(b)(1).  *See* Section IV.B *infra.*

3

*Third*, Peabody's sparse allegations are insufficient to state the elements of its claims against Globe. Peabody asserts five claims against Globe: (a) "knowing concealment and misrepresentation of material information," which Globe understands to be a fraud claim (Section IV.C.1), (b) breach of the implied warranties of merchantability and fitness for a particular purpose (Section IV.C.2), (c) negligence (Section IV.C.3), (d) unfair and deceptive trade practices (Section IV.C.4), and (e) unjust enrichment (Section IV.C.5). But, again, Peabody's own allegations reveal three fatal flaws in its theory of liability: *first*, Peabody's Complaint indicates that the alleged presence of certain PFAS in components of turnout gear to impart performance characteristics was publicly knowable and studied before Peabody ever alleges to have begun purchasing Globe turnout gear, Compl. ¶¶ 96-105; *second*, only recently has it become possible to purchase new turnout gear that contains no added PFAS and still complies with industry safety standards set by the NFPA, Compl. ¶¶ 227-28; and *third*, Peabody acknowledges that its PFAS-containing turnout gear continues to serve its purpose, *i.e.*, to protect firefighters "from extreme heat, flames, and other hazards," Compl. ¶ 118. For these reasons and more as explained below, each of Peabody's claims against Globe fails under Rule 12(b)(6) and must be dismissed.

## II.    BACKGROUND.

Turnout gear is specialized protective equipment designed specifically to protect firefighters from the hazards they may encounter when responding to fire and other emergencies, including heat, fire, moisture, and chemicals. Turnout gear enables firefighters to save lives and protect property.

**Globe is a cut-and-stitch assembler of turnout gear, not a chemical manufacturer.** Globe does not manufacture, distribute, market, or sell PFAS. Compl. ¶ 148. Globe makes turnout gear composed of technical fabrics sourced from specialty textile manufacturers. Some of these protective fabrics, as supplied to Globe, contain or historically have contained PTFE, also known under the brand name Teflon®, a fluoropolymer that is classified as a PFAS under certain definitions. PTFE is used by textile manufacturers to achieve performance characteristics such as resistance to water, oil, or chemicals. *See* Compl. ¶¶ 14, 91-94.

Until recently, **all NFPA-compliant turnout gear contained some amount of PTFE to meet NFPA standards.** The International Association of Fire Fighters is "a labor organization that represents firefighters" and "contends that NFPA promulgated and maintains a standard for firefighters' turnout gear . . . that effectively requires manufacturers to use PTFE . . . and other PFAS . . . ." Exhibit A to Declaration of James L. Stengel (Dec. & Order Def.'s Mot. Dismiss at 1, *IAFF v. NFPA, Inc.*, No. 2384CV02517-BLS2 (Mass. Super. Ct. Mar. 5, 2024)).[2]

## III.    LEGAL STANDARD.

Globe moves to dismiss Peabody's claims pursuant to Rules 12(b)(1), (2) and (6) of the Federal Rules of Civil Procedure.

---

[2] In ruling on a motion to dismiss, courts may consider "'matters incorporated by reference or integral to the claim . . . [and] matters of public record . . . whose authenticity is unquestioned,' without converting the motion into one for summary judgment." *United States ex rel. Louderback v. Sunovion Pharms., Inc.*, 703 F. Supp. 3d 961, 969 (D. Minn. 2023) (citation omitted).

*Rule 12(b)(1):* "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Murthy v. Missouri*, 603 U.S. 43, 56 (2024). "When assessing Article III standing at the pleading stage, courts consider whether a plaintiff has 'clearly allege[d] facts' that demonstrate the following three elements: (1) the plaintiff has suffered an injury in fact; (2) the claimed injury is 'fairly traceable' to the defendant's alleged conduct; and (3) the relief sought will redress the claimed injury." *Peterson v. 3M Co.*, No. 24-CV-03497 (JMB/DLM), 2025 WL 2784485, at *3 (D. Minn. Sept. 30, 2025) (citing *Alleruzzo v. SuperValu, Inc. (In re SuperValu, Inc. Customer Data Sec. Breach Litig.)*, 870 F.3d 763, 768 (8th Cir. 2017)). In a putative class action, "federal courts lack jurisdiction if no named plaintiff has standing." *Frank v. Gaos*, 586 U.S. 485, 492 (2019).

