# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| CITY OF PEABODY, MASSACHUSETTS, individually and on behalf of a class of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>3M COMPANY (F/K/A MINNESOTA MINING AND MANUFACTURING COMPANY); EIDP, INC.; DUPONT DE NEMOURS, INC.; THE CHEMOURS COMPANY; CHEMOURS COMPANY FC, LLC; CORTEVA, INC.; and GLOBE MANUFACTURING COMPANY, LLC,<br><br>*Defendants*. | Case No. 25-cv-02083-JMB-SGE<br><br>Hon. Jeffrey M. Bryan |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT 3M COMPANY'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

III.   LEGAL STANDARD ......................................................................................... 6

IV.    ARGUMENT ...................................................................................................... 7

    A.   Plaintiff Lacks Article III Standing to Bring Any Claim Against 3M Because Plaintiff's Purported Injuries Are Not Traceable to 3M. ................ 7

    B.   Plaintiff's Claims Independently Fail as a Matter of Law. ......................... 11

        1.   The Court Should Dismiss Counts I–V Against 3M Because Plaintiff Has Failed to Plausibly Allege Causation. ......................... 11

        2.   Plaintiff Fails to Plausibly Allege That 3M Violated the Massachusetts Consumer Protection Act (Count I). ........................ 12

        3.   Massachusetts Law Does Not Recognize the Strict Liability Claims Plaintiff Brings (Counts II & III). ........................................ 16

        4.   Plaintiff Fails to Plausibly Allege That 3M Engaged in Fraudulent Misrepresentation or Concealment (Count IV). ............ 17

        5.   Plaintiff Fails to Plausibly Allege Negligence as to 3M (Count V). ............................................................................................... 22

        6.   Plaintiff Fails to Plausibly Allege Unjust Enrichment as to 3M (Count VI). ...................................................................................... 23

    C.   Dismissal of Plaintiff's Individual Claims Requires Dismissal of the Class Claims. ................................................................................................. 25

V.     CONCLUSION ................................................................................................. 26

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*,
949 F.3d 417 (8th Cir. 2020) ...................................................................... 6, 15, 20

*ARE-Tech Square, LLC v. Galenea Corp.*,
2017 WL 634771 (Mass. App. Ct. Feb. 16, 2017) ........................................ 25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................... 6, 8, 15, 18

*Balles v. Babcock Power Inc.*,
70 N.E.3d 905 (Mass. 2017) ........................................................................ 11

*Barnstable Cnty. v. 3M Co.*,
2017 WL 6452245 (D. Mass. Dec. 18, 2017) ................................................ 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................. 6, 14

*Blake v. Prof'l Coin Grading Serv.*,
898 F. Supp. 2d 365 (D. Mass. 2012) ......................................................... 24

*Buffalo-Water 1, LLC v. Fid. Real Estate Co.*,
111 N.E.3d 266 (Mass. 2018) ...................................................................... 21

*Burke v. DJO, LLC*,
2012 WL 383948 (D. Minn. Feb. 6, 2012) ................................................... 11

*Calzone v. Hawley*,
866 F.3d 866 (8th Cir. 2017) ....................................................................... 7, 8

*Cox v. Mortg. Elec. Registration Sys., Inc.*,
685 F.3d 663 (8th Cir. 2012) ....................................................................... 16

*Distefano v. Bank of Am., N.A.*,
--- F. Supp. 3d ----, 2026 WL 560027 (D. Mass. Feb. 27, 2026) .............. 14

*Dittmer Props., L.P. v. FDIC*,
708 F.3d 1011 (8th Cir. 2013) ..................................................................... 3, 5

*In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.* (*Hardwick*),
87 F.4th 315 (6th Cir. 2023) ................................................................. 1, 3, 10

*Entrialgo v. Twin City Dodge, Inc.*,
333 N.E.2d 202 (Mass. 1975) ...................................................................... 13

**TABLE OF AUTHORITIES**
(*continued*)

Page(s)

*Evans v. Lorillard Tobacco Co.*,
  990 N.E.2d 997 (Mass. 2013) .................................................................................... 11

*Fernandes v. Rodrigue*,
  646 N.E.2d 414 (Mass. App. Ct. 1995) ...................................................................... 15

*Frank v. Gaos*,
  586 U.S. 485 (2019) ...................................................................................................... 7

*Garcia v. Kusan, Inc.*,
  655 N.E.2d 1290 (Mass. App. Ct. 1995) ............................................................... 11, 12

*Glob. Commodities, Inc. v. Cap. Distribs. LLC*,
  2024 WL 3823003 (D. Minn. Aug. 14, 2024) ............................................................ 14

*Go-Best Assets Ltd. v. Citizens Bank of Mass.*,
  972 N.E.2d 426 (Mass. 2012) ..................................................................................... 22

*Great Rivers Co-op. of Se. Iowa v. Farmland Indus., Inc.*,
  120 F.3d 893 (8th Cir. 1997) ...................................................................................... 25

*Green v. Ramsey*,
  2015 WL 5672990 (D. Minn. Sep. 24, 2015) ............................................................. 17

*Heinrich ex rel. Heinrich v. Sweet*,
  49 F. Supp. 2d 27 (D. Mass. 1999) ....................................................................... 16, 17

*Henrickson v. Sporting Goods Props., Inc.*,
  2005 WL 3359023 (D. Neb. Dec. 8, 2005) ................................................................ 10

*Hershenow v. Enter. Rent-A-Car Co. of Bos., Inc.*,
  840 N.E.2d 526 (Mass. 2006) ............................................................................... 11, 16

*Hugenberger v. Alpha Mgmt. Corp.*,
  990 N.E.2d 104 (Mass. App. Ct. 2013) ...................................................................... 13

*Ill. Farmers Ins. Co. v. Guthman*,
  2017 WL 3971867 (D. Minn. Sep. 7, 2017) ............................................................... 14

*Jones v. City of St. Louis*,
  104 F.4th 1043 (8th Cir. 2024) ................................................................................ 6, 15

*Knapp v. Neptune Towers Assocs.*,
  892 N.E.2d 820 (Mass. App. Ct. 2008) .................................................................. 21, 22

*L.L. Nelson Enters., Inc. v. Cnty. of St. Louis*,
  673 F.3d 799 (8th Cir. 2012) ...................................................................................... 19

*Macoviak v. Chase Home Mortg. Corp.*,
  667 N.E.2d 900 (Mass. App. Ct. 1996) ...................................................................... 15

iii

# TABLE OF AUTHORITIES
(*continued*)

Page(s)

*Mathers v. Midland-Ross Corp.*,
532 N.E.2d 46 (Mass. 1989) ................................................................................ 12

*McCabe v. Ford Motor Co.*,
720 F. Supp. 3d 14 (D. Mass. 2024) ................................................................ 21, 22

*McCabe v. Ford Motor Co.*,
774 F. Supp. 3d 349 (D. Mass. 2025) ................................................................. 20

*Melendez v. Gen. Mills, Inc.*,
2025 WL 937160 (D. Minn. Mar. 27, 2025) .......................................................... 10

*Minneapolis Branch of NAACP v. City of Minneapolis*,
2024 WL 1886759 (D. Minn. Mar. 29, 2024) ........................................................ 12

*Murray v. Goodrich Eng'g Corp.*,
566 N.E.2d 631 (Mass. App. Ct. 1991) ............................................................... 23

*Murthy v. Missouri*,
603 U.S. 43 (2024) .......................................................................................... 7, 8

*Nelson v. Ctr. for Reprod. Med. & Advanced Reprod. Techs.*,
2025 WL 1757636 (D. Minn. June 25, 2025)......................................................... 14

