UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CITY OF PEABODY, MASSACHUSETTS, individually and on behalf of a class of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> 3M COMPANY (F/K/A MINNESOTA MINING AND MANUFACTURING COMPANY) et al., <br><br> Defendants. | Case No. 25-cv-2083 (JMB/SGE) |

**MEMORANDUM OF LAW IN SUPPORT OF
GLOBE MANUFACTURING COMPANY, LLC'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS-ACTION COMPLAINT OR
ALTERNATIVELY STRIKE OR DISMISS PLAINTIFF'S CLASS
ALLEGATIONS**

**TABLE OF CONTENTS**

I.      INTRODUCTION. ...................................................................................... 1

II.     BACKGROUND. ....................................................................................... 7

III.    LEGAL STANDARD. ............................................................................. 10

IV.     ARGUMENT. ......................................................................................... 12

        A.    Peabody's Claims Against Globe Must Be Dismissed In Their
              Entirety For Lack of Personal Jurisdiction. ................................... 12

              1.    Globe Is Not Subject To General Jurisdiction In Minnesota. .......... 13

              2.    The FAC Does Not Allege Any Facts To Support The Exercise
                    Of Specific Personal Jurisdiction Over Globe. ............................... 14

        B.    Peabody's FAC Fails To Establish Article III Standing. ............................. 16

              1.    Peabody Has Not Pleaded An Injury-in-Fact. .................................. 17

              2.    Peabody Has Not Pleaded Traceability. ........................................... 18

        C.    Peabody's Claims Should be Dismissed For Failure To State A Claim.
              ...................................................................................................... 19

              1.    Massachusetts Law Bars Peabody's Strict Liability Claims
                    (Counts II and III). ........................................................................ 19

              2.    The Economic Loss Doctrine Bars Peabody's Negligence
                    Claim (Count V). ........................................................................... 20

              3.    Peabody's Fraudulent Misrepresentation/Concealment Claim
                    (Count IV) Fails To Satisfy Rule 9(b)'s Heightened Pleading
                    Standard. ....................................................................................... 22

              4.    Peabody Fails To State A Claim For Unfair Or Deceptive
                    Business Acts Or Practices Under Massachusetts Law (Count
                    I). .................................................................................................. 25

              5.    Peabody Has An Adequate Remedy At Law, Precluding Its
                    Unjust Enrichment Claim (Count VI). ............................................ 27

              6.    Massachusetts Law Bars Peabody's Punitive Damages Claim. ...... 28

D.      Peabody's Class Allegations Should Be Stricken or Dismissed. ................ 28

       1.      Individualized Issues Predominate And Defeat Peabody's Rule 23(b)(3) Class. .............................................................................. 29

       2.      Individualized Inquiries Also Defeat Peabody's Rule 23(b)(2) Class. .............................................................................................. 33

V.      CONCLUSION. ........................................................................................ 36

## TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*ADT Sec. Servs., Inc. v. Swenson, ex rel. Est. of Lee*,
    687 F. Supp. 2d 884 (D. Minn. 2009) ........................................................................... 35

*Ahern v. Sig Sauer, Inc.*,
    No. 21-CV-11007, 2021 WL 5811795 (D. Mass. Dec. 7, 2021) ................................. 20

*Alleruzzo v. SuperValu, Inc. (In re SuperValu, Inc. Customer Data Sec.*
    *Breach Litig.)*,
    870 F.3d 763 (8th Cir. 2017) ..................................................................................... 16

*Anoush Cab, Inc. v. Uber Techs., Inc.*,
    8 F.4th 1 (1st Cir. 2021) ...................................................................................... 26, 32

*Arc of Iowa v. Reynolds*,
    94 F.4th 707 (8th Cir. 2024) ...................................................................................... 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................... 11

*Avritt v. Reliastar Life Ins.*,
    615 F.3d 1023 (8th Cir. 2010) ....................................................................... 29, 35, 36

*In re Baycol Prods. Litig.*,
    218 F.R.D. 197 (D. Minn. 2003) ................................................................................ 29

*Block v. Toyota Motor Corp.*,
    Civ. Nos. 10-2802, 10-2803, 2010 WL 5422555 (D. Minn. Dec. 23,
    2010), *aff'd*, 665 F.3d 944 (8th Cir. 2011) ............................................................... 24

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
    582 U.S. 255 (2017) .................................................................................................... 15

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .................................................................................................... 13

*Burlington Indus., Inc. v. Maples Indus., Inc.*,
    97 F.3d 1100 (8th Cir. 1996) ..................................................................................... 13

*Calzone v. Hawley*,
    866 F.3d 866 (8th Cir. 2017) ..................................................................................... 18

*Clark v. Experian Info. Sols., Inc.*,
  256 F. App'x 818 (7th Cir. 2007) ........................................................... 32

*Cunningham v. Abbott Vascular, Inc.*,
  No. CV 21-10241, 2022 WL 2387903 (D. Mass. Mar. 1, 2022) ................................ 19

*Daher v. G.D. Searle & Co.*,
  695 F. Supp. 436 (D. Minn. 1988) ........................................................... 24

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ....................................................................... 13

*Donelson v. Ameriprise Fin. Servs., Inc.*,
  999 F.3d 1080 (8th Cir. 2021) ......................................................*passim*

*Ebert v. Gen. Mills, Inc.*,
  823 F.3d 472 (8th Cir. 2016) .................................................... 18, 29, 34

*Est. of Mahoney v. R.J. Reynolds Tobacco Co.*,
  204 F.R.D. 150 (S.D. Iowa 2001) ........................................................... 30

*Fletcher v. Cape Cod Gas Co.*,
  477 N.E.2d 116 (Mass. 1985) ............................................................... 30

*In re Folgers Coffee Mktg.*,
  159 F.4th 1151 (8th Cir. 2025) ....................................................... 32, 33

*Foster v. St. Jude Med., Inc.*,
  229 F.R.D. 599 (D. Minn. 2005).............................................................. 34

*Frank v. Gaos*,
  586 U.S. 485 (2019).................................................................... 11, 17

*Gattineri v. Wynn MA, LLC*,
  63 F.4th 71 (1st Cir. 2023)........................................................... 23, 24

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982)........................................................................ 11

*Glick v. W. Power Sports, Inc.*,
  944 F.3d 714 (8th Cir. 2019) .............................................................. 11

*Guzman v. MRM/Elgin*,
  409 Mass. 563, 567 N.E.2d 929 (1991) ...................................................... 19

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ..................................................................... 13

*IAFF v. NFPA, Inc.*,
No. 2384CV02517-BLS2 (Mass. Super. Ct. Mar. 5, 2024) ........................................... 8

*Jackson v. Johnson & Johnson & Janssen Pharms., Inc.*,
330 F. Supp. 3d 616 (D. Mass. 2018) ................................................. 20

*Johannessohn v. Polaris Indus. Inc.*,
9 F.4th 981 (8th Cir. 2021) ......................................................... 30

*Jones v. Lubrizol Advanced Materials, Inc.*,
559 F. Supp. 3d 569 (N.D. Ohio 2021) ............................................... 21

*K-V Pharm. Co. v. J. Uriach & CIA, S.A.*,
648 F.3d 588 (8th Cir. 2011) ....................................................... 10

*Kamal, v. Baker Tilly US, LLP*,
No. 21-CV-1549, 2023 WL 3483926 (D. Minn. Mar. 15, 2023) ......................... 30, 33

*Kraetsch v. United Serv. Auto. Ass'n*,
No. 14-CV-264, 2015 WL 1457015 (E.D. Mo. Mar. 30, 2015) ......................... 29, 32

*Laver v. Peal*,
516 F. Supp. 3d 931 (D. Minn. 2021) ............................................. 13, 15

*Lexion Medical, LLC v. SurgiQuest, Inc.*,
8 F. Supp. 3d 1122 (D. Minn. 2014) ................................................. 14

*United States ex rel. Louderback v. Sunovion Pharms., Inc.*,
703 F. Supp. 3d 961 (D. Minn. 2023) ................................................. 2

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ................................................................. 17

*Martin v. Mead Johnson Nutrition Co.*,
No. 09-11609, 2010 WL 3928707 (D. Mass. Sept. 30, 2010) ........................... 26

*McCabe v. Ford Motor Co.*,
720 F. Supp. 3d 14 (D. Mass. 2024) ............................................... 24, 25

*McCrary v. Stifel, Nicolaus & Co.*,
687 F.3d 1052 (8th Cir. 2012) ..................................................... 12

*McNaught v. Nolen*,
    76 F.4th 764 (8th Cir. 2023) ......................................................................... 17

*Murthy v. Missouri*,
    603 U.S. 43 (2024) ................................................................................. 10, 16

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ..................................................................................... 17

*Olin v. Dakota Access LLC*,
    910 F.3d 1072 (8th Cir. 2018) ..................................................................... 22

