**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| CITY OF PEABODY, MASSACHUSETTS, individually and on behalf of a class of all others similarly situated,<br><br>Plaintiff,<br><br>    v.<br><br>3M COMPANY (F/K/A MINNESOTA MINING AND MANUFACTURING COMPANY), *et al*.,<br><br>    **Defendants.** | Case No.: 25-cv-2083-JMB-SGE<br><br>**Demand For Jury Trial** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS EIDP, INC. F/K/A E. I. DU PONT DE NEMOURS AND COMPANY; DUPONT DE NEMOURS, INC.; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; AND CORTEVA, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...............................................................................................................ii

TABLE OF AUTHORITIES.......................................................................................................iii

INTRODUCTION ......................................................................................................................... 1

BACKGROUND ...........................................................................................................................3

LEGAL STANDARD ...................................................................................................................5

ARGUMENT.................................................................................................................................6

    I.    Peabody has not established Article III standing ....................................................6

        A.    Plaintiff's alleged injuries are not traceable to the Moving Defendants ..............6

        B.    Plaintiff lacks standing to bring personal injury claims ......................................7

    II.    The Court should dismiss Peabody's claim for lack of personal jurisdiction..........8

        A.    The Court does not have general jurisdiction over the Moving Defendants........9

            1.    Mandating consent to general jurisdiction in exchange for business registration violates the Commerce Clause ............................................. 10

            2.    Mandating consent to general jurisdiction in exchange for business registration violates the Due Process Clause........................................... 12

        B.    The court does not have specific personal jurisdiction over the moving defendants............................................................................................................ 15

    III.    Peabody fails to state a cognizable claim against the Moving Defendants........ 16

        A.    Plaintiff fails to plausibly allege causation....................................................... 16

        B.    The complaint fails to plead a violation of the Massachusetts Consumer Protection Act.................................................................................................... 17

        C.    The complaint's strict product liability claims should be dismissed.................. 17

        D.    Peabody's fraud claims are legally insufficient ................................................. 18

            1.    The complaint does not plead facts supporting the required elements of a fraudulent-misrepresentation claim......................................................... 18

            2.    The complaint's failure to allege that Peabody purchased protective gear from any moving defendant is fatal to a fraudulent-omission claim ............................. 19

        E.    The complaint does not state a cognizable negligence claim............................ 21

        F.    Peabody's unjust enrichment claim fails as a matter of law .............................. 21

CONCLUSION ........................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*AGRED Found. v. U.S. Army Corps of Eng'rs*,
   3 F.4th 1069 (8th Cir. 2021) ..................................................................................5

*Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*,
   949 F.3d 417 (8th Cir. 2020) ...............................................................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................5

*Balles v. Babcock Power Inc.*,
   70 N.E.3d 905 (Mass. 2017) .................................................................................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................5

*Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*,
   486 U.S. 888 (1988)..............................................................................................11

*Bristol-Myers Squibb Co. v. Super. Ct. of Calif., S. F. Cnty.*,
   582 U.S. 255 (2017)...........................................................................................8, 13

*Buffalo-Water 1, LLC v. Fid. Real Estate Co.*,
   111 N.E.3d 266 (Mass. 2018) ...............................................................................20

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)..............................................................................................15

*Calzone v. Hawley,*
   866 F.3d 866 (8th Cir. 2017) ..............................................................................5, 7

*City of Olmsted Falls v. FAA*,
   292 F.3d 261 (D.C. Cir. 2002)................................................................................8

*Daikin Applied Americas Inc. v. Kavlico Corp.*,
   111 F. Supp. 3d 961 (D. Minn. 2015).....................................................................8

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)...........................................................................................9, 13

*Dever v. Hentzen Coatings, Inc.*,
   380 F.3d 1070 (8th Cir. 2004) ...................................................................5

*Edgar v. MITE Corp.*,
   457 U.S. 624 (1982)................................................................................12

*Evans v. Lorillard Tobacco Co.*,
   990 N.E.2d 997 (Mass. 2013)...................................................................16

*Fox v. Saginaw Cnty., Mich.*,
   67 F.4th 284 (6th Cir. 2023) .....................................................................7

*Garcia v. Kusan, Inc.*,
   655 N.E.2d 1290 (Mass. App. Ct. 1995) ....................................................16

*Gattineri v. Wynn MA, LLC*,
   63 F.4th 71 (1st Cir. 2023)........................................................................19

*Glick v. W. Power Sports, Inc.*,
   944 F.3d 714 (8th Cir. 2019) .....................................................................5

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)................................................................................13

*Hanson v. Denckla*,
   357 U.S. 235 (1958)................................................................................13

*Hershenow v. Enter. Rent-A-Car Co. of Bos., Inc.*,
   840 N.E.2d 526 (Mass. 2006)...................................................................16

*Hugenberger v. Alpha Mgmt. Corp.*,
   990 N.E.2d 104 (Mass. App. Ct. 2013) ......................................................17

*International Shoe Co. v. State of Wash.*,
   326 U.S. 310 (1945)................................................................................12

*Johnson v. Woodcock*,
   444 F.3d 953 (8th Cir. 2006) .....................................................................8

*Keeton v. Hustler Mag., Inc.*,
   465 U.S. 770 (1984)................................................................................15

iv

*Knowlton v. Allied Van Lines, Inc.*,
900 F.2d 1196 (8th Cir. 1990) ..................................................................... 9

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..................................................................................... 8

