**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

|  |  |
|---|---|
| CITY OF PEABODY MASSACHUSETTS, individually and on behalf of a class of all other similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>3M COMPANY (F/K/A MINNESOTA MINING AND MANUFACTURING COMPANY), et al.,<br><br>　　　　Defendants. | Case No. 25-cv-2083(JMB/SGE) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF GLOBE MANUFACTURING COMPANY, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS-ACTION COMPLAINT OR ALTERNATIVELY STRIKE OR DISMISS PLAINTIFF'S CLASS ALLEGATIONS**

1

Peabody's Opposition confirms it has no actionable claims against Globe. Plaintiff relies on sweeping, group-pled allegations for claims untethered to Minnesota. Such bare-bones allegations cannot support personal jurisdiction, standing, or any claim against Globe and must be dismissed. The class allegations, plagued with individual issues, likewise fail and should be stricken or dismissed.

## ARGUMENT

### I.      This Court Does Not Have Personal Jurisdiction Over Globe.

Peabody concedes that this Court lacks general jurisdiction over Globe (Doc. 175 ("Opp.") at 10), and its claim that it has "establish[ed] purposeful availment on a *national* scale" to support specific personal jurisdiction over Globe in *Minnesota* is wrong. (Opp. at 11 (emphasis added).)

*First*, Peabody urges this Court to exercise jurisdiction where "*all Defendants collectively* participated in the nationwide PFAS Turnout Gear market and intentionally placed PFAS-containing products into the stream of commerce . . . expecting those products would be purchased and used nationwide, including in Minnesota." (Opp. at 12 (emphasis added).) Peabody does not adequately allege this "stream of commerce" theory of jurisdiction in its FAC. "To allege personal jurisdiction, a plaintiff must state sufficient facts *in the complaint* to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (emphasis added) (citation omitted).

*Second*, these conclusory allegations in which Globe is "simply lumped in with the other Defendants" cannot support personal jurisdiction. *C. Pepper Logistics, LLC v. Lanter*

*Delivery Sys., LLC*, No. 4:20-cv-01444-MTS, 2021 WL 3725680, at \*4 (E.D. Mo. Aug. 23, 2021).

*Third*, "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State" to establish personal jurisdiction. *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 112 (1987); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011). Peabody claims for the first time in its Opposition: "Globe sells its Turnout Gear through national and regional distributors, at least one of which is physically located in Minnesota and advertises Globe Turnout Gear for sale on its website." (*See* Opp. at 10-11 & n.3.) But Peabody does not allege that it purchased its turnout gear from a Minnesota-based distributor. Even if the Court could consider this new claim, "[t]he bare fact that [a non-forum defendant] contracted with a [forum] distributor is not enough to establish personal jurisdiction in the State." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 268 (2017).

*Finally*, jurisdictional discovery will not save Peabody's claims. Peabody's allegations do not arise from Globe's contacts with Minnesota. Peabody is a *Massachusetts* municipality. It alleges purchasing turnout gear from a *New Hampshire* company for its firefighters in *Massachusetts*. (FAC ¶¶ 17, 39.) The jurisdictional discovery Peabody seeks therefore would not unveil any jurisdiction-saving facts. "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery," as the Court should do here. *Viasystems,*

*Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011) (citation omitted).

## II.    Peabody Does Not Have Article III Standing.

Peabody's Opposition confirms it has not alleged an injury-in-fact traceable to Globe to confer standing.

*First*, Peabody acknowledges that no one allegedly exposed to Globe's turnout gear has yet manifested a PFAS-related injury. (Opp. at 30.) Nor has Peabody explained how purported PFAS contamination on its "property" and "surrounding environment" has led to or poses a threat of physical harm. "An allegation of contamination alone is not a cognizable injury." *Henke v. Arco Midcon, L.L.C.*, No. 4:10CV86 HEA, 2014 WL 982777, at *6 (E.D. Mo. Mar. 12, 2014). Consequently, Peabody "has not alleged more than mere 'risk' or 'potential' for future harm," which is nothing more than a "conjectural or hypothetical" injury insufficient to establish standing. *Harris v. Medtronic Inc.*, 729 F. Supp. 3d 869, 879 (D. Minn. 2024) (citation omitted).

*Second*, Peabody concedes "conclusory allegations may be insufficient to support the causation element" for standing, (Opp. at 4), and indeed, that is all it offers. Peabody asserts that Defendants "jointly participated in the tight-knit supply chain for PFAS Turnout Gear" and "collectively knew" about PFAS risks. (Opp. at 7.) But Article III requires that Peabody's alleged injury be fairly traceable to *Globe's* conduct—not that of Defendants collectively. *Peterson v. 3M Co.*, No. 24-CV-03497 (JMB/DLM), 2025 WL 2784485, at *4 (D. Minn. Sept. 30, 2025) (Bryan, J.) ("Traceability must be shown for each defendant.").