*Rule 12(b)(2):* Peabody's Complaint must be dismissed under Rule 12(b)(2) as against any Defendant that is not subject to personal jurisdiction in Minnesota. It is the plaintiff's burden to "make a prima facie showing that personal jurisdiction exists." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591 (8th Cir. 2011). "To allege personal jurisdiction, 'a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state.'" *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (alteration in original) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)).

*Rule 12(b)(6):* Peabody's claims are subject to dismissal pursuant to Rule 12(b)(6) if the Complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  That requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Courts "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts."  *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

## IV.    ARGUMENT

### A.    Peabody's Claims Against Globe Must Be Dismissed In Their Entirety For Lack Of Personal Jurisdiction.

This Court cannot exercise personal jurisdiction over Globe because Peabody has not adequately alleged *any* connection between Globe, or its claims against Globe, and Minnesota.  "It is the plaintiff's burden to make a prima facie showing that personal jurisdiction exists."  *Laver v. Peal*, 516 F. Supp. 3d 931, 934 (D. Minn. 2021) (internal quotation marks omitted).  "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must state sufficient facts in the complaint to support a reasonable inference that [the defendants] can be subjected to jurisdiction within the state."  *Dever*, 380 F.3d at 1072 (internal quotation marks omitted).

Federal courts may exercise federal jurisdiction over nonresident parties like Globe if (a) "the facts presented satisfy the forum state's long-arm statute," and (b) "the nonresident has 'minimum contacts' with the forum state, so that the court's exercise of jurisdiction would be fair and in accordance with due process."  *Wines v. Lake Havasu Boat Mfg., Inc.*, 846 F.2d 40, 42 (8th Cir. 1988) (citation omitted).  Because "Minnesota's long-arm statute 'extends jurisdiction to the maximum limit consistent with due process,' a district court need only evaluate whether the requirements of due process are satisfied."

*Laver*, 516 F. Supp. 3d at 934 (quoting *Westley v. Mann*, 896 F. Supp. 2d 775, 789 (D. Minn. 2012)).

"Due process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980) and *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The Due Process Clause ensures that nonresidents cannot be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted).  *See also Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 & nn.8, 9 (1984).

"Two types of personal jurisdiction exist: general and specific." *Laver*, 516 F. Supp. 3d at 934.  As explained below, Globe is subject to neither general nor specific jurisdiction in Minnesota.  Therefore, Peabody's claims against Globe must be dismissed.

1.    Globe Is Not Subject To General Jurisdiction In Minnesota.

A company may be subject to general jurisdiction in a state if its affiliations with the state "are so constant and pervasive 'as to render [it] essentially at home in the forum State.'"  *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Peabody does not—and cannot—show that Globe is "at home" in Minnesota.  As Peabody acknowledges, Globe is a New Hampshire limited liability company with its principal place of business in

8

Pittsfield, New Hampshire.  Compl. ¶ 36.  The Complaint is devoid of *any allegations* regarding *any business* that Globe may have conducted in Minnesota such that it could be considered "essentially at home" in Minnesota.  *See* Compl. ¶¶ 51-53.  The furthest the Complaint goes is to allege, in a conclusory manner and without specifics, that "each Defendant"—collectively, without identifying any specific Defendant—"transacts business in, is found in, and/or has agents in this District."  Compl. ¶ 52.  Those allegations fall far short of the requisite showing.  *See Lexion Medical, LLC v. SurgiQuest, Inc.*, 8 F. Supp. 3d 1122, 1227-28 (D. Minn. 2014) (finding no general jurisdiction over out-of-state-defendant even where defendant had "ongoing, multiyear relationship" with Minnesota hospital, along with a "smattering of other connections" with Minnesota).  As a result, there is no basis for the Court to exercise general jurisdiction over Globe.

2.     The Complaint Does Not Allege Any Facts To Support The Exercise Of Specific Personal Jurisdiction Over Globe.

Peabody also fails to allege facts sufficient to support the exercise of specific personal jurisdiction over Globe.  "Specific personal jurisdiction exists when the cause of action arises out of, or is related to, the defendant's activities within the forum state and the defendant purposefully avails itself of the privilege of conducting activities within the forum state."  *Laver*, 516 F. Supp. 3d at 935.  Here, Peabody, "a municipality located in the state of Massachusetts," alleges that its claims arise out of its purchase of turnout gear from Globe, a New Hampshire company.  Compl. ¶ 25.  The Complaint does not indicate that the alleged transaction involved Minnesota contacts in any way.  Indeed, it is difficult to imagine how the alleged sale of a New Hampshire company's products to a

9

Massachusetts municipality could have involved Minnesota.  Minnesota has no interest in Peabody's claims against Globe.