*Niedner v. Ortho-McNeil Pharm., Inc.*,
58 N.E.3d 1080 (Mass. App. Ct. 2016) ............................................................... 20

*Pershouse v. L.L. Bean, Inc.*,
368 F. Supp. 3d 185 (D. Mass. 2019) .................................................................. 25

*Petersen v. England*,
2010 WL 3893797 (D. Minn. Sep. 30, 2010) ..................................................... 14, 18

*Peterson v. 3M Co.*,
2025 WL 2784485 (D. Minn. Sep. 30, 2025) ...................................... 2, 3, 9, 10, 12, 26

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
11 F.4th 90 (2d Cir. 2021).................................................................................. 25

*Rafferty v. Merck & Co., Inc.*,
92 N.E.3d 1205 (Mass. 2018) ....................................................................... 11, 13, 15

*Rick v. Profit Mgmt. Assocs., Inc.*,
241 F. Supp. 3d 215 (D. Mass. 2017) ......................................................... 15, 17, 18, 19

*Rodi v. S. New Eng. Sch. of L.*,
389 F.3d 5 (1st Cir. 2004)................................................................................... 13

*Russell v. Cooley Dickinson Hosp., Inc.*,
772 N.E.2d 1054 (Mass. 2002) ........................................................................... 17

iv

# TABLE OF AUTHORITIES
(*continued*)

Page(s)

*Satchi v. Rheon U.S.A., Inc.*,
   255 F. Supp. 3d 253 (D. Mass. 2017) ........................................................ 23

*Schuster v. Wynn Ma, LLC*,
   118 F.4th 30 (1st Cir. 2024) ................................................................ 24, 25

*Shaulis v. Nordstrom, Inc.*,
   865 F.3d 1 (1st Cir. 2017) ................................................................... 24, 25

*Simon v. E. Ky. Welfare Rts. Org.*,
   426 U.S. 26 (1976) .................................................................................... 8

*Smith v. Robertshaw Controls Co.*,
   410 F.3d 29 (1st Cir. 2005) .................................................................. 16, 17

*Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*,
   781 F.3d 1003 (8th Cir. 2015) ....................................................... 14, 18, 21

*Tatone v. SunTrust Mortg., Inc.*,
   857 F. Supp. 2d 821 (D. Minn. 2012) ...................................................... 14

*Thole v. U.S. Bank N.A.*,
   590 U.S. 538 (2020) ............................................................................ 6, 7, 11

*Thomalen v. Marriott Corp.*,
   845 F. Supp. 33 (D. Mass. 1994) .............................................................. 17

*Tomasella v. Nestle USA, Inc.*,
   962 F.3d 60 (1st Cir. 2020) ....................................................................... 24

*Topchian v. JPMorgan Chase Bank, N.A.*,
   760 F.3d 843 (8th Cir. 2014) ...................................................................... 8

*Town of Milton v. FAA*,
   87 F.4th 91 (1st Cir. 2023) ........................................................................ 12

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ............................................................................ 7, 8, 11

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*,
   517 U.S. 544 (1996) .................................................................................. 12

*Vervaecke v. Chiles, Heider & Co.*,
   578 F.2d 713 (8th Cir. 1978) ..................................................................... 25

*Wajda v. R.J. Reynolds Tobacco Co.*,
   103 F. Supp. 2d 29 (D. Mass. 2000) ......................................................... 17

*Walgreen Co. v. Haseotes*,
   778 F. Supp. 3d 264 (D. Mass. 2025) .................................................. 23, 24

**TABLE OF AUTHORITIES**
(*continued*)

Page(s)

*Wallace v. ConAgra Foods, Inc.*,
    747 F.3d 1025 (8th Cir. 2014) ................................................................. 9, 10

*Ware v. Jennings*,
    2025 WL 1019067 (E.D. Mo. Apr. 4, 2025)................................................. 17

*Williams v. Stop & Shop Supermarket Co.*,
    2025 WL 1279374 (D. Mass. May 2, 2025).................................................. 25

**Statutes**

44 U.S.C. § 1507 ..................................................................................................... 5

Mass. Gen. Laws ch. 93A............................................. 5, 12, 13, 14, 15, 16, 25

**Rules**

Fed. R. Civ. P. 9(b)............................................................................... 6, 14, 20, 21

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 6

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 6

**Other Authorities**

Andrew Maizel *et al.*, *Per- and Polyfluoroalkyl Substances in New
    Firefighter Turnout Gear Textiles*, Nat'l Inst. Standards Techn.
    Technical Note 2248 (2023) ............................................................................ 4

Anna S. Young *et al.*, *Per- and Polyfluoroalkyl Substances (PFAS) and
    Total Fluorine in Fire Station Dust*, 31 J. Exposure Sci. & Env't
    Epidemiology 930 (2021), https://tinyurl.com/mpkw3exp............................. 3

EPA, *Perfluorooctanoic Acid (PFOA), Fluorinated Telomers; Request for
    Comment, Solicitation of Interested Parties for Enforceable Consent
    Agreement Development, and Notice of Public Meeting*, 68 Fed. Reg.
    18,626 (Apr. 16, 2003).................................................................................... 5

Graham F. Peaslee *et al.*, *Another Pathway for Firefighter Exposure to Per-
    and Polyfluoroalkyl Substances: Firefighter Textiles* Env't Sci. & Tech.
    Letters 594 (2020).......................................................................................... 4

Letter from George H. Millet, Dir., Env't, Health & Safety, Dyneon LLC,
    to EPA, Off. of Pollution Prevention & Toxics (Oct. 30, 2009),
    https://rb.gy/oxzeog........................................................................................ 5

Nur-Us-Shafa Mazumder *et al.*, *Firefighters' Exposure to Per- And
    Polyfluoroalkyl Substances (PFAS) as an Occupational Hazard: A
    Review*, 10 Frontiers in Materials 1 (2023)............................................... 3, 4

Restatement (Second) of Torts § 551(2)(e) (1977) ......................................... 22

vi

## TABLE OF AUTHORITIES
(*continued*)

Page(s)

*Statement from 3M to Vox.com regarding PFAS*, https://cdn.vox-
    cdn.com/uploads/chorus_asset/file/23968894/Statement_from_3M_to_
    Vox.pdf ........................................................................................................ 19

## I.   INTRODUCTION

Plaintiff the City of Peabody has pared back its allegations, but its claims against Defendant 3M Company still rest on the same deficient legal theory: that 3M *might* have supplied some unidentified chemicals that went into the firefighter turnout gear Plaintiff purchased.  As the Sixth Circuit commented when dismissing similarly thin allegations, "[s]eldom is so ambitious a case filed on so slight a basis." *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.* (*Hardwick*), 87 F.4th 315, 318 (6th Cir. 2023).

The Court should dismiss the claims in the First Amended Class Action Complaint ("Amended Complaint" or "FAC") against 3M, either without prejudice for lack of standing or with prejudice for failure to state a claim.

*First*, Plaintiff lacks standing because it has not plausibly alleged that any injuries are traceable to 3M.  The Amended Complaint focuses on turnout gear Plaintiff purchased, but Plaintiff does not allege that 3M sold it turnout gear.  Instead, Plaintiff speculates that PFAS in turnout gear "purchased by Plaintiff and the proposed Class" comes from "at least one, and often both" of DuPont and 3M.  FAC ¶ 21.  This kind of guesswork is insufficient to establish standing even at the motion-to-dismiss stage.  Nor can Plaintiff keep 3M on the hook by alleging that the company manufactures "PFAS":  PFAS are a class of thousands of chemicals, and the Amended Complaint does not identify a single kind of PFAS that 3M allegedly sold to a turnout-gear manufacturer, much less the single turnout-gear manufacturer from which Plaintiff claims to have bought its gear.