*Perry v. Manna Pro Prods., LLC*,
    No. 4:22-CV-00127-AGF, 2022 WL 3585611 (E.D. Mo. Aug. 22, 2022) .................. 3

*Peterson v. 3M Co.*,
    No. 24-CV-03497, 2025 WL 2784485 (D. Minn. Sept. 30, 2025).............................. 10

*Phillips v. Medtronic, Inc.*,
    754 F. Supp. 2d 211 (D. Mass. 2010) ........................................................... 20

*In re Prempro*,
    230 F.R.D. 555 (E.D. Ark. 2005)................................................................... 32

*Ramsdell v. Choice Auto Centers, LLC*,
    No. WOCV201201651B, 2012 WL 6970941 (Mass. Super. Dec. 24,
    2012) ............................................................................................................. 28

*Rick v. Profit Mgmt. Assocs., Inc.*,
    241 F. Supp. 3d 215 (D. Mass. 2017) ........................................................... 22

*Ryan v. Process, Inc.*,
    No. 24-CV-11054, 2025 WL 1222688 (D. Mass. Apr. 28, 2025).............................. 20

*Rykoff-Sexton, Inc. v. Am. Appraisal Assocs., Inc.*,
    469 N.W.2d 88 (Minn. 1991)......................................................................... 14

*Schuster v. Wynn MA, LLC*,
    118 F.4th 30 (1st Cir. 2024)........................................................................... 27

*Sebago, Inc. v. Beazer East, Inc.*,
    18 F. Supp. 2d 70 (D. Mass. 1998) ........................................................... 21, 22

*Sovereign Bank v. Sturgis*,
    863 F. Supp. 2d 75 (D. Mass. 2012) ............................................................. 23

*In re St. Jude Med., Inc.*,
    522 F.3d 836 (8th Cir. 2008) ............................................................................... 30

*In re St. Jude Med., Inc.*,
    425 F.3d 1116 (8th Cir. 2005) ............................................................................ 12

*Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*,
    781 F.3d 1003 (8th Cir. 2015) ............................................................................ 23

*Town of North Attleborough v. 3M Co.*,
    No. 23-cv-05137 (D.S.C. Oct. 13, 2023) ............................................................ 8

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ............................................................................................ 16

*Wells Dairy, Inc. v. Food Movers Int'l, Inc.*,
    607 F.3d 515 (8th Cir. 2010) .............................................................................. 10

*Westlake Invs., L.L.C. v. MLP Mgmt. L.L.C.*,
    707 F. Supp. 2d 904 (S.D. Iowa 2010) .............................................................. 16

*Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*,
    140 F. Supp. 3d 138 (D. Mass. 2015) ................................................................ 33

*Williams v. Stop & Shop Supermarket Co.*,
    No. 24-CV-12055, 2025 WL 1279374 (D. Mass. May 2, 2025) ......................... 27

*Wines v. Lake Havasu Boat Mfg., Inc.*,
    846 F.2d 40 (8th Cir. 1988) ............................................................................... 13

*Yellow Brick Rd., LLC v. Childs*,
    36 F. Supp. 3d 855 (D. Minn. 2014) .................................................................. 15

**Statutes**

Massachusetts Consumer Protection Law, Mass. Gen. Laws ch. 93A ................... 9, 19, 25

**Other Authorities**

Federal Rule of Civil Procedure 9 ............................................................................*passim*

Federal Rule of Civil Procedure 12 ..........................................................................*passim*

Federal Rule of Civil Procedure 23 ..........................................................................*passim*

## I.    INTRODUCTION.

This lawsuit began as a putative nationwide class action that named twenty Defendants.  After Defendant Globe Manufacturing Company, LLC ("Globe") and other defendants moved to dismiss the claims against them, the City of Peabody, Massachusetts ("Peabody"), amended its Complaint and now brings its purported class action solely on behalf of Massachusetts entities and solely against Globe—the lone "PFAS Turnout Gear Assembler Defendant"—and effectively two "PFAS Chemical Finish Defendants," 3M and the Dupont entities.

Plaintiff's claims center around its current firefighter protective gear, known as turnout gear.  Peabody does not claim that Globe gear fails to fulfill its purpose of protecting firefighters against flame, heat, and other hazards inherent in their work; nor do they claim, despite contending that the gear presents risks that outweigh its utility, that Peabody's firefighters are no longer using that gear for protection today.  Instead, Peabody seeks damages because it claims it did not know the gear it purchased allegedly contains unspecified amounts of unspecified forms of PFAS.[1]

Peabody's First Amended Complaint ("FAC") concerns purportedly PFAS-containing turnout gear allegedly purchased since February 2022.  (Doc. No. 156 ("FAC") ¶ 17 ("Over the last four years, Plaintiff has purchased its Turnout Gear from Defendant Globe[.]").)  But Peabody's own allegations and the sources cited within render its own claims facially impossible, because they demonstrate that Peabody knew or should

---

[1] Per- and polyfluoroalkyl substances, or "PFAS," are a class of "synthetic chemical compounds" for which no set definition exists.  (*See* Doc. No. 156 ("FAC") ¶ 2.)

have known *before it ever alleges to have begun purchasing* Globe turnout gear that its

gear could be made with PFAS-containing components.  Peabody's own allegations also

establish that turnout gear made *without* PFAS that meets industry and regulatory safety

standards has only been available since 2025.  (FAC ¶¶ 13, 17, 68-71, 96-105, 147.)

Finally, Peabody alleges health risks of "PFAS" generally but cites evidence that

relates to only two such compounds—PFOA and PFOS.  PFAS itself is not a chemical

compound; it is an umbrella term that can encompass thousands of chemically distinct

substances.  Thus, Peabody's use of "PFAS" interchangeably with PFOA or PFOS is

misleading.  It is also no accident.  Peabody has even amended its Complaint to further

blur those lines.  By way of example, compare the following:

| | |
|---|---|
| Orig. Compl. ¶ 110 | "There are established links between **PFOA** and testicular cancer, mesothelioma, non-Hodgkin's lymphoma, and prostate cancer."  (Emphasis added.) |
| FAC ¶ 67 | "There are established links between **PFAS** and testicular cancer, mesothelioma, non-Hodgkin's lymphoma, and prostate cancer."  (Emphasis added.) |
| Graham F. Peaslee, et al., *Another Pathway for Firefighter Exposure to Per- and Polyfluoroalkyl Substances: Firefighter Textiles*, Envt'l Sci. & Tech. Letters 7, 8, 594-599 (June 23, 2020),[2] referenced at FAC ¶ 67 n.12 | "There are established links between **PFOA** and testicular cancer, mesothelioma, non-Hodgkin's lymphoma, and prostate cancer."  (Emphasis added.) |

[2] *Available at* https://pubs.acs.org/doi/10.1021/acs.estlett.0c00410).  In ruling on a motion to dismiss, courts may consider "'matters incorporated by reference or integral to the claim . . . [and] matters of public record . . . whose authenticity is unquestioned,' without converting the motion into one for summary judgment."  *United States ex rel. Louderback v. Sunovion Pharms., Inc.*, 703 F. Supp. 3d 961, 969 (D. Minn. 2023) (citation omitted).

Despite dozens of allegations about the harms of PFOA and PFOS in its FAC, nowhere does Peabody allege that PFOA or PFOS (as opposed to PFAS generally, PTFE, or polymeric PFAS) were present in the turnout gear it allegedly purchased. (*See, e.g.*, FAC ¶¶ 36, 52, 52, 58, 69, 75.) Indeed, polymeric PFAS (also called fluoropolymers), like PTFE, are ubiquitous in consumer products and approved for use in medical devices and food-contact materials.[3] Peabody even previously acknowledged that PFAS are "universal[ly] presen[t]" in human bloodstreams, exist at "background levels [in] drinking water, food, and other sources," and are also "use[d] in a wide range of commercial products and industries." (Doc. No. 26 ("Compl.") ¶¶ 57, 66, 166(d).)

If this case moves forward, Globe will establish that despite Peabody's allegations that "assemblers" like Globe apply chemical finishes and sprays to garments before sale, Globe does not add or use PFAS in making its turnout gear. Indeed, Globe said as much in one of the sources that the FAC selectively quotes. (*See* FAC ¶ 113 (citing Press Release, *Globe Manufacturing Company Supports Bipartisan PFAS Alternatives Act* (July 20,

---

*See, e.g.*, *Perry v. Manna Pro Prods., LLC*, No. 4:22-CV-00127-AGF, 2022 WL 3585611, at *4 (E.D. Mo. Aug. 22, 2022) (considering studies and publications plaintiff cited in complaint and dismissing plaintiff's false and misleading representation claims where the studies did not contradict the alleged representations on which plaintiff relied).