*Mallory v. Norfolk Southern Railway Co.*,
600 U.S. 122 (2023)................................................................ 10, 11, 12, 13, 14

*Marks v. United States*,
430 U.S. 188 (1977).................................................................................... 11

*Mason v. Gen. Motors. Corp.*,
490 N.E.2d 437 (Mass. 1986)...................................................................... 18

*McCabe v. Ford Motor Co.*,
720 F. Supp. 3d 14 (D. Mass. 2024)............................................................. 20

*McCabe v. Ford Motor Co.*,
774 F. Supp. 3d 349 (D. Mass. 2025)........................................................... 19

*Murray v. Goodrich Eng'g Corp.*,
566 N.E.2d 631 (Mass. App. Ct. 1991) ....................................................... 21

*Murthy v. Missouri*,
603 U.S. 43 (2024)....................................................................................... 7

*Peterson v. 3M Co.*,
No. 24-CV-03497 (JMB/DLM), 2025 WL 2784485 (D. Minn. Sept. 30, 2025) ... 1, 5, 7, 17

*Provanzano v. MTD Prods. Co.*,
215 F. Supp. 3d 134 (D. Mass. 2016)........................................................... 21

*Rafferty v. Merck & Co., Inc.*,
92 N.E.3d 1205 (Mass. 2018)...................................................................... 16

*Shawgo v. Counter Brands, LLC*,
No. 24-CV-0556 (PJS/TNL), 2025 WL 965096 (D. Minn. Mar. 31, 2025) ................... 9

*Sierra Club v. Morton*,
405 U.S. 727 (1972).................................................................................... 8

*South Dakota v. Wayfair*,
   585 U.S. 162 (2018)...................................................................................... 10, 11

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003).......................................................................................... 12

*Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*,
   781 F.3d 1003 (8th Cir. 2015) .................................................................... 19, 20

*Swartz v. Gen. Motors Corp.*,
   378 N.E.2d 61 (Mass. 1978) ............................................................................. 17

*Tennessee Wine & Spirits Retailers Assn. v. Thomas*,
   588 U.S. 504 (2019)........................................................................................... 10

*Town of Milton, Mass. v. Fed. Aviation Admin.*,
   87 F.4th 91 (1st Cir. 2023).................................................................................. 8

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)............................................................................................. 6

*Walgreen Co. v. Haseotes*,
   778 F. Supp. 3d 264 (D. Mass. 2025)............................................................... 21

*Williams v. Stop & Shop Supermarket Co.*,
   No. 1:24-CV-12055-JEK, 2025 WL 1279374 (D. Mass. May 2, 2025) ....................... 22

*Wong v. Wells Fargo Bank N.A.*,
   789 F.3d 889 (8th Cir. 2015) .............................................................................. 7

*World-Wide Volkswagen v. Woodson*,
   444 U.S. 286 (1980)........................................................................................... 13

Defendants EIDP, Inc. f/k/a/ E. I. du Pont de Nemours and Company; DuPont de Nemours, Inc.; The Chemours Company; The Chemours Company FC, LLC; and Corteva, Inc. (collectively, "Moving Defendants") move under Fed. R. Civ. P. 12(b)(1), (2), and (6) to dismiss all claims asserted against them for lack of subject-matter jurisdiction, personal jurisdiction, and insufficient pleading. In support, Moving Defendants state as follows[1]:

## **INTRODUCTION**

The City of Peabody, Massachusetts alleges that it purchased turnout gear for its firefighters from a single defendant (Globe), that the gear it purchased contains PFAS, and that the gear is therefore deficient and dangerous. Based on these allegations, Peabody asserts claims for violation of Massachusetts consumer protection laws, common law strict products liability, fraudulent misrepresentation and concealment, negligence, and unjust enrichment. Peabody's complaint fails under Rule 12(b)(1), (2), and (6).

As to Rule 12(b)(1), Peabody has not established Article III standing, a prerequisite of subject-matter jurisdiction. Plaintiff speculates that PFAS in turnout gear "purchased by Plaintiff and the proposed Class" comes from "at least one, and often, both" of Moving Defendants and 3M. (Compl. ¶ 21). This kind of guesswork is insufficient to establish standing even at the motion-to-dismiss stage. As this Court recently held in *Peterson v. 3M Company*, the absence of allegations that "trace any potential injury to Defendants' products" is grounds for dismissal for lack of subject-matter jurisdiction. No. 24-CV-03497 (JMB/DLM), 2025 WL 2784485, at *4 (D. Minn. Sept. 30, 2025).

---

[1] The Moving Defendants incorporate by reference the arguments and authorities offered in Defendant 3M's Motion to Dismiss filed this same day.

1

As to Rule 12(b)(2), Peabody is a Massachusetts municipality that bought gear for its firefighters in Massachusetts. (*See* Compl. ¶ 17). Peabody fails to allege that either it or the Moving Defendants have *any* connection to Minnesota. As such, the Court lacks personal jurisdiction over the Moving Defendants.

As to Rule 12(b)(6), Peabody's claims fail for a variety of reasons. First, Peabody has not stated a claim for violation of the Massachusetts Consumer Protection Act because the complaint does not allege any act by any Moving Defendant that was unfair or deceptive, or how any moving defendant's conduct caused injury. Additionally, the claim lacks the particularity that Rule 9(b) requires.

Second, Peabody cannot bring a claim for strict products liability. Massachusetts law does not recognize such claims independent of a breach of warranty claim—a claim which Peabody no longer brings.