Further, Peabody's claim that "Turnout Gear assemblers, including Globe, apply PFAS chemical finishes to Turnout Gear component parts and finished Turnout Gear." (Opp. at 7), contradicts a press release it cites in its own FAC that clearly states: "Globe itself does not add PFAS to its products." (Doc. 170 at 4, 7.) Moreover, Peabody's claim that the gear contains "PFAS" broadly therefore includes polymeric PFAS, like PTFE, that have FDA-approved medical uses. (*See id.* at 3.) Peabody does not allege Globe's turnout gear contains PFOA or PFOS specifically, the only compounds that Peabody explicitly alleges carry health risks. (*See id.* at 2-3.) "Where there is no 'particularized reason to think the consumers' [product] actually exhibited the alleged . . . defect, the consumers lack Article III standing." *Peterson*, 2025 WL 2784485, at *3 (Bryan, J.) (citation omitted).

*Finally*, Peabody claims that it "had no choice but to buy PFAS Turnout Gear" and "no reason to search for or demand a PFAS-free alternative because of Defendants' deceptive representations and omissions." (Opp. at 21.) But Peabody does not allege what misrepresentation or omission *by Globe* Peabody saw or relied on before purchasing Globe gear—a gap Peabody fails to address in its Opposition. And, as Peabody admits, it could not have purchased non-PFAS alternatives instead because those were not available until recently. (FAC ¶ 13.)

Peabody's claims against Globe cannot stand on imprecise, conclusory assertions of injury and causation, and should be dismissed.

**III.    Peabody Fails to State a Claim.**

    **A.    Whether Strict Liability or Warranty Claims, Counts II and III Fail.**

Peabody does not dispute that Massachusetts law bars strict liability claims. Instead, Peabody claims that its labeling of Counts II and III as "strict liability" claims rather than warranty claims was "a scrivener's error." (Opp. at 24-25.) Not so. Peabody explicitly brought breach of the implied warranty of merchantability (UCC § 2-314) and fitness for a particular purpose (UCC § 2-315) claims in its original Complaint. (Doc. 26 ¶¶ 268-79.) But when Peabody filed its FAC on February 10, 2026, it abandoned those claims and added strict liability claims that do not exist under Massachusetts law. (Doc. 170 at 19-20.)

Peabody's request to "retitle" its product liability claims to breach of warranty claims would nonetheless be futile because the FAC fails to allege any facts sufficient to state Massachusetts warranty law claims. *See, e.g.*, *Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 783-84 (8th Cir. 2008) (amendment futile where plaintiff did not show how amendment would save meritless claim). Peabody has not alleged any manifested physical injury to persons or property from Globe turnout gear, *see supra* at 4-5, *infra* at 7-8, so any implied warranty claims are barred by the economic loss doctrine. *See, e.g.*, *Rezendes v. Mitsubishi Motors N. Am., Inc.*, No. 22-CV-10211-AK, 2023 WL 4552030, at *2 (D. Mass. July 14, 2023).

Moreover, a merchantability claim requires facts showing that the product "contained a defect or unreasonably dangerous condition rendering it unsuitable for its ordinary use," which Peabody has not alleged here. *Zoll Med. Corp. v. Barracuda Networks, Inc.*, 565 F. Supp. 3d 101, 107 (D. Mass. 2021). Turnout gear enables firefighters

to save lives and protect property, and is designed to protect firefighters against hazards, including heat, flames, water, oil, and chemicals, that they may encounter when responding to fire and other emergencies. (*See* FAC ¶ 5.) Peabody does not allege that Globe turnout gear was unsuitable for those purposes and acknowledges that "PFAS Turnout Gear . . . [has] oil[] and chemical resistance." *(Id.* ¶ 34.) Peabody also has not alleged Globe turnout gear has a "particular purpose" distinct from its "ordinary purpose," as required to state a warranty of fitness claim. *See Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288, 297 (D. Mass. 2009), *aff'd* 607 F.3d 250 (1st Cir. 2010) (dismissing particular-purpose claim absent allegation that medication had a particular purpose apart from its ordinary use).

Peabody's strict liability claims fail and amendment will not save them, warranting dismissal and denial of leave to amend.

### B. The Economic Loss Doctrine Bars Peabody's Negligence Claim (Count V).

Peabody's attempt to evade the economic loss doctrine falls short. Each of the cases Peabody cites in its Opposition alleges actual, demonstrated contamination of property—unlike the speculative allegations here. *See Prudential Ins. Co. of Am. v. Turner & Newall, PLC*, Civ. No. 85-2179-H, 1988 WL 150491 (D. Mass. Dec. 12, 1988) (property damage sufficient *only* where the plaintiff alleged that asbestos was actually present on property warranting monitoring program); *Guar.-First Trust Co. v. Textron, Inc.*, 622 N.E.2d 597, 598-99 (Mass. 1993) (parties agreed that Plaintiff's groundwater and property was contaminated).