Simply put, the Complaint contains no factual allegations suggesting that Globe has *any* activities in Minnesota—let alone that such activities gave rise to nonresident Peabody's claims there.  *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 265 (2017) (no specific jurisdiction where "all the conduct giving rise to the nonresidents' claims occurred elsewhere").  Because the allegations in the Complaint do not support a finding of either general or specific personal jurisdiction over Globe, Peabody's claims against Globe must be dismissed in their entirety.

### B.    Peabody's Complaint Fails To Establish Article III Standing.

Each of Peabody's claims against Globe must be dismissed for the independent reason that Peabody fails to establish Article III standing.  To establish standing, as Article III requires, a plaintiff must show that it "suffered an injury in fact that is concrete, particularized, and actual or imminent" that "was likely caused by the defendant." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  Such injury cannot be "conjectural or hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Because "standing is not dispensed in gross," standing requirements must be met "'for each claim that [the plaintiff] press[es] against each defendant, 'and for each form of relief that [it] seek[s].'" *Murthy*, 603 U.S. at 61 (quoting *TransUnion*, 594 U.S. at 431).  Named plaintiffs in a class action must establish standing in their own right; they cannot rely on the potential standing of absent class members.  *In re SuperValu, Inc.*, 870 F.3d at 768.  "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or

10

controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *Frank*, 586 U.S. at 492 ("federal courts lack jurisdiction if no named plaintiff has standing").

### 1.   Peabody Has Not Pled An Injury-in-Fact.

Peabody has not alleged a cognizable injury.  Peabody's claims against Globe are premised on the theory that Peabody—a municipality—was harmed because it was unable to purchase turnout gear "that has not been treated and/or contaminated with PFAS compounds and that complies with industry standards as detailed in NFPA standards." Compl. ¶ VII.D.  But Peabody does not allege that it tested and detected PFAS in its Globe turnout gear.  And while Peabody alleges generally that PFAS "could have accumulated in the blood and bodily tissue" of firefighters who are exposed to PFAS at unspecified, "unsafe levels," Compl. ¶¶ 137-38, Peabody does not allege that any firefighter in its municipality has been tested for and found to have "accumulated" PFAS levels in their blood or bodily tissue.  Even if Peabody has so alleged, as the Sixth Circuit opined, a finding of PFAS in the bloodstream is speculative and not sufficient to state Article III standing.  *See Hardwick v. 3M Co.*, 87 F.4th 315 (6th Cir. 2023).  Indeed, as Peabody admits, PFAS are present "in the blood of the general human population." Compl. ¶ 169.

Moreover, Peabody seeks costs to replace the NFPA-compliant, PFAS-containing turnout gear it allegedly purchased from Globe in 2021 with NFPA-compliant, *non-PFAS-containing* turnout gear.  But, by Peabody's own admission, NFPA-compliant, non-PFAS-containing turnout gear was not available for purchase in 2021.  *See* Compl. ¶¶ 4, 228. Indeed, Peabody concedes that alternatives to PFAS in turnout gear are a recent

11

development, alleging that UC Berkeley's Center for Green Chemistry was investigating safer alternatives to PFAS in turnout gear "[i]n or around 2022"—a year after Peabody's alleged purchases of Globe turnout gear began—and that "[*a*]*s of 2025* there are available in the marketplace PFAS free Turnout Gear that complies with the water-repellant and heat-restrictive characteristics and industry standards . . . embodied in applicable NFPA standards." Compl. ¶¶ 227-28 (emphasis added).

Accordingly, Peabody fails to adequately plead a cognizable injury of any kind from its purchase of Globe turnout gear, and its claims against Globe should be dismissed.