1

The Court recently dismissed similarly deficient allegations against 3M, *see Peterson v. 3M Co.*, 2025 WL 2784485 (D. Minn. Sep. 30, 2025), and it should do so again. The traceability allegations are even more implausible here because Plaintiff is suing based on purchases of turnout gear during the last four years, which—by Plaintiff's own account—is decades after 3M stopped selling the relevant kinds of PFAS.

*Second*, the claims fail on the merits. Although numerous deficiencies infect each claim, they share a common theme: The Amended Complaint asserts that "Defendants"—as if they were some undivided group—acted inappropriately in advertising and selling turnout gear, but (again) 3M is not alleged to have manufactured turnout gear or to have made any representations about it. As a result, the alleged facts do not establish plausible claims against 3M.

## II.   BACKGROUND

The City of Peabody, Massachusetts, fits its firefighters with what is known as turnout gear—"hoods, helmets, coats, pants, gloves, [and] boots" specially designed to protect "firefighters from the extreme conditions of firefighting activities." FAC ¶¶ 1, 5. "Over the last four years," Plaintiff "has purchased its Turnout Gear from Defendant Globe Manufacturing Company." *Id.* ¶¶ 17, 40. According to the Amended Complaint, Globe's turnout gear was "laden" or "contaminated" with PFAS. *Id.* ¶¶ 1, 3.

PFAS are a class of synthetic chemical compounds first developed in the 1930s and 1940s. FAC ¶¶ 1, 47. By all accounts, the kinds of PFAS number in the "thousands." ECF

2

1 ("Compl.") ¶ 54; *accord Hardwick*, 87 F.4th at 318; *Peterson*, 2025 WL 2784485, at *1.[1]

Until the last few years, when alternatives allegedly became available, these chemicals' "water-repellent and heat-resistive characteristics" made them "an essential component" of the "Turnout Gear industry."  FAC ¶¶ 13, 22.  Given their use in "a wide range of commercial products and industries," Compl. ¶ 57, "[f]or most if not nearly all Americans, interaction with materials containing PFAS is a fact of daily life," *Hardwick*, 87 F.4th at 318.

Plaintiff alleges that certain PFAS are "considered hazardous to human health" and that "significant quantities of PFAS" have been found in turnout gear.  FAC ¶¶ 62, 65, 68. Although Plaintiff sometimes refers to the entire category of PFAS, the Amended Complaint and its sources zero in on the harms allegedly associated with just three chemicals: perfluorooctanoic acid ("PFOA"), perfluorooctane sulfonate ("PFOS"), and polytetrafluorethylene ("PTFE").  *See id.* ¶¶ 24, 36, 64, 75, 92, 94, 96, 104, 110, 126, 130. For example, to support the contention that PFAS "presents a substantial risk of injury," *id.* ¶ 71, Plaintiff relies on a study explaining that only "PFOA and PFOS have been extensively studied," and that studies of some other kinds of PFAS turned up "no significant toxicological effects."  Nur-Us-Shafa Mazumder *et al.*, *Firefighters' Exposure*

---

[1]    *See also* Anna S. Young *et al.*, *Per- and Polyfluoroalkyl Substances (PFAS) and Total Fluorine in Fire Station Dust*, 31 J. Exposure Sci. & Env't Epidemiology 930, 931 (2021), https://tinyurl.com/mpkw3exp (cited at FAC ¶ 3) ("PFAS[] are a class of over 4700 fluorinated compounds").  The Court may consider this and other articles that were "expressly mentioned in the [Amended] [C]omplaint" and therefore incorporated by reference. *Dittmer Props., L.P. v. FDIC*, 708 F.3d 1011, 1021 (8th Cir. 2013).

*to Per- And Polyfluoroalkyl Substances (PFAS) as an Occupational Hazard: A Review*, 10 Frontiers in Materials 1, 12–13 (2023) (cited at FAC ¶ 71).[2]  Similarly, Plaintiff's source for the alleged "links between PFAS and" certain illnesses, FAC ¶ 67, states only that there are "links between PFOA and" those illnesses, Graham F. Peaslee *et al.*, *Another Pathway for Firefighter Exposure to Per- and Polyfluoroalkyl Substances: Firefighter Textiles*, 7 Env't Sci. & Tech. Letters 594, 596 (2020).[3]

The Amended Complaint alleges that 3M and DuPont "make . . . PFAS molecules" that form the "building blocks" of what the Amended Complaint calls "PFAS Chemical Finishes."  FAC ¶¶ 19–20.  And it alleges that turnout gear "purchased by Plaintiff and the proposed Class contains PFAS Chemical Finishes designed, manufactured, marketed, and sold *by at least one, and often both*" of 3M and DuPont.  *Id.* ¶ 21 (emphasis added).  The Amended Complaint does not indicate whether 3M or DuPont allegedly supplied PFOA, PFOS, PTFE, or any other specific kind of PFAS to Globe.  The same is true of 3M's "Scotchlite Reflective Tape," which allegedly "contains" some kind of "PFAS and is used on" turnout gear.  *Id.* ¶ 25.

At one time, 3M was allegedly the "largest manufacturer of PFAS in the United States."  FAC ¶ 91.  But its status as the "dominant manufacturer and supplier of PFAS Chemical Finishes" lasted only "until 2002," when "PFOS were phased out" along with

---

[2]    https://tinyurl.com/2mj7caat.

[3]    *See also*, *e.g.*, Andrew Maizel *et al.*, *Per- and Polyfluoroalkyl Substances in New Firefighter Turnout Gear Textiles*, Nat'l Inst. Standards Techn. Technical Note 2248, at 13 (2023) (cited at FAC ¶¶ 5, 53, 55, 73) (similar).

4

PFOA.  *Id.* ¶¶ 26, 32; *see also* EPA, *Perfluorooctanoic Acid (PFOA), Fluorinated Telomers; Request for Comment, Solicitation of Interested Parties for Enforceable Consent Agreement Development, and Notice of Public Meeting*, 68 Fed. Reg. 18,626, 18,628–29, 18,631 (Apr. 16, 2003) (discussing 3M's phaseout of PFOA and PFOS).[4]  After 2002, "DuPont replaced 3M as the dominant supplier."  FAC ¶ 32.[5]

Plaintiff seeks to represent a putative class of Massachusetts public entities that purchased turnout gear allegedly containing PFAS over the last four years.  FAC ¶¶ 1, 17, 150.  Plaintiff asserts claims for (1) violation of Massachusetts consumer protection law, Mass. Gen. Laws ch. 93A, (2) strict product liability (design defect), (3) strict product liability (failure to warn), (4) fraudulent misrepresentation or concealment, (5) negligence, and (6) unjust enrichment.  Among other things, Plaintiff seeks damages for "physical injuries and property damage caused by the PFAS Turnout Gear" and for the cost to "properly . . . dispose of" and replace its turnout gear.  FAC p.54.

---

[4]   The Court may consider the EPA notice at the Rule 12 stage.  *See Dittmer Props.*, 708 F.3d at 1021 ("[I]n determining whether to grant a Rule 12(b)(6) motion, courts . . . consider . . . 'items subject to judicial notice, [and] matters of public record.'"); 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed.").

[5]   3M has acknowledged that at one foreign facility—a facility not at issue here—it used PFOA in the manufacturing process of some of its own fluoropolymer products until 2008, over a decade before Plaintiff's alleged turnout-gear purchases began.  Letter from George H. Millet, Dir., Env't, Health & Safety, Dyneon LLC, to EPA, Off. of Pollution Prevention & Toxics (Oct. 30, 2009), https://rb.gy/oxzeog.