[3] U.S. Food & Drug Admin., *PFAS in Medical Devices*, FDA.gov (Aug. 6, 2025), https://www.fda.gov/medical-devices/products-and-medical-procedures/pfas-medical-devices; U.S. Food & Drug Admin., *Authorized Uses of PFAS in Food Contact Applications*, FDA.gov (Jan. 3, 2025), https://www.fda.gov/food/process-contaminants-food/authorized-uses-pfas-food-contact-applications.

2023)[4] (hereinafter "Globe Press Release") ("Globe itself does not add PFAS to its products.")).) But all of that is for another day, and beyond the scope of this Motion. This Motion should be granted because, despite Peabody's amendments, and even accepting all allegations as true, Peabody still fails to allege any actionable claims against Globe, particularly on behalf of a *Massachusetts* class in a *Minnesota* court.

*First*, Peabody's claims against Globe fail without personal jurisdiction, standing, or any factual allegations supporting any cognizable claim under Massachusetts law.

Personal jurisdiction is missing here. Peabody, a Massachusetts municipality, alleges it purchased turnout gear from Globe, a New Hampshire-based turnout gear assembler. Peabody does not allege any connection between Globe (or even itself) and Minnesota yet seeks relief from this Minnesota Court. As the FAC acknowledges, Globe is a New Hampshire company with its principal place of business in New Hampshire. Globe is not even registered to conduct business in Minnesota, and the FAC does not include *any* allegations that Globe's conduct in relation to Peabody's claims has any connection to Minnesota, much less connections sufficient to support this Court's exercise of personal jurisdiction over non-resident Globe. As a result, this Court does not have personal jurisdiction over Globe, and Peabody's claims against Globe must be dismissed in their entirety pursuant to Federal Rule of Civil Procedure 12(b)(2).

---

[4]    *Available    at*    https://www.prnewswire.com/news-releases/globe-manufacturing-company-supports-bipartisan-pfas-alternatives-act-301882343.html

4

This Court also does not have subject matter jurisdiction over Peabody's claims against Globe. Peabody's entire 225-paragraph FAC contains just sparse allegations specific to its claims against Globe, none of which establishes any cognizable injury, let alone traces any such injury to Globe turnout gear, as required for Article III standing. Those allegations are:

- Peabody has purchased turnout gear from Globe for the past four years. (FAC ¶¶ 17, 40.)

- That turnout gear was "manufacture[d] and assemble[d]" by Globe "with the PFAS chemicals that are the subject of this Action." (*Id.* ¶ 40.)

- Globe is a New Hampshire company with its principal place of business in New Hampshire. (*Id.* ¶ 39.)

- A study published in 2020—before Peabody chose to purchase Globe turnout gear in 2021 and later—purportedly detected PFAS in turnout gear manufactured in 2017 and earlier. (*Id.* ¶¶ 68-70.)

- In 2023, Globe expressed support for the "PFAS Alternatives Act." (*Id.* ¶ 113.)

- Globe, as with 3M and Dupont, allegedly "expected their PFAS-containing materials to reach their ultimate users without substantial change in the condition in which they were designed and manufactured." (*Id.* ¶ 140.)

- "Globe maintained and publicly advertised that the company is 'committed to firefighter health and safety.'" (*Id.* ¶ 134.) This allegation purports to

5

quote language from an unidentified source on an unidentified date and contains no reference to either turnout gear or PFAS.

Nowhere does Peabody identify the representations made by Globe on which it relied to purchase the alleged injury-causing turnout gear. Nor does it allege that it has stopped using the gear it previously purchased to protect its firefighters in the life-or-death situations their work may present. Indeed, Peabody's decision to purchase Globe's turnout gear in 2022 and later years came *after* many of the well-publicized sources it cites as evidence that turnout gear, including Globe's turnout gear, contained PFAS and could cause harm. (*See, e.g.*, *id.* ¶ 67 n.12 (citing June 23, 2020 study), ¶ 70 n.15 (citing July 1, 2020 article) & n.16 (citing June 23, 2020 article); ¶ 74 (describing 2021 Congressional action); ¶ 114 (alleging that "in the early 2020s, the toxic-exposure risk to products containing PFAS became more generally known").) Peabody also does not identify any sustained injury other than generally claiming that "PFAS Turnout Gear" can "cause[] serious health risk to firefighters and other exposed persons" and unexplained "contaminat[ion]" of "surrounding environment, property, firefighters, and other exposed persons." (*Id.* ¶¶ 162, 177, 180.) Peabody's threadbare, conclusory allegations cannot establish Article III standing, which requires Peabody's claims against Globe to be dismissed in their entirety pursuant to Rule 12(b)(1).

Moreover, Peabody's sparse allegations are insufficient to state any of its claims against Globe for strict liability, negligence, fraud, Massachusetts' consumer protection law, unjust enrichment, and punitive damages claims under Rule 12(b)(6) or Rule 9(b).

*Second*, even if any of Peabody's claims survive (and they should not), Peabody's class claims should nonetheless be stricken or dismissed. Peabody brings this putative Massachusetts class action under Rules 23(b)(2) and (b)(3), seeking redress for itself and a class of 350 Massachusetts fire departments and 750 Massachusetts fire stations. (FAC ¶¶ 150, 153.) Peabody's claims, however, rest predominantly on individual, rather than common, issues of fact and cannot be sustained as a class action under Rules 23(b)(2) or (b)(3), especially where turnout gear is a made-to-order product, and Globe is not the only turnout gear assembler in the industry and does not provide turnout gear to every entity in the class. The Court should accordingly strike Peabody's class action claims under Rule 12(f), or in the alternative, dismiss them for failure to state a claim under Rule 12(b)(6).

## II.   BACKGROUND.

Turnout gear is made-to-order, specialized protective equipment designed specifically to protect firefighters from the hazards they may encounter when responding to fire and other emergencies, including heat, fire, moisture, and chemicals. Turnout gear enables firefighters to save lives and protect property.

**Globe is a cut-and-stitch assembler of turnout gear, not a chemical manufacturer.** Globe does not manufacture, distribute, market, or sell PFAS. (*See* FAC ¶¶ 33, 40.) In the Globe Press Release Peabody cites in its FAC[5]—published on July 20, 2023, during the time period Peabody alleges it continued to purchase Globe gear—Globe specifically stated "Globe itself does not add PFAS to its products." Globe makes turnout

---

[5] (*See id.* ¶ 113.)

gear composed of technical fabrics sourced from specialty textile manufacturers.  Some of these protective fabrics, as supplied to Globe, contain or historically have contained PTFE, also known under the brand name Teflon®, a fluoropolymer that is classified as a PFAS under certain definitions.  PTFE is used by textile manufacturers to achieve performance characteristics such as resistance to water, oil, or chemicals.  (*See id.* ¶¶ 34, 52.)  Until recently, all NFPA-compliant turnout gear contained some amount of PTFE to meet NFPA standards.  The International Association of Fire Fighters is "a labor organization that represents firefighters" and "contends that NFPA promulgated and maintains a standard for firefighters' turnout gear . . . that effectively requires manufacturers to use PTFE . . . and other PFAS[.]"  (Declaration of James L. Stengel, Ex. A (Decl. & Order Re Def.'s Mot. to Dismiss at 1, *IAFF v. NFPA, Inc.*, No. 2384CV02517-BLS2 (Mass. Super. Ct. Mar. 5, 2024)).)

Peabody alleges its firefighters may be exposed to PFAS in turnout gear through dermal absorption, inhalation, or ingestion.  (FAC ¶¶ 6, 54, 71, 118.)  According to Peabody, "dermal absorption through direct contact between the firefighters' skin and PFAS Turnout Gear [is] 'a key exposure route,'" as well as inhalation.  (*Id.* ¶¶ 54, 71.)  But according to complaints filed by other Massachusetts municipalities—whom Peabody purports to represent—"limited data exist on health effects associated with inhalation or dermal exposure to PFAS."  Compl., *Town of North Attleborough v. 3M Co.*, No. 23-cv-05137 (D.S.C. Oct. 13, 2023), Doc. No. 1; Compl., *MFN Reg'l Wastewater Dist. v. 3M Co.,* No. 25-cv-01609 (D.S.C. Mar. 11, 2025), Doc. No. 1; Compl., *Town of Sharon v. 3M Co.*, No. 22-cv-03458 (D.S.C. Oct. 6, 2022), Doc. No. 1.  Nonetheless, Peabody filed its

8

original putative class action on May 13, 2025, purporting to represent a nationwide class of government turnout gear purchasers. (Compl.) Peabody asserted violations of various state laws but did not purport to represent any statewide classes or subclasses. (*See generally id.*)

On February 10, 2026, Peabody filed its FAC bringing the lawsuit "as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and (b)(3)" on behalf of itself and a class of "[a]ll municipalities, fire districts, and public or private entities in the State of Massachusetts that, during the relevant time period, purchased Turnout Gear that contained PFAS and which were manufactured, distributed, applied, utilized, marketed, and/or sold by Defendants." (FAC ¶ 150.) Peabody continues to assert, on behalf of a Massachusetts class only, violation of the Massachusetts Consumer Protection Law, Mass. Gen. Laws ch. 93A § 2 (Count I), fraudulent misrepresentation/concealment (Count IV), negligence (Count V), and unjust enrichment (Count VI) claims. Peabody also now asserts strict product liability claims for design defect (Count II) and failure to warn (Count III).