Third, Peabody asserts a fraud claim. That claim fails because Peabody has not alleged that any Moving Defendant made any affirmative misrepresentation on which Peabody relied. Peabody also does not allege that it had a relationship with any Moving Defendant that could give rise to a duty to disclose—a required element of a fraudulent-omission claim. Like the Consumer Protection Act claim, Peabody's fraud claim does not satisfy Rule 9(b).

Fourth, Peabody's negligence claim fails because it does not allege facts showing that any moving defendant owed Peabody a duty of care or proximately or factually caused Peabody's alleged injuries.

Finally, Peabody has failed to state a claim for unjust enrichment. That claim requires that the plaintiff conferred a benefit on the defendant, that the defendant knew about the benefit, and that it would be inequitable for the defendant to retain the benefit. Because the complaint does not allege that Peabody bought anything from any moving defendant, the complaint does not plead these required elements. Additionally, Peabody cannot maintain an unjust enrichment claim because Peabody has an adequate remedy at law.

Peabody asks the Court to impose far-reaching remedies. The gravity of this request and the complexity of the litigation it portends underscore the importance of carefully assessing whether Peabody has established the threshold issues of subject-matter jurisdiction, personal jurisdiction, or sufficiently pleaded its claims. As to the Moving Defendants, Peabody has done none.

## BACKGROUND

The City of Peabody fits its firefighters with what is known as turnout gear—jackets, pants, footwear, gloves, hoods, helmets, respiratory equipment, and other clothing and equipment designed to protect firefighters from the hazards of fighting fires. (Compl. ¶¶ 1, 5.)[2] The complaint alleges generally that turnout gear contains PFAS, a class of thousands of synthetic chemical compounds. (*See id.* ¶¶ 19, 21, 52, 54). The complaint identifies specific PFAS compounds—including PTFE, PFOA, and PFOS—that it alleges are present in protective gear, but it does not allege any quantity of these chemicals in the gear that Peabody bought and instead refers primarily to PFAS generally. (*See id.* ¶¶ 36,

---

[2] This brief cites Peabody's Amended Complaint (Dkt. No. 156) as (Compl. ¶ ___).

3

137, 51-57, 68-73). Peabody alleges that exposure to these substances "is considered hazardous to human health." (*See id.* ¶ 62).

According to the complaint, Peabody "over the last four years" bought turnout gear from Globe that contained PFAS manufactured or sold by 3M or Moving Defendants. (*Id.* ¶¶ 17, 18). The complaint does not allege that the gear Peabody purchased from Globe incorporates components manufactured or provided by any particular moving defendant. (*See, e.g., id.*).

Peabody seeks to represent all municipalities or other governmental entities in Massachusetts that purchased turnout gear containing PFAS during an undefined "relevant time period." (*Id.* ¶ 150).

Peabody asserts six claims against all defendants: (1) violation of Massachusetts consumer protection law, (2) strict product liability based on design defect, (3) strict product liability based on failure to warn, (4) fraudulent misrepresentation and concealment, (5) negligence, and (6) unjust enrichment (*See id.* ¶¶ 158-217). Because Peabody is a Massachusetts municipality and the transactions at issue occurred in Massachusetts, this brief applies Massachusetts law.[3] Among other things, Plaintiff seeks damages for "physical injuries and property damage caused by the PFAS Turnout Gear" and for the cost to "properly . . . dispose of" and replace its turnout gear. (Compl. at p. 54).

---

[3] The moving defendants reserve the right to respond to any choice-of-law arguments that Peabody may raise in its response.

## LEGAL STANDARD

The moving defendants seek dismissal of Peabody's complaint under Rules 12(b)(1), 12(b)(2), and 12(b)(6).

Under Rule 12(b)(1), a complaint must be dismissed if the plaintiff has not established Article III standing, a prerequisite of subject-matter jurisdiction. *AGRED Found. v. U.S. Army Corps of Eng'rs*, 3 F.4th 1069, 1073 (8th Cir. 2021). Article III standing requires Peabody to allege facts that show that each defendant's actions caused Peabody's alleged injuries. *Calzone v. Hawley,* 866 F.3d 866, 869 (8th Cir. 2017); *see also Peterson,* 2025 WL 2784485, at *4 ("Traceability must be shown for each defendant.").

Under Rule 12(b)(2), a plaintiff's prima facie showing of personal jurisdiction "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (internal cite and quotation marks omitted). Conclusory allegations are insufficient to support personal jurisdiction. *Id.* at 1073.

Under Rule 12(b)(6), the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility demands "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

**ARGUMENT**

**I.     Peabody has not established Article III standing.**

"As the party invoking federal jurisdiction, the plaintiff[] bear[s] the burden of demonstrating that [it has] standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430 (2021). The plaintiff "must show (i) that [it] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the [respondent]; and (iii) that the injury would likely be redressed by judicial relief." *Id.* at 423. Plaintiff fails to plead that it has suffered an injury in fact, much less any traceable to the Moving Defendants.