Peabody has not alleged that it detected PFAS in its fire stations or any other property, let alone *from* Globe's turnout gear. Asserting only that PFAS "migrate out" of turnout gear, without resulting actual damage to property, is precisely the type of claim the economic loss doctrine bars. (*See* Doc. 170 at 20-22.)

**C.    Peabody's Fraud-Based Claims (Counts I and IV) Do Not Satisfy Rule 9(b).**

Underlying Peabody's Chapter 93A and fraudulent misrepresentation/concealment claims are nothing more than thin, conclusory allegations that fall short of Rule 9(b). The "14 pages of detailed allegations" Peabody claims describe what "each Defendant" allegedly knew and concealed contain only two mentions of Globe: its Chief Operating Officer's support of a *PFAS-free* alternatives bill, and an undated statement regarding Globe's commitment "to firefighter health & safety" that contains no reference to turnout gear or PFAS. (Opp. at 18; FAC ¶¶ 89-118, 123-34, 138-43.) Nowhere in the FAC does Peabody identify a false statement or omission by Globe connected to Peabody's turnout gear purchase. Peabody's vague allegations fail to satisfy Rule 9(b) and should be dismissed. (*See* Dkt. 170 at 22-25.)

**IV.    Peabody's Class Claims Should Be Stricken or Dismissed.**

Peabody's Opposition further underscores the untenability of its class claims, even at the pleadings stage, and the Court is well within its discretion to strike those claims under Rule 12(f).

*Rule 23(b)(3).* Common issues of fact and law hardly "abound" here. For example, Peabody asserts there are common questions regarding turnout gear composition and

related misrepresentations. (Opp. at 35.) But, as alleged in Peabody's Original Complaint, Globe is one of multiple assemblers in the turnout gear supply chain who build their gear with different components from different sources. Yet the proposed class here is not limited to purchasers of Globe gear. (*See id.* at 31-33.) To that end, Peabody's reliance on *Jeruchim v. J.M. Smucker Co.*, No. 22-cv-06913-WHO, 2026 WL 178565 (N.D. Cal. Jan. 22, 2026), is misplaced, as *Jeruchim* concerns a single manufacturer's food-product packaging claims, not a multi-defendant supply chain involving built-to-order products with varying specifications and component parts. (Opp. at 35-36.)

Further, the nature of Peabody's claims are "ill-suited" for a class action. (*See* Doc. 170 at 29-33.) Peabody does not dispute that product liability, negligence, and fraud claims inherently raise individual inquiries unique to each claimant, such as reliance, causation, and injury, that preclude class treatment. (*See id.*) Nor does Peabody dispute that individual questions similarly preclude class treatment of unjust enrichment claims. (*Id.*)

***Rule 23(b)(2).*** Peabody fails to demonstrate how injunctive relief is appropriate for its highly individualized claims either. Peabody does not identify what "indivisible injunction" could remedy all class members' alleged injuries at once. (*See* Doc. 170 at 33-35.) Indeed, its claims provide Peabody with an adequate remedy at law: monetary damages. Though Peabody claims it seeks injunctive relief by requesting—in its Opposition—"the relief necessary to 'properly retrieve, remove, destroy, and dispose of PFAS Turnout Gear,'" (Opp. at 36), that is not what Peabody seeks in its FAC, which requests "***damages for the cost*** to properly retrieve, remove, destroy, and dispose of PFAS Turnout Gear." (FAC at 54 (emphasis added).)

Peabody's class allegations should therefore be stricken or dismissed.

## CONCLUSION

For the reasons stated herein and in Globe's opening brief, Peabody's FAC should

be dismissed, or alternatively, its class claims stricken or dismissed.

Dated: June 9, 2026

*s/ Alethea M. Huyser*
Alethea M. Huyser (#0389270)
Devin T. Driscoll (#0399948)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 492-7000
ahuyser@fredlaw.com
ddriscoll@fredlaw.com

James L. Stengel* (N.Y. Bar No. 1800556)
Paige Pavone* (N.Y. Bar No. 5395041)
**ORRICK, HERRINGTON**
**& SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
jstengel@orrick.com
ppavone@orrick.com

Hillary Dang* (D.C. Bar No. 888314267)
**ORRICK, HERRINGTON**
**& SUTCLIFFE LLP**
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
hdang@orrick.com

***Attorneys for Defendant Globe***
***Manufacturing Company, LLC***

*Admitted *pro hac vice*

10