### 2. Peabody Has Not Pled Traceability.

Even if Peabody could establish an actual injury (it cannot), it does not allege an injury traceable to *Globe*'s actions. Peabody's allegations are insufficient because they are conclusory and generalized as to all Defendants, without attributing any conduct specific to Globe. "Article III standing to sue each defendant also requires a showing that each defendant caused his injury." *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017); *Peterson*, 2025 WL 2784485, at *4 (dismissing for lack of standing where plaintiffs failed to plausibly allege their carpets actually contained PFAS or that any injury was traceable to defendants, as opposed to other PFAS manufacturers or sources).

Notably, Peabody does not allege how Globe caused Peabody's alleged harm. Globe does not manufacture PFAS. *See* Compl. ¶¶ 26-31. Nor does Globe manufacture the textiles that allegedly contain or are treated with PFAS. *See* Compl. ¶ 113. Peabody does not allege that Globe specifically knew and misrepresented or otherwise failed to disclose any alleged health effects of exposure to PFAS in turnout gear. Peabody does not

12

allege that it interacted with Globe or otherwise saw or relied on any misrepresentation or omission about Globe turnout gear when Peabody chose to purchase it.

Moreover, Peabody's alleged need to replace its turnout gear is entirely dependent on its allegation that exposure to PFAS from turnout gear poses health risks—not on any claim that Globe turnout gear failed to perform its intended protective function. But Peabody has not alleged that levels or types of PFAS allegedly contained in Globe turnout gear it allegedly purchased could cause adverse health effects in its users.

Peabody instead relies on a study published in 2020 that tested both new *and used* turnout gear (all predating Peabody's purchase) manufactured by six different companies, not all of whom are defendants (the "Peaslee study"). Compl. ¶ 96-105. But the Peaslee study undermines rather than supports Peabody's arguments for standing. *First*, the Peaslee study fails to connect its test results to specific turnout gear manufacturers, making it impossible to determine which samples from the Peaslee study are Globe turnout gear. The Complaint does not allege otherwise. Compl. ¶ 96-105. *Second*, Peabody does not allege to have begun purchasing Globe turnout gear until the year *after* the Peaslee study was published. Compl. ¶ 25. Therefore, the Globe turnout gear Peabody allegedly purchased could not have been manufactured the same year or used in the same way as the gear tested in the Peaslee study. In fact, the Peaslee study looked at turnout gear predating Peabody's alleged purchase of Globe turnout gear by as much as 23 years. *Third*, Peabody allegedly chose to purchase Globe turnout gear *despite* the Peaslee study's reported finding of PFAS in turnout gear that was published, publicly available, and even covered by news outlets before Peabody's earliest alleged purchase—not to mention the other studies

13

Peabody cites in support of its claims of the health hazards associated with PFAS generally. Compl. ¶¶ 104, 105, nn.14, 15.

## C. Peabody's Claims Are Subject To Dismissal For Failure To State A Claim.

Finally, all of Peabody's claims against Globe—its fraud, implied warranty, negligence, unfair business practices, and unjust enrichment claims—must be dismissed under Rule 12(b)(6) for failure to state a claim.

Peabody does not identify the state laws under which it purports to bring claims, other than to cite the laws of all fifty states in its implied warranty and unfair and deceptive trade practices claims. Compl. ¶¶ 269, 281. Nor does it plead the elements of each state's law. Compl. ¶¶ 269, 281. Because Peabody is a Massachusetts municipality and its alleged purchase of Globe turnout gear presumably took place in Massachusetts, Globe applies Massachusetts law here. Globe specifically reserves the rights to: (a) respond to any choice-of-law arguments Peabody may raise in opposition to this motion to dismiss, (b) respond to each state law claim the Court may find that Peabody has sufficiently alleged, and (c) raise any applicable arguments and defenses under the laws of states other than Massachusetts.

### 1. Peabody's Claim of "Knowing Concealment And Misrepresentation Of Material Information" Fails To Satisfy Rule 9(b)'s Heightened Pleading Standard

Globe interprets Peabody's claim for "Knowing Concealment and Misrepresentation of Material Information," which is not a claim recognized under Massachusetts law, to be a fraud claim based on affirmative misrepresentations and omissions. Compl. ¶¶ 261-67. Fraudulent misrepresentation claims are subject to the

14

heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). *Rick v. Profit Mgmt. Assocs., Inc.*, 241 F. Supp. 3d 215, 223 (D. Mass. 2017). To satisfy Rule 9(b), a plaintiff must plead specific facts, including who committed the fraud, where and when the fraud occurred, and what the defendant obtained because of the fraud. *Olin v. Dakota Access LLC*, 910 F.3d 1072, 1075 (8th Cir. 2018). "Moreover, where there are multiple defendants, the specific role of each [defendant] must be alleged." *Rick*, 241 F. Supp. 3d at 224. Peabody's fraud claim against Globe must be dismissed because it fails to meet that heightened standard.