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), dismissal is warranted when a plaintiff "fail[s] to plausibly and clearly allege" facts establishing Article III standing. *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 544 (2020).

Dismissal is independently warranted under Rule 12(b)(6) when a plaintiff fails "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The complaint's factual allegations must therefore "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "'Courts must not presume the truth of legal conclusions couched as factual allegations.'" *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024).

When a plaintiff asserts a claim sounding in fraud (including certain consumer-protection claims), it "must state with particularity the circumstances constituting the fraud," Fed. R. Civ. P. 9(b), including the "who, what, where, when, and how of the alleged fraud," *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 421 (8th Cir. 2020) (internal quotation marks omitted).

6

## IV.   ARGUMENT

### A.   Plaintiff Lacks Article III Standing to Bring Any Claim Against 3M Because Plaintiff's Purported Injuries Are Not Traceable to 3M.

To establish standing, as Article III requires, a plaintiff must establish that its "injury was likely caused by the defendant." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). And it must do so "clearly." *Thole*, 590 U.S. at 544. Because "standing is not dispensed in gross," a plaintiff must satisfy this traceability requirement "for each claim that [the plaintiff] press[es] against each defendant, and for each form of relief that [it] seek[s]." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (internal quotation marks omitted); *accord Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017). In a putative class action, "federal courts lack jurisdiction if no named plaintiff has standing." *Frank v. Gaos*, 586 U.S. 485, 492 (2019).

For at least two reasons, Plaintiff has not clearly established that its injuries were likely caused by 3M.

*First*, nowhere does Plaintiff allege (clearly or otherwise) that the Globe turnout gear it purchased contains "PFAS Chemical Finishes" produced by 3M, as opposed to DuPont or some other manufacturer. Instead, the Amended Complaint groups Plaintiff together with putative class members and groups 3M together with DuPont: "Turnout Gear purchased by Plaintiff *and* the proposed Class contains PFAS Chemical Finishes designed, manufactured, marketed, and sold by *at least one, and often both*, PFAS Chemical Finish Defendants." FAC ¶ 21 (emphases added); *see also id.* ¶ 17 ("[C]omponents of the Turnout

7

Gear Plaintiff purchased contained PFAS-contaminated textiles or other components . . . [from] Defendants").

Article III demands more. *See Murthy*, 603 U.S. at 61 (court of appeals "erred" in its standing analysis "by treating the defendants [and] plaintiffs . . . each as a unified whole"). For one, Plaintiff cannot establish its own standing by relying on purchases of the putative class. *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976).

For another, Plaintiff must "show[] that *each* defendant caused [its] injury," not that *either* Defendant *might* have done so. *Calzone*, 866 F.3d at 869 (emphasis added). But by hedging about the source of the PFAS—"at least one" of DuPont or 3M, FAC ¶ 21— Plaintiff leaves open the possibility that its own turnout gear contains PFAS from DuPont but not 3M. That means the allegations are, at most, "merely consistent with" 3M's liability, which is insufficient to state a claim—much less to establish standing. *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted); *see, e.g.*, *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 853 (8th Cir. 2014) (affirming Rule 12(b)(6) dismissal because allegations were "equally consistent with" liability and non-liability).

Other allegations *undermine* the notion that 3M sold the relevant PFAS. According to the Amended Complaint, "3M was the dominant manufacturer and supplier of PFAS Chemical Finishes until 2002"—20 years before Plaintiff began purchasing the turnout gear at issue. FAC ¶ 26; *see id.* ¶ 17. After 2002, Plaintiff alleges, "DuPont replaced 3M as the dominant supplier" of PFAS. *Id.* ¶ 32. Far from clearly establishing that Plaintiff's "injury was likely caused by" 3M, *TransUnion*, 594 U.S. at 423, it therefore "remains entirely possible, maybe probable," that a manufacturer other than 3M supplied the PFAS

8

Chemical Finishes in Plaintiff's turnout gear, *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014).

A similar pleading deficiency recently led this Court to dismiss another PFAS-related case against 3M for lack of standing. *See Peterson*, 2025 WL 2784485, at *3–4. Though *Peterson* involved allegations of PFAS in carpet rather than "PFAS Chemical Finishes" in turnout gear, both complaints share the same traceability problem: "none of the allegations in the Complaint trace any potential injury to [3M's] products, as opposed to the products developed by" others. *Id.* at *4. Much like the Amended Complaint here, the only effort to connect 3M to the purchased goods was an allegation that 3M "played a prominent role as [a] producer[] of PFAS . . . before 2020." *Id.*; *cf.* FAC ¶ 91 ("Defendant 3M was the largest manufacturer of PFAS in the United States from the 1940s through the early 2000s."). But there was no getting away from the fact that "other allegations acknowledge[d] that [3M was] not the only entit[y] responsible for developing, selling, or using PFAS products." *Peterson*, 2025 WL 2784485 at *4. Those allegations "undermine[d] traceability," such that the *Peterson* plaintiffs "failed to allege Article III standing." *Id.* The same is true here.[6]

*Second*, the Amended Complaint never alleges that 3M supplied Globe with the types of PFAS Plaintiff claims are in its turnout gear. Because "[t]he Supreme Court has made it clear that standing must be particularized," the Eighth Circuit requires plaintiffs to

---

[6]    *See also*, *e.g.*, *Barnstable Cnty. v. 3M Co.*, 2017 WL 6452245, at *11 (D. Mass. Dec. 18, 2017) (dismissing negligence claim because "complaint [was] devoid of specific allegations as to how each defendant caused the contamination").

9

"'allege the *specific products*'" that supposedly caused harm; "general allegation[s]," the court has held, are "inconsistent with Article III." *Wallace*, 747 F.3d at 1030. The Amended Complaint falls far short of this requirement, alleging only that 3M sold "PFAS Chemical Finishes" or "Scotchlite Reflective Tape, which contains PFAS"—not that any of those materials made their way to the Globe gear Plaintiff purchased. FAC ¶¶ 21, 25. Given that the PFAS label covers thousands of separate substances, *supra* p.2, merely alleging that 3M "manufactured or otherwise distributed 'PFAS'"—whether in chemical finishes or reflective tape—"is patently insufficient to support a plausible inference that" 3M "bear[s] responsibility for the particular PFAS" at issue. *Hardwick*, 87 F.4th at 321.

Plaintiff fares no better focusing on PFOA, PFOS, and PTFE. *See supra* pp.3–5. The Amended Complaint does not contain a single allegation connecting 3M to PTFE. *Cf.* Compl. ¶¶ 144, 149 (suggesting Gore and DuPont manufactured PTFE); *Melendez v. Gen. Mills, Inc.*, 2025 WL 937160, at *2 (D. Minn. Mar. 27, 2025) (dismissing lead-contamination case on standing grounds because plaintiffs hadn't plausibly alleged the products they purchased from defendant "contained harmful levels of lead, or indeed any lead"). And Plaintiff makes no effort to bridge the decades-long temporal gap between 3M's "2002" "phase[] out" of PFOA and PFOS, FAC ¶¶ 26, 32, and Plaintiff's turnout-gear purchases "[o]ver the last four years," *id.* ¶ 17—the period at issue in this case. *See Peterson*, 2025 WL 2784485 at *3 ("Plaintiffs lack[ed] standing" because there were "no allegations in the Complaint concerning" 3M PFAS in carpets "at the time that Plaintiffs purchased the carpets at issue"); *Henrickson v. Sporting Goods Props., Inc.*, 2005 WL 3359023, at *4 (D. Neb. Dec. 8, 2005) ("deduction" that defendant's product reached

10

plaintiff "nineteen years" after defendant sold product was "no more than . . . speculation or conjecture").