Although the original Complaint named twenty defendants, including numerous textile manufacturers and turnout gear assemblers, in the FAC, Peabody dismissed "Turnout Gear Assembler" defendants other than Globe. But Peabody's proposed class is not limited to purchasers of Globe's turnout gear, and Globe does not provide and has not provided turnout gear to every entity in the class. Neither does Peabody allege that every firefighter in Massachusetts wears Globe turnout gear.

9

### III.    LEGAL STANDARD.

Peabody's claims should be dismissed pursuant to Rules 12(b)(2), (1), and (6) of the Federal Rules of Civil Procedure.  Peabody's class claims should also be dismissed under Rules 12(f) and 12(b)(6).

***Rule 12(b)(2)***:  Peabody's FAC must be dismissed against Globe under Rule 12(b)(2) because Globe is not subject to personal jurisdiction in Minnesota.  It is the plaintiff's burden to "make a prima facie showing that personal jurisdiction exists."  *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591 (8th Cir. 2011).  To adequately allege facts supporting the exercise of personal jurisdiction, "a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state."  *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (alteration in original) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)).

***Rule 12(b)(1)***:  Peabody does not have standing to assert its claims against Globe. "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'"  *Murthy v. Missouri*, 603 U.S. 43, 56 (2024).  "When assessing Article III standing at the pleading stage, courts consider whether a plaintiff has 'clearly allege[d] facts' that demonstrate the following three elements:  (1) the plaintiff has suffered an injury in fact; (2) the claimed injury is 'fairly traceable' to the defendant's alleged conduct; and (3) the relief sought will redress the claimed injury."  *Peterson v. 3M Co.*, No. 24-CV-03497, 2025 WL 2784485, at *3 (D. Minn. Sept. 30, 2025) (citing *Alleruzzo v. SuperValu, Inc. (In re SuperValu, Inc. Customer Data Sec. Breach Litig.)*, 870 F.3d 763, 768 (8th Cir.

10

2017)).  In a putative class action, "federal courts lack jurisdiction if no named plaintiff has standing."  *Frank v. Gaos*, 586 U.S. 485, 492 (2019).

***Rule 12(b)(6)***:  Peabody's claims should be dismissed pursuant to Rule 12(b)(6) because the FAC does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  That requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Courts "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts."  *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

***Rule 12(f)***:  Courts have discretion to strike pleadings of "any redundant, immaterial, impertinent, or scandalous matter(s)" under Rule 12(f).  Generally, striking a movant's pleading is disfavored, but it nonetheless is appropriate where portions of a complaint lack a legal basis.  *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021).  Courts have acknowledged that in class actions, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  In this Circuit, a motion to strike class action allegations may be granted, even before the filing of a motion for class certification, if the pleadings demonstrate that the class cannot be certified.  *Donelson*, 999 F.3d at 1092.  Such "unsupportable class allegations bring 'impertinent' material into the pleading" that, if they remained, "would prejudice the defendant by requiring the mounting of a defense against

11

claims that ultimately cannot be sustained." *Id.* (quoting Wright & Miller § 1383). Determining the viability of class claims on a motion to strike is consistent with Rule 23(c), which provides that a court "must determine by order whether to certify the action as a class action" at "an early practicable time." Fed. R. Civ. P. 23(c). Class claims that fall short of Rule 23's requirements may also be dismissed under Rule 12(b)(6). *McCrary v. Stifel, Nicolaus & Co.*, 687 F.3d 1052, 1057, 1059 (8th Cir. 2012) ("failure to satisfy Rule 23 is grounds to dismiss claims on behalf of a class").

To maintain a Rule 23 class action, plaintiffs must satisfy one of the three Rule 23(b) requirements, in addition to meeting all requirements of Rule 23(a). *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005). Under Rule 23(b)(3), class certification is proper where "questions of law or fact common to class members predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Class certification is proper under Rule 23(b)(2) "only when the primary relief sought is declaratory or injunctive." *In re St. Jude*, 425 F.3d at 1121.

## IV.    ARGUMENT.

### A.    Peabody's Claims Against Globe Must Be Dismissed In Their Entirety For Lack of Personal Jurisdiction.

This Court cannot exercise personal jurisdiction over Globe because Peabody has not adequately alleged *any* connection between Globe, or its claims against Globe, and Minnesota.

Federal courts may exercise jurisdiction over nonresident parties like Globe if (a) "the facts presented satisfy the forum state's long-arm statute," and (b) "the nonresident

12

has 'minimum contacts' with the forum state, so that the court's exercise of jurisdiction would be fair and in accordance with due process." *Wines v. Lake Havasu Boat Mfg., Inc.*, 846 F.2d 40, 42 (8th Cir. 1988) (citation omitted). Because "Minnesota's long-arm statute 'extends jurisdiction to the maximum limit consistent with due process,' a district court need only evaluate whether the requirements of due process are satisfied." *Laver v. Peal*, 516 F. Supp. 3d 931, 934 (D. Minn. 2021) (quoting *Westley v. Mann*, 896 F. Supp. 2d 775, 789 (D. Minn. 2012)). "Due process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980) and *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Nonresidents cannot be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted). *See also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & nn.8-9 (1984). Personal jurisdiction may be either general or specific. *Laver*, 516 F. Supp. 3d at 934. Here, Globe is subject to neither general nor specific jurisdiction in Minnesota. Therefore, Peabody's claims against Globe must be dismissed.

1.    Globe Is Not Subject To General Jurisdiction In Minnesota.

A company may be subject to general jurisdiction in a state if its affiliations with the state "are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop*

13

*Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Peabody does not—and cannot—show that Globe is "at home" in Minnesota.  As Peabody acknowledges, Globe is a New Hampshire limited liability company with its principal place of business in Pittsfield, New Hampshire.  (FAC ¶ 39.)  Globe is not registered to do business in Minnesota.  *Cf. Rykoff-Sexton, Inc. v. Am. Appraisal Assocs., Inc*., 469 N.W.2d 88, 90 (Minn. 1991) (explaining defendants registered to do business in Minnesota pursuant to Minn. Stat. §§ 303.03, .06, and .13 consent to jurisdiction).  Indeed, the FAC is devoid of *any allegations* regarding *any business* that Globe may have conducted in Minnesota such that it could be considered "essentially at home" in Minnesota.  (*See* FAC ¶¶ 41-43.)  The furthest the FAC goes is to allege, in a conclusory manner and without specifics, that "each Defendant"—collectively, without identifying any specific Defendant—"transacts business in, is found in, and/or has agents in this District."  *(Id.* ¶ 42.)  This does not sufficiently establish that Globe is "at home" in Minnesota for general jurisdiction to exist over it.  *See Lexion Medical, LLC v. SurgiQuest, Inc*., 8 F. Supp. 3d 1122, 1127-28 (D. Minn. 2014) (finding no general jurisdiction over out-of-state-defendant even where defendant had "ongoing, multiyear relationship" with Minnesota hospital, along with a "smattering of other connections" with Minnesota).

     2. <u>The FAC Does Not Allege Any Facts To Support The Exercise Of Specific Personal Jurisdiction Over Globe</u>.

  Peabody also fails to allege facts sufficient to support the exercise of specific personal jurisdiction over Globe.  "Specific personal jurisdiction exists when the cause of action arises out of, or is related to, the defendant's activities within the forum state and

14

the defendant purposefully avails itself of the privilege of conducting activities within the forum state." *Laver*, 516 F. Supp. 3d at 935. There is no specific jurisdiction where "all the conduct giving rise to the nonresidents' claims occurred elsewhere." *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 265 (2017).