**A.   Plaintiff's alleged injuries are not traceable to the Moving Defendants.**

As with Defendant 3M, Peabody's complaint fails to establish that its injuries were likely caused by the Moving Defendants. First, nowhere does Plaintiff allege (clearly or otherwise) that the Globe turnout gear it purchased contains "PFAS Chemical Finishes" produced by the Moving Defendants, as opposed to 3M or some other producer. Instead, Plaintiff vaguely groups itself with all proposed Class members and alleges the entire group purchased gear containing PFAS stemming from 3M or Moving Defendants. (*See, e.g.*, Compl. ¶ 21 ("All PFAS Turnout Gear purchased by Plaintiff and the proposed Class contains PFAS Chemical Finishes designed . . . by *at least one, and often both*, PFAS Chemical Finish Defendants.")) (emphasis added). Critically, Plaintiff does not specifically allege the gear *it* purchased contained PFAS stemming from both 3M and Moving Defendants.  Article III demands more. Plaintiff must "show[] that *each* defendant caused [its] injury," not that *either* Defendant *might* have

6

done so. *Calzone*, 866 F.3d at 869 (emphasis added); *See Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (court of appeals "erred" in its standing analysis "by treating the defendants [and] plaintiffs . . . each as a unified whole"); *see also Peterson*, 2025 WL 2784485, at *4 ("none of the allegations in the Complaint trace any potential injury to [Moving Defendants'] products, as opposed to the products developed by [others]").

As such, there is no traceability between the injuries Peabody alleges and the conduct of any Moving Defendant and the complaint should be dismissed. *See Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 895 (8th Cir. 2015) (dismissing claims against defendants that did not cause named plaintiffs' injuries for lack of standing); *see also Fox v. Saginaw Cnty., Mich.*, 67 F.4th 284, 293 (6th Cir. 2023) (dismissing claims against all but one defendant for failure to "tie the injury to each defendant," as traceability requires).

### B.  Plaintiff lacks standing to bring personal injury claims.

Peabody is a municipality that lacks standing to bring personal injury claims on behalf of its firefighters. Despite excluding any mention of personal injury in its proposed class allegations, Peabody seeks to recover, on behalf of itself and proposed Class Members for "physical injuries as alleged herein, including physical injury in the form of toxic contamination of their property and dangerous exposure of their firefighters and others to catastrophic harms to health such as cancer." (Compl. ¶ 170; *see also* Compl. at p. 54 (seeking "[c]ompensatory damages for physical injuries and property damage caused by the PFAS Turnout Gear")). But nowhere in Peabody's complaint does it allege that it has suffered personal injury, nor could it—Peabody is a government municipality incapable of

7

incurring physical harm. (Compl. ¶ 17). And "harm to others, such as the [City's] residents, is insufficient to show an injury that is particularized to the [City] itself." *Town of Milton, Mass. v. Fed. Aviation Admin.*, 87 F.4th 91, 96 (1st Cir. 2023); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992) (noting that "the injury must affect the [petitioner] in a personal and individual way" to be "particularized"); *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972) ("[T]he 'injury in fact' test requires . . . that the party seeking review be [it]self among the injured."); *see also City of Olmsted Falls v. FAA*, 292 F.3d 261, 267 (D.C. Cir. 2002) (rejecting argument that a city has associational standing to sue on behalf of citizens, in part because "[t]he City does not have 'members' who have voluntarily associated"). As such, Peabody lacks standing to recover for physical injury incurred by its firefighters.

## II.    The Court should dismiss Peabody's claim for lack of personal jurisdiction.

In determining whether this Court has personal jurisdiction over an out of state defendant the only question is whether the exercise of personal jurisdiction comports with due process because Minnesota's long-arm statute is "coextensive with constitutional limits." *Daikin Applied Americas Inc. v. Kavlico Corp.*, 111 F. Supp. 3d 961, 964 (D. Minn. 2015) (quoting *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006)). Due Process is satisfied when there is general or specific jurisdiction over the defendant. *Bristol-Myers Squibb Co. v. Super. Ct. of Calif., S. F. Cnty.*, 582 U.S. 255, 262 (2017). General jurisdiction applies where the jurisdiction is "one in which the corporation is fairly regarded as at home." *Id.* (citation omitted). Specific jurisdiction applies where the suit arises out of

8

or relates to the defendant's contacts with the forum. *Id*. The complaint fails to establish either jurisdiction over the Moving Defendants.

> **A. The Court does not have general jurisdiction over the Moving Defendants.**

"The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014). Plaintiff does not allege the Moving Defendants are Minnesota corporations, because they are not, or that Minnesota is the Moving Defendants' principal place of business, because it is not. (Compl. ¶¶ 27-31). As such, general personal jurisdiction is not established over the Moving Defendants on this foundational premise. Accordingly, to establish general jurisdiction, Peabody is left to rely upon the Moving Defendants' foreign registration to do business in Minnesota.[4] *Shawgo v. Counter Brands, LLC*, No. 24-CV-0556 (PJS/TNL), 2025 WL 965096, at *4 (D. Minn. Mar. 31, 2025) (citing *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1200 (8th Cir. 1990)) (finding that registration to do business in Minnesota amounts to consent to general jurisdiction).[5] Such an interpretation of Minnesota's business registration statutes is unenforceable against Moving Defendants because it violates the Commerce and Due Process Clauses of the U.S. Constitution.[6]

---

[4] DuPont de Nemours, Inc. is not registered to do business in Minnesota. As such, Plaintiff is left to rely on specific jurisdiction over DuPont de Nemours, Inc. However, should the Court determine there is personal jurisdiction over EIDP, Inc., DuPont de Nemours, Inc., Corteva, Inc., and Chemours will not challenge personal jurisdiction.

[5] Moving Defendants acknowledge that courts within the Eighth Circuit consider *Knowlton* to continue to be good law and submit these arguments for appellate preservation. *See, e.g.,* *Shawgo*, 2025 WL 965096, at *4.