To recover under a fraudulent misrepresentation claim under Massachusetts law, a plaintiff must show that:

> (1) the defendant made a false representation of material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon; (2) the plaintiff relied upon the representation as true and acted upon it to his or her detriment; and (3) such reliance was reasonable under the circumstances.

*Gattineri v. Wynn MA, LLC*, 63 F.4th 71, 87-88 (1st Cir. 2023) (cleaned up); *see also Sovereign Bank v. Sturgis*, 863 F. Supp. 2d 75, 84 (D. Mass. 2012). Peabody fails to allege *any* of the required prongs, much less with the specificity required by Rule 9(b).

***No false statement by Globe alleged.*** Peabody does not allege that Globe represented that its turnout gear did not contain PFAS. Indeed, Peabody does not identify any false statement allegedly made by Globe in connection with Peabody's alleged purchase of turnout gear. Compl. ¶¶ 198-219. Peabody identifies statements made by *other* Defendants, *see* Compl. ¶¶ 199, 201-03, 206-11, 213-19, and one statement allegedly made by Globe that contains no reference to either turnout gear or PFAS, Compl. ¶ 215,

15

but those statements are insufficient to allege a fraud claim against Globe because the Complaint fails to plead how any of those statements are (a) false *and* (b) material to Peabody's alleged purchase of turnout gear from *Globe*. Peabody's bare allegations are not enough: "the complaint should inform *each defendant* of the nature of his alleged participation in the fraud." *Olin*, 910 F.3d at 1075 (emphasis added and citation omitted).

Instead, as discussed above, Peabody affirmatively cites to allegations from 2020 that turnout gear contained PFAS, a year *before* Peabody's alleged purchases of turnout gear from Globe. *Supra* Section IV.B.

***Allegations concerning misstatements made by "Defendants" collectively are insufficient to support claims against Globe.*** Peabody's attribution of allegedly fraudulent conduct to "multiple defendants generally, in a group pleading fashion" is insufficient as a matter of law to state a claim for fraud. *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015).

Here, every paragraph of Peabody's fraud claim refers to defendants *collectively*. Compl. ¶¶ 262-67. Peabody alleges that (a) "Defendants" possessed material information regarding Peabody's purchase of protective gear, Compl. ¶ 262, (b) "Defendants" failed to adequately disclose this material information, Compl. ¶ 263, (c) "Defendants" made material misrepresentations regarding the gear, Compl. ¶ 264, and (d) because of "Defendants'" actions, Peabody purchased gear and suffered resulting economic injury, Compl. ¶¶ 265-67. Decisions from this district have dismissed fraud claims for failure to satisfy Rule 9(b) on the basis that "pleading that the defendants collectively committed fraud is not sufficient." *Block v. Toyota Motor Corp.*, Civ. Nos. 10-2802 (ADM/AJB), 10-

16

2803 (ADM/AJB), 2010 WL 5422555, at *5 (D. Minn. Dec. 23, 2010), *aff'd*, 665 F.3d 944 (8th Cir. 2011); *Daher v. G.D. Searle & Co.*, 695 F. Supp. 436 (D. Minn. 1988) (concluding that fraud claims based on "malicious silence" violated Rule 9(b) where the complaint did not plead the time, place, or contents of the alleged fraud as to each individual defendant). This Court should do the same.

***No reliance alleged.***  Peabody does not allege that it considered—much less actually and reasonably relied on—statements made by Globe in deciding what gear to purchase. That is fatal to its fraudulent misrepresentation claim.  *Gattineri*, 63 F.4th at 87-88.

***No omission by Globe alleged.***  To the extent Peabody's argument is that Globe committed fraud by omission, that argument also fails.  "To show fraud by omission, the complaint must allege both concealment of material information and a duty requiring disclosure."  *McCabe v. Ford Motor Co.*, 720 F. Supp. 3d 14, 30 (D. Mass. 2024) (internal quotation marks omitted).  Under Massachusetts law, a duty to disclose arises where:

> (i) there is a fiduciary or other similar relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to the essence of, the transaction.