Independently or cumulatively, each of these deficiencies requires dismissal. Because Plaintiff has failed to plausibly allege its turnout gear contained the relevant PFAS from 3M, it has likewise "failed to plausibly and clearly allege," *Thole*, 590 U.S. at 544, that its claimed "injury was likely caused by" 3M, *TransUnion*, 594 U.S. at 423. The Court should dismiss all the claims against 3M for lack of standing.

## B.   Plaintiff's Claims Independently Fail as a Matter of Law.

On the merits, Plaintiff fails to state a claim under Massachusetts law.[7]

### 1.   The Court Should Dismiss Counts I–V Against 3M Because Plaintiff Has Failed to Plausibly Allege Causation.

Except for its unjust enrichment claim—which fails for other reasons, *see infra* Part IV.B.6—all of Plaintiff's claims require it to plausibly allege that 3M caused Plaintiff's injuries. *See Hershenow v. Enter. Rent-A-Car Co. of Bos., Inc.*, 840 N.E.2d 526, 528 (Mass. 2006) (Chapter 93A); *Evans v. Lorillard Tobacco Co.*, 990 N.E.2d 997, 1010 (Mass. 2013) (design defect); *Rafferty v. Merck & Co., Inc.*, 92 N.E.3d 1205, 1213 (Mass. 2018) (failure to warn); *Balles v. Babcock Power Inc.*, 70 N.E.3d 905, 913 (Mass. 2017) (fraud); *Garcia v. Kusan, Inc.*, 655 N.E.2d 1290, 1293 (Mass. App. Ct. 1995) (negligence).

---

[7]   Because Plaintiff is a Massachusetts entity and does not allege a connection to any other jurisdiction, 3M evaluates Plaintiff's claims under Massachusetts law. *See*, *e.g.*, *Burke v. DJO, LLC*, 2012 WL 383948, at *2 (D. Minn. Feb. 6, 2012) (Massachusetts law applied in product-liability case where plaintiff was "a resident of Massachusetts and all relevant events took place in Massachusetts"). But it reserves the right to respond to any choice-of-law arguments Plaintiff may raise in its response.

11

Because Plaintiff has not plausibly alleged that it bought turnout gear containing PFAS manufactured by 3M, *supra* Part IV.A, Plaintiff cannot establish causation.  *See Mathers v. Midland-Ross Corp.*, 532 N.E.2d 46, 49 (Mass. 1989) ("A plaintiff who sues a particular manufacturer for product liability generally must be able to prove that the item which it is claimed caused the injury can be traced to that specific manufacturer."); *Garcia*, 655 N.E.2d at 1293 (dismissing warranty claim where plaintiff could not be sure which of several manufacturers produced the item that harmed him).  In that respect, Counts I through V have the same causation problem this Court recognized in *Peterson*.  *See* 2025 WL 2784485 at *6 (absence of sufficient "allegations that Plaintiffs' carpet was treated with [3M] PFAS products[] undermin[ed]" causation).  This problem alone warrants dismissal of those claims.[8]

### 2.    Plaintiff Fails to Plausibly Allege That 3M Violated the Massachusetts Consumer Protection Act (Count I).

Plaintiff's claim against 3M under Massachusetts General Laws chapter 93A fails as a matter of law.

---

[8]    In passing, the Amended Complaint mentions—and could be read to seek relief for—"physical injuries," including supposed "dangerous exposure of [Plaintiff's] firefighters and others to catastrophic harms to health."  FAC ¶ 171; *see id.* p.54 (requesting "[c]ompensatory damages for physical injuries").  If these portions of the Amended Complaint are an attempt to recover personal-injury damages on behalf of third parties, Plaintiff lacks standing to obtain that kind of relief.  Like any other litigant, a municipality cannot seek to recover on behalf of third parties.  *See Town of Milton v. FAA*, 87 F.4th 91, 96 (1st Cir. 2023) (collecting cases).  Nor does the Amended Complaint supply a reason to think an exception to that rule applies here.  The City, for example, is not an association, and even associations may not maintain "an action for damages to [their] members."  *Minneapolis Branch of NAACP v. City of Minneapolis*, 2024 WL 1886759, at *3 (D. Minn. Mar. 29, 2024) (quoting *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996)).

Plaintiff faces a threshold problem:  It did not send the demand letter that Massachusetts law requires.  Chapter 93A permits a "person [to] assert a claim . . . for money damages" only if he or she sends the prospective defendant "a written demand for relief" "[a]t least thirty days prior to the filing of any such action."  Mass. Gen. Laws ch. 93A, § 9(3)–(3A).  "The statutory notice requirement is not merely a procedural nicety, but, rather, 'a prerequisite to suit.'"  *Rodi v. S. New Eng. Sch. of L.*, 389 F.3d 5, 19 (1st Cir. 2004) (quoting *Entrialgo v. Twin City Dodge, Inc.*, 333 N.E.2d 202, 204 (Mass. 1975)).  "'[A]s a special element' of the cause of action, it must be alleged in the plaintiff's complaint."  *Id.* (quoting *Entrialgo*, 333 N.E.2d at 204).  Failure to comply with the requirement "is sufficient ground to justify dismissal of [a] Chapter 93A claim."  *Id.*

Plaintiff's attempt to correct this failure comes far too late.  Plaintiff served demand letters "on January 9, 2026," FAC ¶ 171—almost eight months *after* the "filing of [its] action" seeking relief under Chapter 93A, *see* Compl. ¶ 281 (asserting a Chapter 93A claim).  Because the demand letters were not "'timely sen[t],'" Plaintiff cannot satisfy a necessary "'element'" of its cause of action, and the Chapter 93A claim must be dismissed. *Hugenberger v. Alpha Mgmt. Corp.*, 990 N.E.2d 104, 106 (Mass. App. Ct. 2013); *see Rodi*, 389 F.3d at 19.  If a post-suit demand letter could overcome the statutory mandate, then Chapter 93A's notice requirement would lack any force.

On top of that threshold defect, Plaintiff has failed to state a Chapter 93A claim.  A plaintiff must plausibly allege that (1) "the defendant has committed an unfair or deceptive act or practice" and (2) "the defendant's unfair or deceptive conduct was a cause of the injury."  *Rafferty*, 92 N.E.3d at 1222.  Plaintiff has not plausibly alleged either.

13

*First*, the claim against 3M rests on improper group pleading and legal conclusions, not factual allegations. According to the Amended Complaint, "Defendants violated the MCPL" by "engag[ing] in deceptive trade practices." FAC ¶¶ 165–66. But this recitation of an element of the cause of action, directed at "Defendants" generally, does nothing to advance Plaintiff's cause. *See Twombly*, 550 U.S. at 555; *Nelson v. Ctr. for Reprod. Med. & Advanced Reprod. Techs.*, 2025 WL 1757636, at *2 (D. Minn. June 25, 2025) ("'A complaint which lumps all defendants together' fails to state a claim."); *Ill. Farmers Ins. Co. v. Guthman*, 2017 WL 3971867, at *6 (D. Minn. Sep. 7, 2017) (same); *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012) (same).