That is exactly the case here. Peabody, "a municipality located in the state of Massachusetts," alleges that its claims arise out of its purchase of turnout gear from Globe, a New Hampshire company. (FAC ¶ 17.) The FAC does not indicate that the alleged transaction involved Minnesota contacts in any way. Peabody's claims that "Defendants purposefully availed themselves of the privilege of conducting activities in Minnesota," "Defendants have maintained substantial contacts in the State of Minnesota," "and/or committed overt acts" or otherwise engaged in conduct "directed at, or had the effect of, causing injury to persons residing in, located in, or doing business in the State of Minnesota" are not only mere legal conclusions but also are neither specific to Globe or consistent with the facts alleged as to Globe. (*See id.* ¶¶ 43, 45.) Nowhere in the FAC does Peabody allege how *Globe* "purposefully availed" itself of conducting *any* activities in Minnesota. *See, e.g.*, *Yellow Brick Rd., LLC v. Childs*, 36 F. Supp. 3d 855, 865-66 (D. Minn. 2014) (finding plaintiff's allegations that "[t]he Court has jurisdiction over the Defendants because they have purposefully availed themselves of the laws of Minnesota by pursuing business opportunities and transacting business within the state of Minnesota" and "Defendants have significant contacts with this district by doing business within this district and taking overt acts in furtherance of the conspiracy within this district" were "mere legal conclusions" and "insufficient alone to establish a prima facie case for the

15

Court's personal jurisdiction"); *Westlake Invs., L.L.C. v. MLP Mgmt. L.L.C.*, 707 F. Supp. 2d 904, 914 (S.D. Iowa 2010) (no personal jurisdiction over defendant where "the Court could not find a single instance where [defendant] [was] specifically mentioned in regards to minimum contacts with the forum state").  Simply put, the FAC contains no factual allegations suggesting Globe (a New Hampshire company) engaged in *any* activities in Minnesota—let alone that such activities gave rise to nonresident (and Massachusetts municipality) Peabody's claims there to support specific personal jurisdiction.

Because the allegations in the FAC do not support personal jurisdiction over Globe, Peabody's claims against Globe must be dismissed in their entirety.

### B.    Peabody's FAC Fails To Establish Article III Standing.

Notwithstanding the absence of personal jurisdiction, Peabody's claims against Globe nonetheless must be dismissed because Peabody fails to establish Article III standing.  To establish standing, as Article III requires, a plaintiff must show that it "suffered an injury in fact that is concrete, particularized, and actual or imminent" that "was likely caused by the defendant." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  Because "standing is not dispensed in gross," standing requirements must be met "'for each claim that [the plaintiff] press[es] against each defendant, 'and for each form of relief that [it] seek[s].'" *Murthy*, 603 U.S. at 61 (quoting *TransUnion*, 594 U.S. at 431).

Named plaintiffs in a class action must establish standing in their own right; they cannot rely on the potential standing of absent class members.  *In re SuperValu, Inc.*, 870 F.3d at 768.  "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf

16

of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *Frank*, 586 U.S. at 492 ("federal courts lack jurisdiction if no named plaintiff has standing").

### 1.    Peabody Has Not Pleaded An Injury-in-Fact.

Peabody has not alleged a cognizable injury.  A satisfactory injury cannot be "conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quotations omitted).  In Peabody's FAC, Peabody appears to assert two types of injury from alleged PFAS in turnout gear: physical injuries to firefighters and physical injuries to "fire stations, property, and the surrounding environment."  (*See* FAC ¶¶ 14, 54, 59, 89-90, 138, 143, 186, 199, 209, 216, 220-21.)  But neither injury is sufficiently alleged to establish Article III standing.

Despite characterizing its alleged injuries as "physical," Peabody does not allege Globe turnout gear caused anyone or anything physical harm—only that it, at most, "*posed a serious health and safety risk to persons*."  (*Id.* ¶ 116 (emphases added).)  But it does not allege that any firefighter in its municipality has been tested for and found to have any such "serious health and safety" condition alleged, including cancer.  (*See id.* ¶¶ 16, 165.)  Neither does Peabody allege that it tested and detected PFAS in its Globe turnout gear.  Even if Peabody's allegations may be construed as a risk of future harm, any such risk is not "certainly impending" for Article III standing absent any factual allegations to support such a claim.  *See, e.g.*, *McNaught v. Nolen*, 76 F.4th 764, 770 (8th Cir. 2023) ("Claims of future harm may be sufficient to establish Article III standing if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur[,]" but

17

"[a]llegations of *possible* future injury are not sufficient.") (internal quotations marks and citations omitted) (italics in original); *Arc of Iowa v. Reynolds*, 94 F.4th 707, 711 (8th Cir. 2024) (finding potential risk of severe illness if plaintiffs were to contract COVID-19 at school to be "too speculative to satisfy the injury in fact element" of Article III standing).

Moreover, Peabody's claim of PFAS contamination extending to its unidentified "property" and "surrounding environment" is not sufficiently concrete and particularized either. Peabody does not identify what property and surrounding environment that they own could be contaminated by PFAS in turnout gear, let alone allege that such contamination is a continuing threat to that property and surrounding environment. *Cf. Ebert v. Gen. Mills*, Inc., 48 F. Supp. 3d 1222, 1229 (D. Minn. 2014) (finding injury-in-fact sufficiently alleged for injunctive relief where plaintiff alleged that there was a "continuing threat of migration of a known human carcinogen" from the hazardous waste site "that is ongoing, real and immediate"). Accordingly, Peabody fails to adequately plead a cognizable injury of any kind from its purchase of Globe turnout gear, and its claims against Globe should be dismissed.

### 2. Peabody Has Not Pleaded Traceability.

Even if Peabody could establish an actual injury (it cannot), it does not allege an injury traceable to *Globe*'s actions. Peabody's allegations are insufficient because they do not plausibly attribute any conduct regarding the alleged injury-causing PFAS in turnout gear to Globe. *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017) ("Article III standing to sue each defendant also requires a showing that each defendant caused his injury.").

18

Peabody does not allege that it interacted with Globe or otherwise saw or relied on any misrepresentation or omission about Globe turnout gear when Peabody chose to purchase it, either. Peabody does not allege that Globe specifically knew and misrepresented, or otherwise failed to disclose any alleged health effects of exposure to PFAS in turnout gear, let alone before Peabody began to allegedly purchase Globe turnout gear in 2022. (*See* FAC ¶ 17.) Indeed, Globe does not manufacture PFAS. (*See* FAC ¶¶ 23-32, 40.) Nor does Globe manufacture the textiles that allegedly contain or are treated with PFAS. (*See id.* ¶ 52.) Although Peabody alleges that "PFAS Turnout Gear assemblers," which it defines as including Globe, applied various "PFAS Chemical Finishes" to turnout gear, (*id.* ¶¶ 33-38), Peabody nonetheless fails to allege that Globe knew and misrepresented that those finishes contain PFAS, or how the PFAS in those finishes alone posed any health or environmental risks.

Accordingly, Peabody fails to adequately plead any injury traceable to Globe, warranting dismissal.

**C.    Peabody's Claims Should be Dismissed For Failure To State A Claim.**

Finally, all of Peabody's claims against Globe—its strict product liability, negligence, fraud, Massachusetts Consumer Protection Law, and unjust enrichment claims—must be dismissed under Rule 12(b)(6) for failure to state a claim.

1.    Massachusetts Law Bars Peabody's Strict Liability Claims (Counts II and III).

Massachusetts law is clear: "[T]here is no strict liability in tort apart from liability for breach of warranty under the Uniform Commercial Code, G.L. c. 106, §§ 2–314–2–318." *Guzman v. MRM/Elgin*, 409 Mass. 563, 569, 567 N.E.2d 929 (1991); *Cunningham*

*v. Abbott Vascular, Inc.*, No. CV 21-10241, 2022 WL 2387903, at \*7 (D. Mass. Mar. 1, 2022), *report and recommendation adopted*, No. CV 21-10241, 2023 WL 6397839 (D. Mass. Sept. 29, 2023) ("[T]here is not an independent claim of strict liability in tort under Massachusetts law, and the sole remedy for strict liability is provided under the UCC."). Strict liability claims for defective products, whether in design or warning, "must be brought as a claim for breach of the implied warranties of merchantability and/or fitness for a particular purpose under Mass. Gen. Laws ch. 106, §§ 2–314 and 2–315, or of an express warranty under § 2–313." *Phillips v. Medtronic, Inc.*, 754 F. Supp. 2d 211, 216 (D. Mass. 2010). Peabody has not done so here, and so their strict product liability claims (Counts II and III) fail as a matter of law. *See Ryan v. Process, Inc.*, No. 24-CV-11054, 2025 WL 1222688, at \*1 n.1 (D. Mass. Apr. 28, 2025) ("[A] plaintiff may not include a standalone 'strict liability' claim in their complaint and expect to survive a 12(b)(6) motion."); *see also Jackson v. Johnson & Johnson & Janssen Pharms., Inc.*, 330 F. Supp. 3d 616, 626 (D. Mass. 2018) (dismissing strict products liability claim on motion for summary judgment because "they fail as a matter of law as Massachusetts does not grant relief for such claims."); *see, e.g.*, *Ahern v. Sig Sauer, Inc.*, No. 21-CV-11007, 2021 WL 5811795, at \*2 (D. Mass. Dec. 7, 2021) (dismissing independent strict liability claim as precluded by Massachusetts law).