[6] Critically, Plaintiff does not rely on the Minnesota business registration statute for jurisdiction. (Compl. ¶¶ 43-46). As such, Plaintiff fails to satisfy Plaintiff's burden to

9

**1. Mandating consent to general jurisdiction in exchange for business registration violates the Commerce Clause.**

Minnesota's revised long arm statute is facially discriminatory and otherwise imposes an undue burden on interstate commerce in violation of the Commerce Clause.[7] The Supreme Court "has long held that the [Commerce] Clause includes a negative component, the so-called dormant Commerce Clause, that 'prohibits state laws that unduly restrict interstate commerce.'" *Mallory v. Norfolk S. Railway Co.*, 600 U.S. 122, 157 (2023) (quoting *Tennessee Wine & Spirits Retailers Assn. v. Thomas*, 588 U.S. 504, 514 (2019)). Under the dormant Commerce Clause, a state statute is unconstitutional if it either discriminates against interstate commerce or imposes an undue burden on it that is not outweighed by a "legitimate local public interest." *Id.* at 160 (quoting *South Dakota v. Wayfair*, 585 U.S. 162, 173 (2018)). Here, interpreting Minnesota's business registration statute to convey general jurisdiction imposes an undue burden that cannot be outweighed by a legitimate local public interest.

Mandating general jurisdiction over any foreign corporation registered to do business in Minnesota creates a hostile environment for out-of-state businesses. As Justice

---

demonstrate jurisdiction is satisfied, and so the analysis of whether the business registration statute extends personal jurisdiction over Moving Defendants ends before it begins.

[7] The Supreme Court in *Mallory v. Norfolk Southern Railway Co.*, answered the question "whether the Due Process Clause of the Fourteenth Amendment is violated when a large out-of-state corporation with substantial operations in a State complies with a registration requirement that conditions the right to do business in that State on the registrant's submission to personal jurisdiction in any suits that are brought there." 600 U.S. 122, 150 (2023) (Alito, J., concurring in part and concurring in the judgment). The Court's holding was based on the "[a]ssum[ption] that the Constitution allows a State to impose such a registration requirement . . ." *Id.* Here, Moving Defendants argue it does not.

Alito notes in his concurrence in *Mallory*, the foreseeable consequences of such a law make clear why such a law imposes a significant burden on interstate commerce: "Aside from the operational burdens it places on out-of-state companies, [Minnesota's] scheme injects intolerable unpredictability into doing business across state borders. . . . [Companies] may prudently choose not to enter an out-of-state market due to the increased risk of remote litigation. Some companies may forgo registration altogether, preferring to risk the consequences rather than expand their exposure to general jurisdiction." *Mallory*, 600 U.S. at 161-62.[8] At the "very least" such a law imposes a "'significant burden' on interstate commerce by '[r]equiring a foreign corporation . . . to defend itself with reference to all transactions,' including those with no forum connection." *Id.* at 161 (quoting *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888, 893 (1988)) (alteration in original).

As Minnesota's business registration scheme imposes a significant burden on interstate commerce by regulating strictly out of state conduct, to survive scrutiny, the law must advance a "legitimate local public interest," and the burdens must not be "clearly excessive in relation to the putative local benefits." *Id.* (quoting *Wayfair*, 585 U.S. at 173). "A State certainly has a legitimate interest in regulating activities conducted within its border," but "a State generally does *not* have a legitimate local interest in vindicating the

---

[8] As Justice Alito provided the decisive fifth vote on the judgment, his narrow reasoning controls. *Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.") (internal quotations omitted).

11

rights of non-residents harmed by out-of-state actors through conduct outside the State." *Id.* at 162-63 (emphasis in original); *see Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982) ("While protecting local investors is plainly a legitimate state objective, the State has no legitimate interest in protecting nonresident shareholders. Insofar as the Illinois law burdens out-of-state transactions, there is nothing to be weighed in the balance to sustain the law."); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 409 (2003) ("Nor does the State have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of its jurisdiction.").

Here, Minnesota's business registration scheme transforms Minnesota courts into a safe haven for non-residents harmed by out-of-state actors through conduct outside of Minnesota—the *exact* scenario at issue here. As Minnesota has no legitimate local public interest in protecting non-residents harmed by out-of-state conduct, "there is nothing to be weighed . . . to sustain the law." *Edgar*, 457 U.S. at 644.

As such, interpreting Minnesota's business registration statute to convey general jurisdiction violates the Commerce Clause and the Court lacks general personal jurisdiction over the Moving Defendants.

### 2. Mandating consent to general jurisdiction in exchange for business registration violates the Due Process Clause.

Moving Defendants have a due process right not to be sued for anything that happens anywhere in states where they lack minimum contacts on claims with no connection to the state. *International Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945). The Due Process Clause's "restrictions on personal jurisdiction" are based on federalism

12

and fairness. *See Bristol-Myers*, 582 U.S at 263 (citing *Hanson v. Denckla*, 357 U.S. 235, 251 (1958) and *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 293 (1980)). At least for non-consent jurisdictions, those considerations limit the sweeping power of general jurisdiction to states where the defendant is "essentially at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). For companies, that is usually only the principal place of business and the state of incorporation. *Daimler AG*, 571 U.S. at 118. Doing business in a forum—even a "substantial, continuous, and systematic course of business"—is not enough. *Id.* at 138; *Goodyear*, 564 U.S. at 927.