*Id.* (internal quotation marks omitted).  A duty to disclose based on information that goes to the essence of the transaction arises when a party to a transaction fails to disclose "facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to" those facts.  *Id.* (quoting Restatement (Second) of Torts § 551(2)(e) (1977)).

The Complaint fails to allege any facts concerning any fiduciary or special relationship between Peabody and Globe.  *See* Compl. ¶¶ 261-67.  Nor does the Complaint

17

allege that Globe knew Peabody to be mistaken as to facts basic to any alleged transaction. Compl. ¶¶ 261-67.  As a result, Peabody fails to state a claim for fraud by omission, much less with the specificity required by Rule 9(b), because it does not describe the context for any omission allegedly made by Globe, or explain what undisclosed facts went to the essence of the transaction.

2.    Independent Grounds Warrant Dismissal of Peabody's Warranty Claims.

Peabody attempts to assert claims for breach of the implied warranties of merchantability and fitness for a particular purpose.  Those claims fail for at least three reasons.

**First, Peabody does not allege that it provided notice of the alleged breach.** Notice to Globe of an alleged breach of warranty is a prerequisite to asserting a breach of warranty claim in Massachusetts.  *See Shoutov v. LD Assocs., Inc.*, 150 N.E.3d 1147 (Mass. App. Ct. 2020).

**Second, Peabody's implied warranty claims are barred by the economic loss doctrine.**  Massachusetts law is clear that implied warranty claims are strict liability claims[3] that "are barred by the economic loss doctrine" where they do not seek to redress a specific personal injury or property damage.  *Rezendes v. Mitsubishi Motors N. Am., Inc.*, No. 22-CV-10211-AK, 2023 WL 4552030, at *2 (D. Mass. July 14, 2023); *Hooper v. David-Standard Corp.*, 482 F. Supp. 2d 157, 159 (D. Mass. 2007); *FMR Corp. v. Boston Edison*

---

[3] Massachusetts law treats implied warranty claims as "the functional equivalent of strict liability" tort claims in many other jurisdictions.  *Haglund v. Philip Morris, Inc.*, 847 N.E.2d 315, 322 (Mass. 2006).

*Co.*, 613 N.E.2d 902, 903 (Mass. 1993). Here, for its warranty claims, Peabody seeks the amount that Peabody allegedly budgeted for past purchases of turnout gear, as well as the costs incurred in connection with disposing of its existing turnout gear and replacing that gear with gear that does not contain PFAS. Compl. ¶¶ 274, 279. To the extent Peabody's implied warranty claims seek only economic damages, Compl. ¶¶ 274, 279, they are barred by the economic loss doctrine. *Hooper*, 482 F. Supp. 2d at 159.

**_Third, Peabody fails to state a claim for breach of implied warranties._** Even if Peabody's implied warranty claims are not barred by the economic loss doctrine, the claims still must be dismissed pursuant to Rule 12(b)(6).

In order to succeed on its claim for breach of the implied warranty of merchantability, Peabody must show that (a) Globe manufactured or sold the subject turnout gear, (b) the turnout gear "contained a defect or unreasonably dangerous condition rendering it unsuitable for its ordinary use," (c) Peabody was using the product in a manner that Globe "intended or reasonably could have foreseen," and (d) the defect or dangerous condition was a legal cause of Peabody's injury. *Zoll Med. Corp. v. Barracuda Networks, Inc.*, 565 F. Supp. 3d 101, 107 (D. Mass. 2021).

Here, among other deficiencies, Peabody has not alleged—and cannot plausibly allege—that the gear it purchased from Globe was unsuitable for its ordinary use. As noted above, turnout gear is specialized protective equipment made specifically for firefighters designed to protect them against hazards including heat, fire, moisture, and chemicals they may encounter when responding to fire and other emergencies. Compl. ¶¶ 89-94, 118. Turnout gear enables firefighters to save lives and protect property. Compl. ¶¶ 117-18.

19

Peabody does not allege that Globe turnout gear was unsuitable for those purposes. To the contrary, the Complaint acknowledges that "firefighters routinely depended upon the Turnout Gear for protection from extreme heat, flames, and other hazards." Compl. ¶ 118. In fact, Peabody acknowledges that PFAS itself provides turnout gear with "water-repellent and heat resistive characteristics." Compl. ¶ 14. As a result, Peabody's claim for breach of the implied warranty of merchantability fails.