Measured against Rule 9(b)'s heightened pleading standard, the Chapter 93A claim is more deficient still. *See Distefano v. Bank of Am., N.A.*, --- F. Supp. 3d ----, 2026 WL 560027, at *2–3 (D. Mass. Feb. 27, 2026) (dismissing Chapter 93A claims where plaintiffs "accuse[d] defendants of 'fraudulent' and 'deceptive' conduct" yet "failed to meet the heightened pleading standard of Rule 9(b)"). As this Court has held, "conclusory allegations" about supposedly deceptive trade practices "fall short of Rule 9(b)'s particularity requirements." *Glob. Commodities, Inc. v. Cap. Distribs. LLC*, 2024 WL 3823003, at *3–4 (D. Minn. Aug. 14, 2024) (Bryan, J.). Nor, under Rule 9(b), may a plaintiff "attribute[] fraudulent representations and conduct to multiple defendants generally, in a group pleading fashion." *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015); *accord, e.g., Petersen v. England*, 2010 WL 3893797, at *10 (D. Minn. Sep. 30, 2010) ("'Rule 9(b) does not allow a complaint to merely lump multiple defendants together.'"). "[W]here there are multiple

14

defendants, the specific role of each must be alleged." *Rick v. Profit Mgmt. Assocs., Inc.*, 241 F. Supp. 3d 215, 224 (D. Mass. 2017).

Nor does the remainder of the Amended Complaint supply the necessary "factual content," *Iqbal*, 556 U.S. at 683—the "who, what, where, when, and how," *Ambassador Press*, 949 F.3d at 421. Plaintiff maintains, for example, that "Defendants . . . implicitly and explicitly represent[ed] to Plaintiff and Class Members that PFAS Turnout Gear was safe to use" and "fail[ed] to warn Plaintiff and Class Members that PFAS Turnout Gear contained a defect." FAC ¶¶ 165–66. These, however, are "'legal conclusions couched as factual allegations.'" *Jones*, 104 F.4th at 1046. And the use of the term "Defendants" does little to obscure that there are no allegations 3M made *any* representations about—or would have had reason to warn about—the Globe turnout gear Plaintiff purchased. To 3M's knowledge, there is no precedent for imposing deceptive-acts liability on a defendant not alleged to have made or facilitated misrepresentations about the product a plaintiff purchased. *See, e.g.*, *Rafferty*, 92 N.E.3d at 1223 (declining to impose Chapter 93A liability when product was manufactured by defendant's competitor, not defendant).

The Chapter 93A claim is therefore no more meritorious than Plaintiff's common-law fraud claims—which fail because the Amended Complaint does not adequately allege that 3M knowingly made any false representations of material fact on which Plaintiff relied, or concealed information it had a duty to disclose. *See infra* Part IV.B.4; *Macoviak v. Chase Home Mortg. Corp.*, 667 N.E.2d 900, 904 (Mass. App. Ct. 1996) (dismissing Chapter 93A claim because it was derivative of dismissed fraud claim); *Fernandes v.*

15

*Rodrigue*, 646 N.E.2d 414, 416 (Mass. App. Ct. 1995) (Chapter 93A claim was "absorbed in and vanishe[d] with the misrepresentation claim[s]").

*Second*, the Amended Complaint falls far short of establishing "a causal connection between a deceptive act and a loss to" Plaintiff, "an essential predicate for recovery." *Hershenow*, 840 N.E.2d at 528. The allegations do not plausibly connect 3M to the Globe turnout gear Plaintiff purchased. *Supra* Part IV.A. The assertion that "Plaintiff . . . suffered injury in-fact as a direct result of Defendants' violations of the MCPL," FAC ¶ 168, is conclusory, *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 673 (8th Cir. 2012). And Plaintiff does not explain the connection between the slew of allegations about 3M's conduct "from the 1940s through the early 2000s" and Plaintiff's purchasing decisions in the 2020s. FAC ¶ 91; *see id.* ¶¶ 92, 94. Whatever "misrepresentation" Plaintiff might think 3M made, Plaintiff still "must demonstrate that [the alleged] deception caused a loss." *Hershenow*, 840 N.E.2d at 533.

### 3.   Massachusetts Does Not Recognize the Strict Liability Claims Plaintiff Brings (Counts II & III).

Plaintiff's "strict product liability" claims for "unreasonably dangerous" "design defect[s]" and "failure to warn," FAC pp.46–48, fail because "Massachusetts does not recognize strict products liability in tort," *Smith v. Robertshaw Controls Co.*, 410 F.3d 29, 35 (1st Cir. 2005). "[U]nder Massachusetts law," "[s]trict liability for inherently dangerous activities" "is extremely limited." *Heinrich ex rel. Heinrich v. Sweet*, 49 F. Supp. 2d 27, 40 (D. Mass. 1999) (internal quotation marks omitted). That tort is available "only when there is 'an escape of a dangerous activity from the land of the defendant onto the land of

another, causing injury or damage.'"  *Id.* (quoting *Thomalen v. Marriott Corp.*, 845 F. Supp. 33, 36–37 (D. Mass. 1994)).  For that reason, "this form of tort has been applied to manmade flooding, explosive blasting, and escaped wild animals."  *Wajda v. R.J. Reynolds Tobacco Co.*, 103 F. Supp. 2d 29, 35 (D. Mass. 2000).  "[B]ut it has not been applied in the domain of products liability."  *Id.*  Similarly, there is no general tort "establish[ing] strict liability for failure to warn in products liability cases."  *Id.*  The strict-liability claims should be dismissed.[9]

> **4.      Plaintiff Fails to Plausibly Allege That 3M Engaged in Fraudulent Misrepresentation or Concealment (Count IV).**

Plaintiff's claim against 3M for "Fraudulent Misrepresentation/Concealment" also fails as a matter of law.  FAC p.50.

<u>Fraudulent Misrepresentation</u>.  To sustain this kind of claim, a plaintiff "must establish [1] that the defendant 'made a false representation of a material fact with knowledge of its falsity [2] for the purpose of inducing the plaintiff to act thereon, and [3] that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage.'"  *Rick*, 241 F. Supp. 3d at 223 (quoting *Russell v. Cooley Dickinson Hosp.,*

---

[9]     The closest Massachusetts comes to recognizing strict liability in products liability cases is through claims "'for breach of an implied warranty of merchantability under the Uniform Commercial Code.'"  *Smith*, 410 F.3d at 33.  But Plaintiff brought UCC implied-warranty claims in its original complaint, *see* Compl. ¶¶ 268–79, and chose not to reassert them in the Amended Complaint after 3M and others pointed out the claims' flaws, *see* ECF 112 at 21–23.  "It is well established that an amended complaint completely replaces the original complaint, and that any claims not re-alleged are deemed abandoned."  *Ware v. Jennings*, 2025 WL 1019067, at *2 (E.D. Mo. Apr. 4, 2025); *accord, e.g.*, *Green v. Ramsey*, 2015 WL 5672990, at *6 (D. Minn. Sep. 24, 2015).

*Inc.*, 772 N.E.2d 1054, 1066 (Mass. 2002)).  The Amended Complaint does not satisfy any of these elements.

*First*, the Amended Complaint fails to adequately allege that 3M knowingly made any false representations of a material fact.  Plaintiff asserts that "Defendants misrepresented . . . that the use of PFAS in the Turnout Gear did not make PFAS Turnout Gear unsafe or unreasonably dangerous for its intended use" and "[mis]represented that the PFAS Turnout Gear was safe and suitable for use by firefighters."  FAC ¶¶ 142, 202–03.  But these are "conclusory statements," not plausible factual allegations.  *Iqbal*, 556 U.S. at 678.  And they "do not come close" to satisfying the heightened pleading standard applicable to fraud claims, which does not permit group pleading.  *Streambend*, 781 F.3d at 1013; *Petersen*, 2010 WL 3893797, at *10; *Rick*, 241 F. Supp. 3d at 224; *see supra* p.14.