      2.    The Economic Loss Doctrine Bars Peabody's Negligence Claim (Count V).

Peabody's remaining tort claim for negligence is likewise barred under Massachusetts' economic loss doctrine. "[T]he economic loss doctrine provides that

20

purely economic losses are not recoverable in negligence . . . in the absence of personal injury or damage to property other than the product itself." *Jones v. Lubrizol Advanced Materials, Inc.*, 559 F. Supp. 3d 569, 637 (N.D. Ohio 2021), *on reconsideration in part,* No. 20-CV-00511, 2021 WL 4582180 (N.D. Ohio Oct. 6, 2021) (*quoting Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70, 89 (D. Mass. 1998)). "Massachusetts courts have defined economic loss as 'damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury or damage to other property.'" *Sebago*, 18 F. Supp. 2d at 89 (citation omitted).

Despite alleging that turnout gear "posed a serious health and safety risk to persons" and seeking "[c]ompensatory damages for physical injuries . . . caused by the PFAS Turnout Gear," the crux of Peabody's claim is that the turnout gear they purchased did not meet their expectations. (*See* FAC at 54 and ¶ 165.) This is evident in Peabody's "assert[ion of] public rights and public interests . . . to recover the costs of remediation, repair, and replacement of property contaminated by PFAS—including replacement of PFAS Turnout Gear." (*Id.* ¶ 16.) Peabody has not adequately alleged that any of its firefighters *have sustained* any alleged adverse health conditions after exposure to Globe's turnout gear to warrant damages. *See supra* at 16-19.

Peabody does not adequately allege property damage either. Throughout the FAC, Peabody repeatedly refers to "property damage," but the only property they actually identify as incurring any alleged damage is the turnout gear itself. (*See* FAC ¶ 16.) The other property that they allege have been "contaminated" by PFAS in turnout gear include "fire stations, fire trucks, occupational equipment, personal property, firehouse furnishings,

21

lockers and storage areas, laundering equipment and facilities, bunk rooms, [and] other surrounding property" generally, (*see id.* ¶ 3), but nowhere in the FAC does Peabody claim that it owns such property or explain how any alleged PFAS "contamination" caused actual damage to that property. *See, e.g.*, *Sebago*, 18 F. Supp. 2d at 94-95 (dismissing negligence claim where plaintiffs "have not alleged personal injury to themselves or damage to 'other property' that they own" and only alleged damage to the property at issue). Accordingly, the economic loss doctrine precludes Peabody's negligence claim.

3.    Peabody's Fraudulent Misrepresentation/Concealment Claim (Count IV) Fails To Satisfy Rule 9(b)'s Heightened Pleading Standard.

Peabody also fails to sufficiently allege facts to support a fraud claim against Globe. Fraudulent misrepresentation claims are subject to the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). *Rick v. Profit Mgmt. Assocs., Inc.*, 241 F. Supp. 3d 215, 223 (D. Mass. 2017). To satisfy Rule 9(b), a plaintiff must plead specific facts, including who committed the fraud, where and when the fraud occurred, and what the defendant obtained because of the fraud. *Olin v. Dakota Access LLC*, 910 F.3d 1072, 1075 (8th Cir. 2018). "Moreover, where there are multiple defendants, the specific role of each [defendant] must be alleged." *Rick*, 241 F. Supp. 3d at 224. Peabody's fraud claim against Globe must be dismissed because it fails to meet that heightened standard.

To recover under a fraudulent misrepresentation claim under Massachusetts law, a plaintiff must show that:

> (1) the defendant made a false representation of material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon; (2) the plaintiff relied upon the

22

representation as true and acted upon it to his or her detriment;
and (3) such reliance was reasonable under the circumstances.

*Gattineri v. Wynn MA, LLC*, 63 F.4th 71, 87-88 (1st Cir. 2023) (cleaned up); *Sovereign Bank v. Sturgis*, 863 F. Supp. 2d 75, 84 (D. Mass. 2012).  Peabody fails to allege *any* of the required prongs, much less with the specificity required by Rule 9(b).

***No false statement by Globe alleged.***  Peabody does not allege that Globe represented that its turnout gear did not contain PFAS.  Indeed, Peabody does not identify any false statement allegedly made by Globe in connection with Peabody's alleged purchase of turnout gear.  (FAC ¶¶ 123-44.)  Peabody identifies only two statements allegedly made by Globe, one of which contains no reference to either turnout gear or PFAS, and the other made in 2023, *after* Peabody allegedly began purchasing Globe turnout gear.  (*Id.* ¶ 134.)  These statements are insufficient to allege a fraud claim against Globe because the FAC fails to plead how any of those statements are (a) false *and* (b) material to Peabody's alleged purchase of turnout gear from *Globe*.  Any other statements identified in the FAC are attributed to *other* Defendants or non-parties, not to Globe.  (*See id.* ¶¶ 123-33, 135-44.)

***Allegations concerning misstatements made by "Defendants" collectively are insufficient to support claims against Globe.***  Peabody's attribution of allegedly fraudulent conduct to "multiple defendants generally, in a group pleading fashion" is insufficient as a matter of law to state a claim for fraud.  *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015).

23

Here, every paragraph of Peabody's fraud claim refers to defendants *collectively*. (FAC ¶¶ 200-09.)  Peabody alleges that (a) "Defendants" possessed material information regarding Peabody's purchase of protective gear, (*id.* ¶ 138-41), (b) "Defendants" failed to adequately disclose this material information, (*id.*), (c) "Defendants" made material misrepresentations regarding the gear, (*id.* ¶ 200-09), and (d) because of "Defendants'" actions, Peabody purchased gear and suffered resulting economic injury, (*id.* ¶¶ 17, 120). Decisions from this District have dismissed fraud claims for failure to satisfy Rule 9(b) on the basis that "pleading that the defendants collectively committed fraud is not sufficient." *Block v. Toyota Motor Corp.*, Civ. Nos. 10-2802, 10-2803, 2010 WL 5422555, at *5 (D. Minn. Dec. 23, 2010), *aff'd*, 665 F.3d 944 (8th Cir. 2011); *Daher v. G.D. Searle & Co.*, 695 F. Supp. 436 (D. Minn. 1988) (concluding fraud allegations insufficient under Rule 9(b) where plaintiff did not plead the time, place, or contents of the alleged fraud as to *each* individual defendant).  This Court should do the same.

*No reliance alleged.*  Peabody does not allege that it considered—much less actually and reasonably relied on—statements made by Globe in deciding what gear to purchase. That is fatal to its fraudulent misrepresentation claim.  *Gattineri*, 63 F.4th at 87-88.

*No omission by Globe alleged.*  To the extent Peabody's argument is that Globe committed fraud by omission, that argument also fails.  "To show fraud by omission, the complaint must allege both concealment of material information and a duty requiring disclosure." *McCabe v. Ford Motor Co.*, 720 F. Supp. 3d 14, 30 (D. Mass. 2024) (internal quotation marks omitted).  Under Massachusetts law, a duty to disclose arises if:

24

> (i) there is a fiduciary or other similar relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to the essence of, the transaction.

*Id.* (internal quotation marks omitted).  A duty to disclose based on information that goes to the essence of the transaction arises when a party to a transaction fails to disclose "facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to" those facts.  *Id.* (quoting Restatement (Second) of Torts § 551(2)(e) (1977)).

The FAC fails to allege any facts concerning any fiduciary or special relationship between Peabody and Globe.  Nor does the FAC allege that Globe knew Peabody to be mistaken as to facts basic to any alleged transaction.  As a result, Peabody fails to state a claim for fraud by omission, much less with the specificity required by Rule 9(b), because it does not describe the context for any omission allegedly made by Globe or explain what undisclosed facts went to the essence of the transaction.

4.      Peabody Fails To State A Claim For Unfair Or Deceptive Business Acts Or Practices Under Massachusetts Law (Count I).

Peabody fails to allege facts to satisfy the elements of a Chapter 93A claim, much less with requisite specificity under Rule 9(b), too.

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, § 2(a). A claim for violation of Chapter 93A requires three elements: "(1) the defendant engaged in an unfair method of competition or committed an unfair deceptive act or practice; (2) a loss of money or property was suffered; and (3) the defendant's unfair or deceptive method,

25

act or practice caused the loss suffered." *Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 16 (1st Cir. 2021). Moreover, "[a] claim under Chapter 93A that involves fraud is subject to the heightened pleading requirement" under Fed. R. Civ. P. 9(b). *Martin v. Mead Johnson Nutrition Co.*, No. 09-11609, 2010 WL 3928707, at *3 (D. Mass. Sept. 30, 2010) (citation omitted). Peabody fails to make that heightened showing for any of the three required elements.