Interpreting Minnesota's business registration statute to mandate consent to general jurisdiction in exchange for doing business thwarts this established precedent by extracting consent to general personal jurisdiction for any and all claims, regardless of whether the claim is related to the forum. In *Mallory*, the Court held that Pennsylvania's long-arm statute did not violate due process, but key to Justice Alito's concurrence and the majority sections of Justice Gorsuch's opinion was the conclusion that the defendant's "consent" to general personal jurisdiction was valid under the circumstances of the case where the defendant had a substantial presence in Pennsylvania. 600 U.S. at 153. A majority agreed that "[c]onsent is a separate basis for personal jurisdiction" from the *International Shoe* line of cases, *Mallory*, 600 U.S. at 153, and that the defendant's "consent" was valid on the facts of the case. But, critically, the majority did not hold that "consent" flowing automatically from a mandatory registration requirement is always sufficient to convey general jurisdiction. Rather, the concurrence ties the validity of the defendant's consent to the defendant's substantial operations in the forum, the defendant's history of affirmatively

13

filing lawsuits in the forum's courts, and "clear notice that [the forum] considered its registration as consent to general jurisdiction[.]" *Id.* at 150, 153.

Here, none of these factors are true. Plaintiff does not allege that Moving Defendants have substantial operations in Minnesota, that Moving Defendants have a history of filing lawsuits in Minnesota, or that Moving Defendants had clear notice that Minnesota considered registration to be consent to general jurisdiction. Plaintiff alleges it is a Massachusetts municipality that purchased gear in Massachusetts and suffered harm in Massachusetts. Nothing in Plaintiffs' complaint relates the Moving Defendants to Minnesota. Even if there were, Moving Defendants did not sell products that could be used in turnout gear directly to any of the Defendants, in the State of Minnesota, during the relevant time period. Declaration of Eric Von Brockdorff for Chemours, attached as Exhibit 1, ¶¶ 4-7; Declaration of Sarah DiLuzio for DuPont de Nemours, Inc., attached as Exhibit 2, ¶ 3; Declaration of Brent Dwerlkotte for EIDP, Inc., attached as Exhibit 3, ¶¶ 4-8; Declaration of Brent Dwerlkotte for Corteva, Inc., attached as Exhibit 4, ¶ 3. As the facts here are contra to those in *Mallory*, interpreting registration as consent to general jurisdiction would violate the Due Process Clause. Because permitting such a statute to confer general personal jurisdiction over Moving Defendants would fly in the face of the minimum contacts traditionally required for personal jurisdiction, "[s]uch an approach does not formally overrule our traditional contacts-based approach to jurisdiction, but it might as well." *Mallory*, 600 U.S. at 164 (J., Barrett, dissenting). As such, the Court lacks general personal jurisdiction over Moving Defendants.

14

**B. The court does not have specific personal jurisdiction over the moving defendants.**

A state may assert specific personal jurisdiction over an out-of-state defendant only "if the defendant has purposefully directed activities at residents of the forum" and if "the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Where there is no connection between the forum and the underlying controversy, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 582 U.S. at 264. In other words, Plaintiff must show—as to each defendant—how that defendant's contacts with the state gave rise to the plaintiff's claims. *See Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984).

Fundamentally, there is no connection between the forum and the underlying controversy. The complaint contains no non-conclusory allegations the Moving Defendants directed *any* activity at residents of Minnesota.[9] Nor could it. *See generally* Exs. 1-4. In fact, the complaint does not attempt to connect the Moving Defendants to Minnesota in any way. This is likely because Peabody is a Massachusetts municipality, alleging harm in Massachusetts, and wishing to represent Massachusetts class members. Other than another defendant being headquartered in Minnesota, nowhere in Peabody's complaint does it attempt to connect itself or its harm to Minnesota. Peabody alleges no

---

[9] Peabody only makes conclusory allegations that the moving defendants "maintained substantial contacts" in Minnesota, such contacts being "directed at, or ha[ving] the effect of, causing injury to Minnesota residents. (Compl. ¶¶ 43, 45). As conclusory allegations, they are insufficient to establish a contact supporting personal jurisdiction. *Dever*, 380 F.3d at 1073.

contacts between any Moving Defendant and Minnesota. Because "all the conduct giving rise to the nonresidents' claims occurred elsewhere[,] [i]t follows that th[is] court[] cannot claim specific jurisdiction." *Bristol-Myers*, 582 U.S. at 258. As such, this Court should dismiss Plaintiff's complaint for lack of personal jurisdiction.

## III.    Peabody fails to state a cognizable claim against the Moving Defendants.

Separate from Peabody's threshold failure to establish subject-matter jurisdiction or personal jurisdiction, several of its claims against the moving defendants are legally deficient. As with 3M, those deficiencies provide additional, independent bases for dismissal under Rule 12(b)(6).[10]

### A.  Plaintiff fails to plausibly allege causation.

As with 3M, all of Plaintiff's claims require it to plausibly allege that Moving Defendants caused Plaintiff's injuries. *See Hershenow v. Enter. Rent-A-Car Co. of Bos., Inc.*, 840 N.E.2d 526, 528 (Mass. 2006) (Chapter 93A); *Evans v. Lorillard Tobacco Co.*, 990 N.E.2d 997, 1010 (Mass. 2013) (design defect); *Rafferty v. Merck & Co., Inc.*, 92 N.E.3d 1205, 1213 (Mass. 2018) (failure to warn); *Balles v. Babcock Power Inc.*, 70 N.E.3d 905, 913 (Mass. 2017) (fraud); *Garcia v. Kusan, Inc.*, 655 N.E.2d 1290, 1293 (Mass. App. Ct. 1995) (negligence). Because Plaintiff has not plausibly alleged that it bought turnout gear containing PFAS manufactured by Moving Defendants, *supra* Section I, Plaintiff cannot establish causation. *See Mathers v. Midland-Ross Corp.*, 532 N.E.2d 46, 49 (Mass.