To plead a claim for breach of the implied warranty of fitness for a particular purpose, Peabody is required to show that (a) Globe knew Peabody had a "particular purpose" for the goods, and (b) Peabody was relying on Globe's skill or judgment to select or furnish suitable goods. *Zoll Med. Corp.*, 565 F. Supp. 3d at 107-08. "A 'particular purpose' differs from an 'ordinary purpose' in that it 'envisages a specific use by the buyer which is peculiar to the nature of his business.'" *Pub. Serv. Mut. Ins. v. Empire Comfort Sys., Inc.*, 573 F. Supp. 2d 372, 381 (D. Mass. 2008) (quoting *Wasylow v. Glock, Inc.*, 975 F. Supp. 370, 377 (D. Mass. 1996)).

Peabody cannot maintain a "particular purpose" claim because the Complaint lacks any allegations that its use of Globe turnout gear differed from the ordinary usage: to protect firefighters from hazards, including heat, flames, and moisture. *Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288, 296-97 (D. Mass. 2009), *aff'd* 607 F.3d 250 (1st Cir. 2010) (dismissing particular-purpose claim because plaintiff did not allege that heartworm medication for dogs was for a particular purpose different from the medication's ordinary use). Nor does Peabody allege that it relied on Globe's skill or

20

judgment to select turnout gear—or even that it purchased Globe turnout gear *directly* from Globe and not an independent third-party distributor.

      3.     <u>Peabody's Negligence Claim Is Barred By The Economic Loss Doctrine.</u>

To the extent Peabody's negligence claim seeks economic damages, it too is barred by the economic loss doctrine and must be dismissed on that basis. *See* Compl. ¶ 292 ("As a direct and proximate result of Defendants' negligence, Plaintiff and Class member suffered damages as they have incurred costs associated with purchasing the PFAS-containing PPE and will incur addition[al] costs in replacing the PFAS-containing PPE."); *Karl's Shoe Stores, Ltd. v. United Shoe Mach. Corp.*, 145 F. Supp. 376, 377 (D. Mass. 1956) (dismissing negligence claim under economic loss rule).

      4.     <u>Peabody Fails To State A Claim For Unfair Or Deceptive Business Acts Or Practices Under Massachusetts Law.</u>

Globe interprets Peabody's claim for "Unfair & Deceptive Business Acts Or Practices Declared To Be Unlawful" to be a claim under Chapter 93A of the Massachusetts General Laws. That claim must be dismissed under Rule 12(b)(6) because, as an initial matter, Peabody fails to allege that it has complied with the requirement under Massachusetts General Law 93A§ 9(3) that "[a]t least thirty days prior to the filing of [any action alleging an unfair or deceptive act], a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent." *See Lingis v. Waisbren*, 914 N.E.2d 976, 979 (Mass. App. 2009) ("Sending such a letter is a condition precedent to commencing an action under G.L. c. 93A, § 9.") (internal quotation marks and

citation omitted). Moreover, Peabody fails to allege facts to satisfy the elements of a Chapter 93A claim, much less with requisite specificity.

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws. Ch. 93A, § 2. Massachusetts courts have held that implied warranty claims and claims under Chapter 93A are "based on the same economic theory of injury and the same set of alleged facts, [and] they should survive or fail under the same analysis." *Iannacchino v. Ford Motor Co.*, 888 N.E.2d 879, 889 (Mass. 2008). A claim for violation of Chapter 93A requires three elements: "(1) the defendant engaged in an unfair method of competition or committed an unfair deceptive act or practice; (2) a loss of money or property was suffered; and (3) the defendant's unfair or deceptive method, act or practice caused the loss suffered." *Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 16 (1st Cir. 2021). Moreover, "[a] claim under Chapter 93A that involves fraud is subject to the heightened pleading requirement" under Fed. R. Civ. P. 9(b). *Martin v. Mead Johnson Nutrition Co.*, No. 09-11609-NMG, 2010 WL 3928707, *3 (D. Mass. Sept. 30, 2010) (citation omitted). Peabody fails to make that heightened showing for any of the three required elements.