The absence of individualized allegations is no accident.  Even after 3M noted the same deficiency in the original complaint, Plaintiff still identifies no statements 3M made about Plaintiff's Globe turnout gear.  ECF 112 at 19.  And as for the statements that *are* attributed to 3M, Plaintiff still "does not explain how these statements were either false or material to the City's decision to purchase turnout gear" over the last four years.  *Id.*  Take 3M's statements from 2022, *see* FAC ¶¶ 125–27:

- Repeating public statements from "[t]he U.S. Centers for Disease Control's Agency for Toxic Substances and Disease Registry," "[t]he International Agency for Research on Cancer," and "[a]n expert panel commissioned by the Australian government in 2018 to assess the scientific evidence regarding PFAS," 3M remarked that "researchers from around the world . . . haven't found a definitive

18

causal link between PFOA or PFOS exposure and any health condition."[10]  Plaintiff

does not suggest that 3M misquoted those expert bodies, does not explain why 3M

was wrong to rely on these expert bodies, and does not indicate how this statement

could be material given 3M's phase-out of PFOA and PFOS decades before

Plaintiff's purchases.

- 3M stated that "[f]luorochemistries," a category that "include[s] PFAS," "are safely used in many modern products for their important properties and can be safely manufactured."[11]  *See also* FAC ¶ 127 ("3M's products are safe for their intended uses.").  Again, Plaintiff's own sources *agree* that PFAS are not categorically harmful, focusing instead on harms allegedly associated with particular chemicals 3M either never sold or stopped selling decades ago.  *See supra* pp.4–5, 8, 10.

- Additionally, 3M *acknowledged* the "link[]" between "some conditions" and "legacy fluorochemicals."  FAC ¶ 126.  As far back as 1998, for that matter, 3M "submitted a . . . letter to the EPA regarding PFOS."  *Id.* ¶ 94.[12]

*Second*, there are no factual allegations that 3M made any false and material

statements "for the purpose of inducing the plaintiff to act thereon."  *Rick*, 241 F. Supp. 3d

---

[10]  *Statement from 3M to Vox.com regarding PFAS*, https://cdn.vox-cdn.com/uploads/chorus_asset/file/23968894/Statement_from_3M_to_Vox.pdf; *see* FAC ¶¶ 125–26 (relying on this document).

[11]  *Id.*

[12]  As Plaintiff admitted in its original complaint, 3M has also acknowledged that "some research shows that [PFOA and PFOS] are associated with negative health outcomes."  Compl. ¶ 200; *cf. L.L. Nelson Enters., Inc. v. Cnty. of St. Louis*, 673 F.3d 799, 806 (8th Cir. 2012) ("Allegations in a complaint are binding admissions.")

at 223.  The Amended Complaint's efforts to satisfy this element begin and end with the fact-free assertion that "Defendants made these representations . . . to induce Plaintiff and Class Members to purchase the PFAS Turnout Gear."  FAC ¶ 205.

*Third*, Plaintiff does not allege it reasonably relied and acted on any of 3M's supposed misrepresentations—unsurprising, given that Plaintiff cannot plausibly connect 3M to the turnout gear it purchased.  Instead, Plaintiff asserts that "Plaintiff acted in reliance on the truth of Defendants' statements."  FAC ¶ 206; *see id.* ¶ 208 (similar).  Again, this classic example of impermissible group pleading does not pass muster under Rule 8, much less under Rule 9's particularity standard.  *See Ambassador Press*, 949 F.3d at 423 ("Conclusory allegations that a plaintiff detrimentally relied on defendants' representations are not sufficient factual matter to state a claim of relief plausible on its face."); *McCabe v. Ford Motor Co.*, 774 F. Supp. 3d 349, 387 (D. Mass. 2025) (dismissing similarly conclusory Massachusetts fraud claim and explaining that "[r]eliance is one of the 'circumstances' that must be pleaded with particularity").

Nothing in the Amended Complaint identifies a specific statement from 3M that led Plaintiff to purchase Globe turnout gear during the past four years.  This deficiency requires dismissal of the fraudulent-misrepresentation claim.

Fraudulent Concealment.    Whether framed as a fraudulent-concealment claim (which "Massachusetts does not recognize") or as a fraud-by-omission claim (which Massachusetts *does* recognize), the claim fails.  *Niedner v. Ortho-McNeil Pharm., Inc.*, 58 N.E.3d 1080, 1087 n.7 (Mass. App. Ct. 2016).  To state an omission claim, a "plaintiff must allege 'both concealment of material information and a duty requiring disclosure.'"

20

*Buffalo-Water 1, LLC v. Fid. Real Estate Co.*, 111 N.E.3d 266, 277 (Mass. 2018). The Amended Complaint does not adequately allege either.

Start with concealment. The conclusory assertion that "Defendants," as a group, "concealed the fact that the PFAS Turnout Gear contained dangerous PFAS," FAC ¶¶ 142, 202, fails under any applicable pleading standard. The similar assertion that "Defendants . . . actively conceal[ed] data and information about the risks of PFAS exposure," *id.* ¶ 89, does not cut it either. And in light of the allegation that, back in 1998, 3M "produced over 1,000 studies it had previously withheld from the EPA," *id.* ¶ 95, it is unclear what Plaintiff believes 3M concealed nearly 25 years later when Plaintiff began purchasing Globe gear, *id.* ¶ 17. So much for the Rule 9 requirement to "'specify the time, place, and content of the defendant's false representations.'" *Streambend*, 781 F.3d at 1013 (alteration adopted).

The Amended Complaint falls short on the duty element, too. In the context of an omission claim, a duty arises "where '(i) there is a fiduciary or other similar relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to the essence of, the transaction.'" *Knapp v. Neptune Towers Assocs.*, 892 N.E.2d 820, 824 (Mass. App. Ct. 2008). But the Amended Complaint "does not allege any fiduciary relationship between plaintiff[] and" 3M. *McCabe v. Ford Motor Co.*, 720 F. Supp. 3d 14, 30 (D. Mass. 2024). It also fails to "identify any 'partial or ambiguous statement of the facts' made by" 3M to Plaintiff about the turnout gear it purchased. *Id.*

21

Nor was there a duty to disclose facts basic to the transaction. That duty arises only as between "'part[ies] to a business transaction" and only where the non-disclosing party "'knows that the other is about to enter into it under a mistake as to them.'" *McCabe*, 720 F. Supp. 3d at 30 (quoting Restatement (Second) of Torts § 551(2)(e) (1977)); *see Knapp*, 892 N.E.2d at 824 (relying on Restatement when discussing duty to disclose). Neither condition exists here. There is no business transaction alleged between Plaintiff and 3M. And there are no allegations suggesting 3M knew about Plaintiff's purchases from Globe or about Plaintiff's knowledge at the time of those purchases.

The fraudulent-concealment claim is deficient from start to finish and must be dismissed.

### 5. Plaintiff Fails to Plausibly Allege Negligence as to 3M (Count V).

Plaintiff's barebones negligence claim fails too. *See* FAC ¶¶ 210–16. "To make out a claim for negligence, the plaintiff must show [1] that the defendant 'owed him a duty of reasonable care, [2] that the defendant committed a breach of that duty, [3] that damage resulted, and [4] that there was a causal relation between the breach of duty and the damage.'" *Go-Best Assets Ltd. v. Citizens Bank of Mass.*, 972 N.E.2d 426, 431 (Mass. 2012) (alteration adopted). The causation problem alone is sufficient to defeat the claim, *see supra* Part IV.B.1, but there are still other problems.