*First*, Peabody fails to allege *any* facts to support an argument that *Globe* engaged in unfair or deceptive conduct that caused Peabody's alleged injury, much less with the specificity Rule 9(b) requires. The FAC does not identify what conduct was allegedly unfair and deceptive, much less connect Globe's conduct to Peabody's alleged purchase of turnout gear. Indeed, the FAC contains *no* factual allegations concerning the circumstances surrounding Peabody's purchase(s) from Globe. (*See supra* at 19; FAC ¶ 17 (alleging only in general terms that "Plaintiff has purchased its Turnout Gear from Defendant Globe").) Moreover, Peabody's alleged purchases of Globe gear began in 2022, *after* a study was published in 2020 that purportedly demonstrated the presence of PFAS in turnout gear. (FAC ¶¶ 17, 68-70 (citing Peaslee et al., *supra* at 2.)

*Second*, even if Peabody had adequately alleged Chapter 93A damages, Peabody has not alleged any facts demonstrating any damage was caused by Globe's actions. To the contrary, Peabody acknowledges that (a) Globe does not make PFAS or the specialty textiles from which Globe turnout gear is assembled, (FAC ¶¶ 21, 40), and (b) the turnout gear Peabody allegedly purchased from Globe complied with NFPA standards. (*Id.* ¶ 33.) Peabody claims that "PFAS Turnout Gear assemblers," which it defines as including

26

Globe, applied various "PFAS Chemical Finishes" to turnout gear, (*id.* ¶¶ 33-38), but it does not allege how those "finishes" caused their alleged injury or that Globe specifically knew and misrepresented that they included such finishes that could cause any alleged health effects before Peabody's purchase of Globe turnout gear began. *See supra* at 19. Accordingly, Peabody's Chapter 93A claim against Globe should be dismissed.

      5.    <u>Peabody Has An Adequate Remedy At Law, Precluding Its Unjust Enrichment Claim (Count VI)</u>.

Peabody's unjust enrichment claim fails because Peabody has available to it an adequate remedy at law. "[A] party with an adequate remedy at law cannot also assert a claim for unjust enrichment, and the existence of a statutory claim for unfair or deceptive conduct precludes a plaintiff from bringing a parallel claim for unjust enrichment that seeks to redress the same alleged injury." *Williams v. Stop & Shop Supermarket Co.*, No. 24-CV-12055, 2025 WL 1279374, at *2 (D. Mass. May 2, 2025). Nonetheless, that is exactly what Peabody attempts to do here: Peabody asserts claims for fraud and violation of Chapter 93A against Globe seeking to redress the same alleged injury as its unjust enrichment claim—harm from its purchase of Globe turnout gear because that turnout gear allegedly contained PFAS. This is not permitted under Massachusetts law. *See id.* Moreover, that Peabody's fraud and Chapter 93A claims independently fail is irrelevant because "it is the *availability* of a remedy at law, not the *viability* of that remedy, that prohibits a claim for unjust enrichment." *See Schuster v. Wynn MA, LLC*, 118 F.4th 30, 38 (1st Cir. 2024) (internal quotation marks and citation omitted). Accordingly, Peabody's unjust enrichment claim against Globe should be dismissed.

6.      Massachusetts Law Bars Peabody's Punitive Damages Claim.

Finally, to the extent Peabody seeks punitive damages as a standalone claim, it must be dismissed. "Punitive damages are not allowed in Massachusetts unless expressly authorized by statute." *Ramsdell v. Choice Auto Centers, LLC*, No. WOCV201201651B, 2012 WL 6970941, at *6 (Mass. Super. Dec. 24, 2012) (citing *Flesner v. Tech. Comm'ns Corp*., 410 Mass. 805, 813 (1991)). The only statute at issue in this case is Chapter 93A. Although Chapter 93A authorizes double or treble damages "which are essentially punitive in nature," they "do not constitute punitive damages." *Ramsdell*, 2012 WL 6970941, at *6. Accordingly, Peabody's punitive damages claim should be dismissed. *See, e.g.*, *id.* (dismissing stand-alone punitive damages claim for failure to state a claim).

**D.      Peabody's Class Allegations Should Be Stricken or Dismissed.**

Even if Peabody's claims survive Globe's motion to dismiss for lack of personal jurisdiction, standing, and failure to state any claim under Massachusetts law (it should not), Peabody's class allegations should be stricken, or dismissed, because the pleadings demonstrate that Peabody fails to satisfy the requirements of either Rule 23(b)(2) or Rule 23(b)(3). The proposed Rule 23(b)(3) class fails because, under each cause of action alleged, individual questions regarding the circumstances of each class member's purchase of turnout gear will necessarily predominate over common ones, rendering a nationwide class action a less than "superior" method for adjudicating the parties' rights. These individualized inquiries defeat the cohesiveness of the class and are likewise fatal to Peabody's statewide class allegations for injunctive relief under Rule 23(b)(2).

28

1.     Individualized Issues Predominate And Defeat Peabody's Rule 23(b)(3) Class.

Peabody cannot satisfy the requirements of Rule 23(b)(3) for any of its claims because they all require individualized proof.

Rule 23(b)(3)'s predominance inquiry "goes to the efficiency of a class action as an alternative to individual suits." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 479 (8th Cir. 2016). "At the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence." *Avritt v. Reliastar Life Ins.*, 615 F.3d 1023, 1029 (8th Cir. 2010). If a plaintiff's prima facie showing on a question requires presenting evidence that varies from member to member of a proposed class, then it is an individual question. *See Kraetsch v. United Serv. Auto. Ass'n*, No. 14-CV-264, 2015 WL 1457015, at *5 (E.D. Mo. Mar. 30, 2015) (quoting *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir. 2005)). Accordingly, the predominance requirement cannot be satisfied where "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Id.* (granting motion to strike); *see also Ebert*, 823 F.3d at 478-79. Here, individual questions will overwhelm common ones where each of Peabody's causes of action requires evidence that necessarily varies from class member to class member. Rule 23(b)(3) therefore cannot be satisfied.

Peabody's strict product liability and negligence claims (Counts II, III, and V) cannot satisfy Rule 23(b)(3)'s predominance requirement because of the individualized inquiries required to prove those claims. Courts have routinely found such product liability claims unsuitable for class treatment because of the high number of individual questions

29

that arise in adjudicating these claims. *See, e.g.*, *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 208 (D. Minn. 2003) (finding certification under 23(b)(3) "inappropriate" where strict product liability and negligence claims raised individualized issues "inextricably intertwined" with any potential common issues); *Est. of Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150, 156-59 (S.D. Iowa 2001) (negligence claim failed predominance test where claim "contain[s] elements that turn on facts unique to each plaintiff," including injury-in-fact, causation, and affirmative defenses such as comparative fault and assumption of the risk). *See also Fletcher v. Cape Cod Gas Co.*, 477 N.E.2d 116, 122 n.8 (Mass. 1985) (noting that **mass torts are "ordinarily not appropriate for a class action** because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways" and that "[t]he usefulness of the class action mechanism is even less apparent in cases, such as the one before us, which involve allegations of misconduct by one or more defendants over an extended period of time." (emphasis added)) (citing Advisory Committee Notes to 1966 Revision, Fed. R. Civ. P. 23(b)(3), 28 U.S.C. (1982)).

Peabody's fraudulent misrepresentation/concealment claim (Count IV) is similarly unsuitable for class certification under Rule 23(b)(3) because of the individualized proof required to sustain such claims too. Indeed, "fraud cases are ill-suited for class actions because they require individualized findings on whether the plaintiffs actually relied on the alleged misrepresentation." *Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 985 (8th Cir. 2021); *In re St. Jude Med., Inc.*, 522 F.3d 836, 838 (8th Cir. 2008) ("Because proof often varies among individuals concerning what representations were received, and the degree

30

to which individual persons relied on the representations, **fraud cases often are unsuitable for class treatment**." (emphasis added)); *Kamal v. Baker Tilly US, LLP*, No. 21-CV-1549, 2023 WL 3483926, at *2 (D. Minn. Mar. 15, 2023), *report and recommendation adopted*, No. CV 21-1549, 2023 WL 3480144 (D. Minn. May 16, 2023) (explaining "[t]he Eighth Circuit has repeatedly explained that fraud cases are often unsuitable for class certification precisely because there are individual reliance issues in such cases").

This is particularly evident here, where turnout gear is a made-to-order product. Although Globe is the only "PFAS Turnout Gear assembler" named in Peabody's FAC, it is not the only turnout gear assembler in an industry comprised of many other assemblers and manufacturers of the fabrics assembled in each set of turnout gear—a fact Peabody acknowledged in its own prior Complaint and in its FAC. (*See, e.g.*, FAC ¶¶ 135-36 (describing purported representations made by turnout gear assembler Lion Group, Inc.); 137 (describing alleged representations made by textile manufacture W.L. Gore & Associates).) Absent class members may have relied on others' representations and purchased other assemblers' turnout gear, and not Globe's. Indeed, Peabody's proposed class is not limited to purchasers of Globe's turnout gear, and neither does Peabody allege that every firefighter in Massachusetts wears Globe turnout gear. Accordingly, it is no surprise that Peabody's common law fraud claims are predominated by individualized inquiries, rather than common ones.