---

[10] Moving Defendants specifically adopt and incorporate by reference the arguments and authorities provided in Section IV.B of Defendant 3M Company's Memorandum in Support of it Motion to Dismiss.

1989) ("A plaintiff who sues a particular manufacturer for product liability generally must be able to prove that the item which it is claimed caused the injury can be traced to that specific manufacturer."). As such, Counts I-V of the Amended Complaint fail. *See Peterson*, 2025 WL 2784485 at \*6 (absence of sufficient "allegations that Plaintiffs' carpet was treated with [Moving Defendants'] PFAS products[] undermin[ed]" causation).

**B. The complaint fails to plead a violation of the Massachusetts Consumer Protection Act.**

As with 3M, Plaintiff did not send the Moving Defendants a Chapter 93A demand letter until "January 9, 2026," nearly eight months after the filing of its original complaint. (Compl. ¶ 171). Because the demand letters were not "'timely sen[t],'" Plaintiff cannot satisfy a necessary "'element'" of its cause of action, and the Chapter 93A claim must be dismissed. *Hugenberger v. Alpha Mgmt. Corp.*, 990 N.E.2d 104, 106 (Mass. App. Ct. 2013).

Plaintiff's Chapter 93A claim otherwise fails for the same reasons articulated by 3M—Plaintiff impermissibly relies on group pleading which fails to notify the Moving Defendants of *any* alleged misrepresentations *they* made about a final product the Moving Defendants did not sell; and, Plaintiff otherwise fails to allege that the Moving Defendants caused Plaintiff's injury. *See supra* Section I.

**C. The complaint's strict product liability claims should be dismissed.**

Massachusetts law does not recognize a claim for strict liability in tort apart from breach of warranty under the Uniform Commercial Code. *Swartz v. Gen. Motors Corp.*, 378 N.E.2d 61, 62 (Mass. 1978) ("We hold that there is no 'strict liability in tort' apart

17

from liability for breach of warranty under the Uniform Commercial Code [ ]"); *Mason v. Gen. Motors. Corp.*, 490 N.E.2d 437, 442 (Mass. 1986) ("We are unwilling, therefore, to hold today that, apart from liability for breach of warranty under [the Uniform Commercial Code], there may be liability without fault for defective products.").

Peabody's prior complaint alleged claims for breach of warranty, *see* Dkt. No. 26 ¶¶ 270-279, but the current amended complaint alleges neither the existence of a warranty nor its breach.[11] Under Massachusetts law, therefore, the facts alleged in the complaint cannot serve as the basis for the strict products liability claims in counts II and III. Massachusetts law requires dismissal of those claims.

### D. Peabody's fraud claims are legally insufficient.

Count IV purports to bring claims of fraudulent misrepresentation and concealment. These claims should be dismissed because Peabody does not allege facts supporting any element of a fraudulent-misrepresentation claim and Peabody fails to allege facts giving rise to a duty to disclose on the part of any Moving Defendant.

### 1. The complaint does not plead facts supporting the required elements of a fraudulent-misrepresentation claim.

As with 3M, Peabody's fraudulent misrepresentation claim against the Moving Defendants fails because the complaint fails to adequately allege the Moving Defendants made any false representations of a material fact for the purpose of inducing Peabody to

---

[11] "It is well established that an amended complaint completely replaces the original complaint, and that any claims not re-alleged are deemed abandoned." *Ware v. Jennings*, 2025 WL 1019067, at *2 (E.D. Mo. Apr. 4, 2025); *accord*, *e.g.*, *Green v. Ramsey*, 2015 WL 5672990, at *6 (D. Minn. Sept. 24, 2015).

18

act and Peabody acting on those representations. *Gattineri v. Wynn MA, LLC*, 63 F.4th 71, 87-88 (1st Cir. 2023) (cleaned up). But as with 3M, the complaint only asserts conclusory group statements against the Moving Defendants, not plausible factual allegations. *See, e.g.*, Compl. ¶¶ 142, 202-03. Using group pleading to allege that defendants collectively committed fraud is not sufficient. *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015). The complaint identifies *no* statements the Moving Defendants made about turnout gear sold by Globe. And as for the statements that are attributed to Moving Defendants, (Compl. ¶¶ 128-133), Plaintiff does not explain how these statements were either false or material to the City's decision to purchase turnout gear, let alone that Plaintiff reasonably relied on them in purchasing turnout gear from Globe. *See Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 423 (8th Cir. 2020) ("Conclusory allegations that a plaintiff detrimentally relied on defendants' representations are not sufficient factual matter to state a claim of relief plausible on its face."); *McCabe v. Ford Motor Co.*, 774 F. Supp. 3d 349, 387 (D. Mass. 2025) (dismissing similarly conclusory Massachusetts fraud claim and explaining that "[r]eliance is one of the 'circumstances' that must be pleaded with particularity").

Because Peabody has not alleged facts to support the required elements of a fraudulent-misrepresentation claim, that claim fails under Rule 12 (b) (6).