*First*, Peabody fails to allege *any* facts to support an argument that *Globe* engaged in unfair or deceptive conduct that caused Peabody's alleged injury, much less with the specificity Rule 9(b) requires. *See* Compl. ¶¶ 283-84. The Complaint does not identify what conduct was allegedly unfair and deceptive, much less connect Globe's conduct to Peabody's alleged purchase of turnout gear. Indeed, the Complaint contains *no* factual allegations concerning the circumstances surrounding Peabody's purchase(s) from Globe.

22

*See* Compl. ¶ 25 (alleging only in general terms that "Plaintiff has purchased its PPE from Defendant Globe").

*Second*, Peabody does not allege any *loss* of money or property. Peabody only alleges that it seeks money to replace its used turnout gear with newer models, without identifying what gear it would like to purchase or alleging that sufficient quantities of that gear exist on the market to suit its current needs.

*Third*, Peabody fails to allege that any loss of money or property was caused by Globe's actions. To the contrary, Peabody acknowledges that (a) Globe does not make PFAS or the specialty textiles from which Globe turnout gear is assembled, Compl. ¶ 113, and (b) the turnout gear Peabody allegedly purchased from Globe complied with NFPA standards, Compl. ¶ 4. Massachusetts courts have dismissed Chapter 93A claims brought by plaintiffs asserting similar theories. For example, plaintiffs in *Iannacchino v. Ford Motor Company* brought claims under Chapter 93A based on a theory that they had been "injured because they paid for and currently own vehicles that purported to comply with Federal safety standards, but instead received noncompliant and defective vehicles." 888 N.E.2d at 885. The Massachusetts Supreme Judicial Court dismissed the claims based on a determination that the complaint failed to "identify a legally required standard that the vehicles were at least implicitly represented as meeting, but allegedly did not." *Id.* at 888. Here, Peabody does not allege that Globe turnout gear failed to meet *any* applicable standard, let alone a legally required standard. Accordingly, Peabody's Chapter 93A claim against Globe should be dismissed.

23

5.      Peabody Has An Adequate Remedy at Law, Precluding Its Unjust Enrichment Claim.

Finally, Peabody's unjust enrichment claim fails because Peabody has available to it an adequate remedy at law. "[A] party with an adequate remedy at law cannot also assert a claim for unjust enrichment, and the existence of a statutory claim for unfair or deceptive conduct precludes a plaintiff from bringing a parallel claim for unjust enrichment that seeks to redress the same alleged injury." *Williams v. Stop & Shop Supermarket Co.*, No. 1:24-CV-12055-JEK, 2025 WL 1279374, at *2 (D. Mass. May 2, 2025). Nonetheless, that is exactly what Peabody attempts to do here: Peabody asserts claims for fraud and violation of Chapter 93A against Globe seeking to redress the same alleged injury as its unjust enrichment claim—harm from its purchase of Globe turnout gear because that turnout gear allegedly contained PFAS. This is not permitted under Massachusetts law. *See id.* Moreover, that Peabody's fraud and Chapter 93A claims independently fail is irrelevant because "it is the *availability* of a remedy at law, not the *viability* of that remedy, that prohibits a claim for unjust enrichment." *See Schuster v. Wynn MA, LLC*, 118 F.4th 30, 38 (1st Cir. 2024) (internal quotation marks and citation omitted). Accordingly, Peabody's unjust enrichment claim against Globe should be dismissed.

## V.      CONCLUSION

For the foregoing reasons, Globe respectfully requests that the Court dismiss the Complaint against Globe with prejudice and grant all further relief that the Court deems appropriate.

Dated: October 16, 2025

Respectfully submitted,

 */s/ Devin T. Driscoll*
Alethea M. Huyser (#0389270)
Devin T. Driscoll (#0399948)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: 612.492.7000
ahuyser@fredlaw.com
ddriscoll@fredlaw.com

James L. Stengel* (N.Y. Bar No. 1800556)
Paige Pavone** (N.Y. Bar No. 5395041)
**ORRICK, HERRINGTON
& SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
jstengel@orrick.com
ppavone@orrick.com

Hillary Dang* (D.C. Bar No. 888314267)
**ORRICK, HERRINGTON
& SUTCLIFFE LLP**
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
hdang@orrick.com

*Attorneys for Defendant Globe
Manufacturing Company, LLC*

*Admitted pro hac vice
** Pro hac vice forthcoming

25