The allegations do not support the duty and breach elements of negligence. That's because the duty Plaintiff imagines has no connection to 3M, and without a duty there can be no breach of it. According to the Amended Complaint, "Defendants breached their duty by manufacturing and/or supplying PFAS Turnout Gear." FAC ¶ 213; *see id.* ¶ 212

22

("Defendants, as the manufacturers and suppliers of PFAS Turnout Gear, owed Plaintiff and Class Members a duty . . . ."). But Plaintiff does not allege 3M produced turnout gear, further negating Plaintiff's theory of the supposed "breach," and it is anyone's guess what legal duty Plaintiff believes 3M owed with respect to a product it "did not manufacture." *Murray v. Goodrich Eng'g Corp.*, 566 N.E.2d 631, 631–32 (Mass. App. Ct. 1991) (component manufacturer had no duty to warn about dangers associated with machine as a whole); *see*, *e.g.*, *Satchi v. Rheon U.S.A., Inc.*, 255 F. Supp. 3d 253, 262 (D. Mass. 2017) (under Massachusetts's "limited affirmative duty to warn," "affirmative duty to warn" applies only to "dangers inherent to [manufacturers'] own products").

### 6. Plaintiff Fails to Plausibly Allege Unjust Enrichment as to 3M (Count VI).

To establish unjust enrichment under Massachusetts law, a plaintiff must plausibly allege, among other things, "(1) a benefit conferred upon the defendant by plaintiff" and "(2) an appreciation or knowledge by the defendant of the benefit." *Walgreen Co. v. Haseotes*, 778 F. Supp. 3d 264, 295 (D. Mass. 2025) (internal quotation marks omitted). The Amended Complaint fails to sufficiently allege these elements against 3M.

*First*, the Amended Complaint does not allege that Plaintiff conferred a benefit on 3M. Instead, Plaintiff asserts "Defendants"—as a group—"reap[ed] benefits" and "ret[ained] . . . profits from PFAS Turnout Gear." FAC ¶¶ 219, 222. But even if Plaintiff had plausibly connected its turnout gear to 3M (*see supra* Part IV.A), there is no getting away from the fact that the only party Plaintiff allegedly transacted with—and thus conferred a benefit on—was Globe. FAC ¶ 17. Under Massachusetts law, however,

23

"'unjust enrichment requires that the plaintiff *directly* bestow[] a benefit on the defendant.'" *Walgreen*, 778 F. Supp. 3d at 295. Because 3M was not a party to Plaintiff's transactions with Globe, 3M is "too far removed . . . to warrant liability on an unjust enrichment theory." *Blake v. Prof'l Coin Grading Serv.*, 898 F. Supp. 2d 365, 390–91 (D. Mass. 2012).

*Second*, Plaintiff does not allege that 3M had "an appreciation or knowledge" of the benefit Plaintiff supposedly conferred. *Walgreen*, 778 F. Supp. 3d at 295 (internal quotation marks omitted). In its unjust-enrichment-specific allegations, for example, Plaintiff says nothing about 3M's (or any other Defendant's) appreciation or knowledge of the "benefits Defendants received." FAC ¶ 223. Nor does the allegation that "3M has long known of the dangers of PFAS" suffice to plausibly suggest that 3M had any awareness about Plaintiff's turnout-gear purchases from Globe. *Id.* at p.23.

*Finally*, even if Plaintiff had adequately alleged the elements of unjust enrichment, the Court should still dismiss the claim because Plaintiff has adequate legal remedies.

A "'party with an adequate remedy at law cannot claim unjust enrichment.'" *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 82 (1st Cir. 2020). To determine whether a plaintiff has an adequate legal remedy, "'it is the *availability* of a remedy at law, not the *viability* of that remedy,'" that matters. *Schuster v. Wynn Ma, LLC*, 118 F.4th 30, 38 (1st Cir. 2024) (alterations adopted). In other words, the availability of legal claims "prohibits a claim for unjust enrichment" even if those "other claims are dismissed." *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017). The ultimate "'disposition of those claims is irrelevant.'" *Id.*

24

Plaintiff's fraud, "'negligence[,] and Chapter 93A claims preclude a claim for unjust enrichment.'" *Shaulis*, 865 F.3d at 16 (alterations adopted); *see also Schuster*, 118 F.4th at 38 ("Chapter 93A provides an adequate legal remedy for similar unjust enrichment claims."). Because those legal claims are available, Plaintiff may not "bring[] a parallel claim for unjust enrichment that seeks to redress the same alleged injury." *Williams v. Stop & Shop Supermarket Co.*, 2025 WL 1279374, at *2 (D. Mass. May 2, 2025). To be sure, the Court should *also* dismiss the legal claims, but "the viability of the remedy at law 'is beside the point'" for present purposes. *Shaulis*, 865 F.3d at 16. The unjust-enrichment claim should be dismissed. *See*, *e.g.*, *Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185, 190 (D. Mass. 2019) (dismissing unjust-enrichment claim given existence of Chapter 93A claim that was likewise dismissed); *ARE-Tech Square, LLC v. Galenea Corp.*, 2017 WL 634771, at *3 (Mass. App. Ct. Feb. 16, 2017) (affirming similar dismissal).

**C.   Dismissal of Plaintiff's Individual Claims Requires Dismissal of the Class Claims.**

Because the putative class representative's individual claims fail, its putative class claims must also be dismissed. A putative class representative "'must have a cause of action in his own right in order to bring a class action,'" *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 101–02, 106 (2d Cir. 2021), so class claims "cannot survive" if the named plaintiff's claims are dismissed, *Great Rivers Co-op. of Se. Iowa v. Farmland Indus., Inc.*, 120 F.3d 893, 899 (8th Cir. 1997).

Without viable claims of its own, Plaintiff's putative class-action claims should be dismissed. *See Vervaecke v. Chiles, Heider & Co.*, 578 F.2d 713, 719–20 (8th Cir. 1978)

25

(no abuse of discretion where district court struck class claims before class certification because class representative's claims failed); *Peterson*, 2025 WL 2784485, at *3 (when "the plaintiff's individual claim" is dismissed, the putative class action must also be dismissed).

## V.   CONCLUSION

The Court should dismiss the claims against 3M, either without prejudice for lack of standing or with prejudice for failure to state a claim.

Dated:    May 5, 2026                          Respectfully submitted,

                                               **Norton Rose Fulbright US LLP**

                                               By: */s/ Ben W. Hulse*
                                               Benjamin W. Hulse (MN #390952)
                                               G. Tony Atwal (MN #0331636)
                                               60 South Sixth Street, Suite 3100
                                               Minneapolis, MN 55402
                                               Telephone: (612) 321-2278
                                               Facsimile: (612) 321-2288
                                               Ben.hulse@nortonrosefulbright.com
                                               Tony.atwal@nortonrosefulbright.com

                                               **Gibson, Dunn & Crutcher LLP**

                                               Lauren R. Goldman (*pro hac vice*)
                                               200 Park Avenue
                                               New York, NY 10166-0193
                                               Telephone: (212) 351-2375
                                               lgoldman@gibsondunn.com

                                               Gregg J. Costa (*pro hac vice*)
                                               811 Main Street, Suite 3000
                                               Houston, TX 77002-6117
                                               Telephone: (346) 718-6649
                                               gcosta@gibsondunn.com

                                               Adam I. Steene (*pro hac vice*)
                                               1700 M Street, N.W.
                                               Washington, D.C. 20036-4504
                                               Telephone: (202) 777-9326
                                               asteene@gibsondunn.com

                                               *Counsel for Defendant 3M Company*