The same is true for Peabody's Chapter 93A claim. Courts have found that consumer fraud claims also "require[] individualized proof concerning reliance and causation" because "[w]hether a plaintiff saw an advertisement; whether the particular

31

advertisement was fraudulent; whether that plaintiff relied on the advertisements; and whether the plaintiff was damaged as a result of the advertisement are all individual questions of fact." *In re Prempro*, 230 F.R.D. 555, 567 (E.D. Ark. 2005). For example, the Seventh Circuit has held that Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") claims "require[] individualized proof" contravening Rule 23(b)(3)'s predominance requirement, in part because "it is not possible for a plaintiff to establish proximate causation unless the plaintiff can show he or she was 'in some manner, deceived' by the misrepresentation." *Clark v. Experian Info. Sols., Inc.*, 256 F. App'x 818, 821-22 (7th Cir. 2007). ICFA claims, like Chapter 93A claims, require proof that the defendant's deceptive act or practice proximately caused plaintiff's injury. *Compare id.* at 821 (listing ICFA elements) *with Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 16 (1st Cir. 2021) (explaining Chapter 93A elements). In fact, each of Chapter 93A's elements require individualized proof. Whether a defendant engaged in an unfair or deceptive practice depends on what representations, if any, a class member received and relied upon and will further vary from defendant to defendant. Furthermore, whether a member incurred any "loss of money or property" will require proof, on an individual basis, of which turnout gear the class member purchased and by and from whom, its PFAS content (if any), and whether the class member incurred actionable loss as a result. Proof relevant to each of these questions will require individualized evidence that varies widely from member to member, counseling against class treatment. *See Kraetsch*, 2015 WL 1457015, at *5.

Finally, Rule 23(b)(3)'s predominance requirement cannot be satisfied for Peabody's unjust enrichment claim (Count VI) either. The Eighth Circuit has held that

32

"unjust-enrichment claims are generally inappropriate for class treatment." *In re Folgers Coffee Mktg.*, 159 F.4th 1151, 1158 (8th Cir. 2025). Unjust enrichment claims require a showing of: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value." *Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*, 140 F. Supp. 3d 138, 141 (D. Mass. 2015) (internal quotation marks and citation omitted). But as the Eighth Circuit explained, "[w]hether a particular transaction might be considered inequitable or unjust turns on the specific circumstances of each transaction, which again **places individual inquiries front and center**." *In re Folgers Coffee Mktg.,* 159 F.4th at 1158 (emphasis added).

Accordingly, Plaintiffs cannot establish that common issues predominate the claims they assert against Globe to satisfy Rule 23(b)(3). Its class claims should be stricken or dismissed as a result. *See, e.g.*, *Kamal*, 2023 WL 3483926, at *1-2, *6 (collecting cases) (granting motion to strike where it was "apparent from the pleadings that individual issues will predominate").

2.      Individualized Inquiries Also Defeat Peabody's Rule 23(b)(2) Class.

Peabody cannot maintain a class action under Rule 23(b)(2) for similar reasons. Rule 23(b)(2) allows a class action to proceed, assuming Rule 23(a) requirements are satisfied, if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Donelson*, 999 F.3d at 1093 (internal

33

quotation marks and citation omitted); Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) applies "only when a single injunction or declaratory judgment would provide relief to each member of the class," not "when each class member would be entitled to an individualized award of monetary damages."  *Ebert*, 823 F.3d at 480 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011)).  Accordingly, class claims under Rule 23(b)(2) must be "cohesive" to be certified as a class.  *Donelson*, 999 F.3d at 1093.  Where a significant number of individualized factual and legal issues exist requiring members of a proposed class "to present evidence that varies from member to member," the class claim "is not susceptible to generalized, class-wide proof," defeating cohesiveness.  *Id.* (internal quotation marks and citation omitted).  The Eighth Circuit has recognized that "the cohesiveness requirement of Rule 23(b)(2) is more stringent than the predominance and superiority requirements for maintaining a class action under Rule 23(b)(3)."  *Ebert*, 823 F.3d at 480.  Because Peabody fails to satisfy the predominance requirement of Rule 23(b)(3), they necessarily fail to satisfy the cohesiveness requirement of Rule 23(b)(2).  *See Foster v. St. Jude Med., Inc.*, 229 F.R.D. 599, 607 (D. Minn. 2005) ("[T]he issues that defeat the predominance and superiority requirements of Rule 23(b)(3) also preclude certification under Rule 23(b)(2).").

Peabody further fails to satisfy the requirements of Rule 23(b)(2) for other, independent reasons.

*First*, Peabody primarily seeks money damages, not injunctive relief, for its claims, and therefore those claims cannot be certified on behalf of a class under Rule 23(b)(2).  More specifically, Peabody seeks recovery of "costs to properly retrieve, remove, destroy,

and dispose of PFAS Turnout Gear," the "cost of replacing all PFAS Turnout Gear," restitution in the form of "revenues received [by Defendants] related to PFAS Turnout Gear," and compensatory damages, punitive damages, and attorneys' fees and costs. (FAC at 54-55.) But "[c]lass certification under Rule 23(b)(2) is proper only when the primary relief sought is declaratory or injunctive." *See Avritt*, 615 F.3d at 1037 (quoting *In re St. Jude*, 425 F.3d at 1121). Rule 23(b)(2) certification is not an appropriate vehicle for a case primarily seeking monetary damages, like Peabody's case here.

*Second*, to the extent Peabody seeks injunctive or declaratory relief on behalf of the purported Massachusetts class for any one of the six Counts in the FAC, those claims should be stricken. Peabody's claims are an inappropriate vehicle for injunctive or declaratory relief. Peabody has an adequate remedy at law—monetary damages—and does not allege that Globe is presently engaging in any deceptive conduct or that Peabody faces any ongoing consumer injury which an injunction would prevent. Indeed, the prayer for relief does not specifically request any kind of declaratory or injunctive relief. (FAC at ¶¶ 54-55.) "The general rule is that this 'equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again.'" *ADT Sec. Servs., Inc. v. Swenson, ex rel. Est. of Lee*, 687 F. Supp. 2d 884, 890–91 (D. Minn. 2009) (quoting *City of L.A. v. Lyons,* 461 U.S. 95, 111 (1983)) (dismissing claim for injunctive relief in a fraud and negligence action).

*Third*, even if Peabody could pursue injunctive or declaratory relief for its claims, they are not cohesive and therefore cannot satisfy Rule 23(b)(2). In *Donelson*, the plaintiff

35

asserted two alleged Securities Exchange Act violations on behalf of itself and a purported class under Rule 23(b)(2). *Donelson*, 999 F.3d at 1093. Both claims required plaintiff to prove, among other things, misrepresentations or omissions of material fact, causation, or materiality and reliance, and defendants' scienter, which the court found "would require a significant number of individualized factual and legal determinations to be made." *See id.* Similarly, in *Avritt*, the Eighth Circuit affirmed the district court's denial of Rule 23(b)(2) class certification of plaintiff's claims under Washington and California consumer protection law. *See Avritt*, 615 F.3d at 1037 (holding that a class was "not cohesive enough to satisfy Rule 23(b)(2)" because "resolution of the plaintiffs' claims would require numerous individual determinations regarding [the defendant's] representations and each purchaser's reliance"). As discussed above, *supra* at 26-31, Peabody's prima facie case for each of its causes of action will require each class member to present evidence that "varies from member to member." *See Donelson*, 999 F.3d at 1093. Accordingly, the claims are "not susceptible to generalized, class-wide proof." *Id.* (internal quotations omitted). The class thus fails to be sufficiently cohesive under Rule 23(b)(2).

## V.    CONCLUSION.

For the foregoing reasons, Globe respectfully requests that the Court dismiss the First Amended Class Action Complaint against Globe with prejudice, or alternatively strike or dismiss Peabody's class allegations, and grant all further relief that the Court deems appropriate.

Dated: May 5, 2026

*/s/ Alethea M. Huyser*

Alethea M. Huyser (#0389270)
Devin T. Driscoll (#0399948)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 492-7000
ahuyser@fredlaw.com
ddriscoll@fredlaw.com

James L. Stengel* (N.Y. Bar No. 1800556)
Paige Pavone* (N.Y. Bar No. 5395041)
**ORRICK, HERRINGTON
& SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
jstengel@orrick.com
ppavone@orrick.com

Hillary Dang* (D.C. Bar No. 888314267)
**ORRICK, HERRINGTON
& SUTCLIFFE LLP**
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
hdang@orrick.com

***Attorneys for Defendant Globe
Manufacturing Company, LLC***

*Admitted *pro hac vice*

37