      **2. The complaint's failure to allege that Peabody purchased protective gear from any moving defendant is fatal to a fraudulent-omission claim.**

To succeed on a fraudulent omission claim, a plaintiff must allege both that the defendant had a duty to disclose and that the defendant concealed material information.

19

*Buffalo-Water 1, LLC v. Fid. Real Estate Co.*, 111 N.E.3d 266, 277 (Mass. 2018). As with 3M, the complaint fails to adequately allege either against the Moving Defendants because Plaintiff impermissibly relies on group pleading and otherwise fails to allege that Moving Defendants owed Plaintiff a duty.

First, the conclusory assertion that "Defendants," as a group, "concealed the fact that the PFAS Turnout Gear contained dangerous PFAS," (Compl. ¶¶ 142, 202), or that "Defendants . . . actively conceal[ed] data and information about the risks of PFAS exposure," (*id.* ¶ 89), fails under any applicable pleading standard. *Streambend*, 781 F.3d at 1013.

Next, the Amended Complaint "does not allege any fiduciary relationship between plaintiff[] and" Moving Defendants. *McCabe v. Ford Motor Co.*, 720 F. Supp. 3d 14, 30 (D. Mass. 2024). It also fails to "identify any 'partial or ambiguous statement of the facts' made by" Moving Defendants to Plaintiff about the turnout gear it purchased. *Id.* Nor was there a duty to disclose facts basic to the transaction. That duty arises only as between "'part[ies] to a business transaction" and only where the non-disclosing party "'knows that the other is about to enter into it under a mistake as to them.'" *Id.* (quoting Restatement (Second) of Torts § 551(2)(e) (1977). There is no business transaction alleged between Plaintiff and Moving Defendants, and there are no allegations suggesting Moving Defendants knew about Plaintiff's purchases from Globe or about Plaintiff's knowledge at the time of those purchases. As such, Rule 12(b)(6) thus calls for dismissal of the fraudulent-omission claim.

20

### E.  The complaint does not state a cognizable negligence claim.

Peabody next asserts a negligent-design claim. That claim fails because it does not allege the elements of a negligence claim: duty, breach of duty, cause in fact, and proximate cause. *Provanzano v. MTD Prods. Co.*, 215 F. Supp. 3d 134, 139 (D. Mass. 2016). This claim fails solely due to the causation problem. *See supra* Section III.A. But further, as with 3M, the allegations do not support the duty and breach elements of negligence. According to the Amended Complaint, "Defendants breached their duty by manufacturing and/or supplying PFAS Turnout Gear." (Compl. ¶ 213; *see id.* ¶ 212) ("Defendants, as the manufacturers and suppliers of PFAS Turnout Gear, owed Plaintiff and Class Members a duty . . . ."). But Plaintiff does not allege the Moving Defendants produced turnout gear, further negating Plaintiff's theory of the supposed "breach." *Murray v. Goodrich Eng'g Corp.*, 566 N.E.2d 631 (Mass. App. Ct. 1991) (component manufacturer had no duty to warn about dangers associated with machine as a whole).

### F.  Peabody's unjust enrichment claim fails as a matter of law.

Plaintiff's unjust enrichment claim should be dismissed as to the Moving Defendants for the same reasons articulated by 3M. First, the Amended Complaint does not allege that Plaintiff conferred a benefit on the Moving Defendants—the only party Plaintiff transacted with, and thus conferred a benefit on, was Globe. (Compl. ¶ 17). *Walgreen Co. v. Haseotes*, 778 F. Supp. 3d 264, 295 (D. Mass. 2025) ("unjust enrichment requires that the plaintiff *directly* bestowed a benefit on the defendant.") (emphasis in original). Second, in its unjust-enrichment-specific allegations, for example, Plaintiff says nothing about the Moving Defendants' appreciation or knowledge of the "benefits

21

Defendants received." (Compl. ¶ 223). Nor does the allegation that "[Moving Defendants have] long known of the dangers of PFAS" suffice to plausibly suggest that Moving Defendants had any awareness about Plaintiff's turnout-gear purchases from Globe. Finally, Plaintiff's claim is barred because Peabody has an adequate remedy available at law via the Chapter 93A, negligence, and fraud claims. *Williams v. Stop & Shop Supermarket Co.*, No. 1:24-CV-12055-JEK, 2025 WL 1279374, at *2 (D. Mass. May 2, 2025).

## CONCLUSION

For these reasons, Defendants respectfully move the Court to dismiss Plaintiff's complaint.

Dated: May 5, 2026

**Anthony Ostlund Louwagie Dressen & Boylan P.A.**

*/s/ Arthur G. Boylan*

Arthur G. Boylan (MN #338229)
60 South Sixth Street, Suite 3900
Minneapolis, MN 55402
Telephone: (612) 349-6969
aboylan@anthonyostlund.com

Andrew Carpenter (*pro hac vice forthcoming*)
Brent Dwerlkotte (admitted *pro hac vice*)
Shook, Hardy & Bacon, LLP
2555 Grand Boulevard
Kansas City, MO 64108
Tel: (816) 474-6550
Fax: (816) 421-5547
acarpenter@shb.com
dbdwerlkotte@shb.com

***Attorneys for Defendants EIDP, Inc., f/k/a E.I. du Pont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, DuPont de Nemours, Inc., and Corteva, Inc.***

23

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2026, I electronically filed the foregoing with the Clerk of Court using the Court's electronic filing system, which will automatically send e-mail notification of such filing to all attorneys of record.

/s/ *Arthur G. Boylan*
Arthur G. Boylan